## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE DOS SANTOS PAIS, on behalf of herself and all others similarly situated,<br><br>                      Plaintiff,<br><br>    vs.<br><br>SHARON & CRESCENT UNITED CREDIT UNION,<br><br>                      Defendant. | Civil Action No. |

## CLASS ACTION COMPLAINT

Plaintiff Suzanne Dos Santos Pais ("Plaintiff"), on behalf of herself and all others similarly situated brings this class action complaint against Defendant Sharon & Crescent United Credit Union ("Defendant" or "SCUCU"), and alleges the following:

## NATURE OF THE ACTION

1.      Plaintiff brings this action individually and on behalf of all similarly situated consumers against Defendant SCUCU, arising from (1) SCUCU's routine practice of assessing more than one non-sufficient funds fee ("NSF Fee") or overdraft fee ("OD Fee") on the same transaction, and (2) SCUCU's improper assessment and collection of OD Fees on accounts that were never actually overdrawn.

2.      SCUCU misleadingly and deceptively misrepresents the above practices in its publicly available marketing materials, including its own account contracts

3.      SCUCU's members have been injured by SCUCU's improper practices to the tune of millions of dollars bilked from their accounts in clear violation of their agreements with SCUCU.

1

4.      Plaintiff, on behalf of herself and two classes of similarly situated consumers, seeks to end SCUCU's abusive and predatory practices and force it to refund the improper charges. Plaintiff asserts a claim for breach of contract, including breach of the covenant of good faith and fair dealing, and for violations of the Massachusetts Consumer Protection Action, G.L. c. 93A, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

## PARTIES

5.      Plaintiff Suzanne Dos Santos Pais is a citizen and resident of Brockton, Massachusetts.

6.      Defendant SCUCU is a Massachusetts credit union with its principal place of business located in Brockton, Massachusetts. It has $1.2 billion in assets and maintains branches throughout Massachusetts.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Massachusetts; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because SCUCU is subject to personal jurisdiction here, regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.**     **SCUCU CHARGES MULTIPLE FEES ON THE SAME ITEM**

9.     SCUCU's Account Documents provide the general terms of the contractual relationship between Plaintiff and Defendant.

10.     SCUCU's Account Documents allow SCUCU to charge a *single* $35 NSF Fee or OD Fee when an "item" is returned for insufficient funds or paid despite insufficient funds.

11.     SCUCU breached its Account Documents with its accountholders by charging more than one $35 NSF Fee or OD Fee on the same item, since its contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF Fee or OD Fee.

12.     A recent Washington Post article discussed predatory overdraft fees, labeling NSF fees like those SCUCU imposes as "indefensible" because "the customer gets hit with multiple charges for the same item." *I bought my kids dinner – and saw firsthand how overdraft fees punish the poor,* The Washington Post (October 1, 2021), https://www.washingtonpost.com/outlook/i-bought-my-kids-dinner--and-saw-firsthand-how-overdraft-fees-punish-the-poor/2021/09/30/32383c40-216e-11ec-b3d6-8cdebe60d3e2_story.html. The banks "are charging a fee for doing literally nothing.... [T]his is like asking a friend if I can borrow $20, only to have him take $10 out of my wallet for turning down my request." *Id.*

13.     In its March 2022 issue of *Consumer Compliance Supervisory Highlights*, the FDIC addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers

about re-presentment practices and fees"—i.e., unclear definitions of "per item" or "per transaction"—may be deceptive:

> During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Some disclosures and account agreements explained that one NSF fee would be charged "per item" or "per transaction." These terms were not clearly defined and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if the injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance.

*Consumer Compliance Supervisory Highlights*, Federal Deposit Insurance Corporation, p. 8 (March 2022), https://www.fdic.gov/regulations/examinations/consumer-compliance-supervisory-highlights/documents/ccs-highlights-march2022.pdf (last accessed May 25, 2022).

14.    SCUCU's abusive practices are not standard within the financial services industry. Indeed, major banks such as Wells Fargo—one of the largest consumer banks in the country—charge one fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as SCUCU, their members agree to terms authorizing the fee practice.

15.    Indeed, only recently did SCUCU amend their Account Documents to disclose that an item may incur multiple fees. However, at the time Plaintiff incurred fees, this disclosure was not in effect.

16.    SCUCU's Account Documents did not say that SCUCU repeatedly charged members multiple fees on a single item. To the contrary, the Account Documents indicated it would only charge a single NSF Fee or OD Fee on an item.

### A.    Plaintiff Dos Santos Pais's Experience

17.    In support of her claim, Plaintiff Dos Santos Pais offers examples of fees that should not have been assessed against her checking account. As alleged below, SCUCU: (a) reprocessed previously declined transactions; and (b) charged an additional fee upon reprocessing.

18.    As an example, on February 19, 2019, Plaintiff Dos Santos Pais was charged multiple $32[1] NSF Fees on the same payment when it was resubmitted by the merchant for payment without Plaintiff Dos Santos Pais's request to reprocess the transaction. Each merchant request for payment was for a single transaction and, as is laid out in SCUCU's Account Documents, should be subject to, at most, a single NSF Fee or OD Fee.

19.    Plaintiff Dos Santos Pais understood each payment to be a single item as is laid out in SCUCU's contract, capable at most of receiving a single NSF Fee (if SCUCU returned it) or OD Fee (if SCUCU paid it).

### B.    The Imposition of Multiple Fees on a Single Transaction Violates SCUCU's Express Promises and Representations.

20.    SCUCU's Account Documents state that SCUCU will assess a single fee of $35 for an "item" that is returned due to insufficient funds.

21.    The Account Documents do not indicate that multiple fees may be assessed against a single item. In fact, according to the operative fee schedule, at most a single fee will be assessed for each "item" that is returned or paid into overdraft.

22.    SCUCU's Account Documents, namely its *Schedule of Fees*, state that the credit union will assess a single fee of $35 for an item that is rejected due to insufficient funds:

| | |
|---|---|
| Overdraft Privilege Service (OPS) Paid Item* | $35.00 |
| Non-Sufficient Funds (NSF) Returned Item | $35.00 |

---

[1] The NSF Fee has since been raised to $35.

Ex. A.

23.     The same check, ACH, or other electronic payment is not a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

24.     Even if SCUCU reprocesses an instruction for payment, it is still the same item or transaction. Defendant's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

25.     As alleged herein, Plaintiff took only a single action to make a single payment; she may therefore be charged only a single fee.

26.     SCUCU promises that one $35 NSF Fee or OD Fee will be assessed per "item," such as a check or ACH payment, and this must mean all iterations of the same instruction for payment. As such, SCUCU breached the contract when it charged more than one fee per item.

27.     Reasonable accountholders understand any given authorization or payment to be one item, as that term is used in SCUCU's Account Documents.

28.     The Account Documents described above never discuss a circumstance where SCUCU may assess multiple fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

29.     Taken together, the representations identified above convey to members that all submissions for payment of the same transaction will be treated as the same "item," which Defendant will either pay (resulting in an overdraft fee) or return (resulting in a non-sufficient funds fee) when there are insufficient funds in the account. Nowhere does SCUCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do SCUCU members ever agree to such fees.

30.    Further, members reasonably understand, based on the language of SCUCU's Account Documents, that Defendant's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional fees. In other words, it is always the same item.

31.    Other banks and credit unions like SCUCU that employ this abusive multiple-fee practice know how to plainly and clearly disclose it—something SCUCU did not do until recently.

32.    For example, First Hawaiian Bank engages in the same abusive practices as SCUCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added) *Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://bit.ly/2KWMvTg (last accessed Jan. 28, 2021).

33.    Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

(emphasis added) *Consumer Account Terms and Conditions*, Klein Bank 4 (Jan. 2013), https://bit.ly/2KVCkhI.

34.    Central Pacific Bank, a leading bank in Hawai'i, states in its deposit account under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient funds ("NSF") in your account, may be resubmitted one or more times for payment, and a returned item/transaction fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/non-sufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Jan. 4. 2021), https://www.cpb.bank/media/2776/fee-001.pdf (last accessed June 4, 2021).

35.    BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item." *Membership and Account Agreement,* BP Federal Credit Union, ¶ 14(a), https://www.bpfcu.org/images/docs/membership-agreement.pdf (last accessed June 4, 2021).

36.    Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

*Deposit Agreement*, Regions Bank 18 (2018), https://bit.ly/2L0vx6A (last accessed June 4, 2021).

37.    Andrews Federal Credit Union states:

> You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

> When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Terms & Conditions*, Andrews Federal Credit Union 17 (Aug. 2020), ¶ 6, https://bit.ly/3iXEdHb

(last accessed June 4, 2021).

38.     Consumers Credit Union states:

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Member Services Guide*, Consumers Credit Union 5 (Apr. 2020), ¶ 11a, https://bit.ly/3iVM1ta

(last accessed June 4, 2021).

39.     Wright Patt Credit Union states:

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information*, Wright Patt Credit Union 13 (July 2020), ¶ 6.1, (last accessed

June 4, 2021).

40.     Railroad & Industrial Federal Credit Union states:

> Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information for Our Members*, Railroad & Industrial Federal Credit Union, p.

2, (Aug. 1, 2019), https://bit.ly/3t5ehhF (last accessed June 4, 2021).

41.     Partners 1st Federal Credit Union states:

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Consumer Membership & Account Agreement*, Partners 1st Federal Credit Union, p. 11 (Sept. 15, 2019), https://bit.ly/39pDZWb (last accessed March 2, 2021).

42.     Members First Credit Union states:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment[.]

*Membership and Account Agreement*, Members First Credit Union of Florida 3, https://bit.ly/39rRJ2Y (last accessed March 2, 2021).

43.     Community Bank, N.A. states:

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank 5 (Nov. 12, 2019), https://bit.ly/3iY9dH2 (last accessed June 4, 2021).

44.     RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

*Service Agreement for Personal Accounts*, RBC Bank 13 (Sept. 17, 2014), https://bit.ly/3otUtko (last accessed June 4, 2021).

45.     Diamond Lakes Credit Union states,

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

*Membership and Account Agreement*, Diamond Lakes Federal Credit Union, https://bit.ly/39o2P94 (last accessed June 4, 2021).

46.     Parkside Credit Union states,

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

*Membership and Account Agreement*, Parkside Credit Union 21 (Jan. 30, 2020), https://bit.ly/3aaXfpG (last accessed March 2, 2021).

47.     SCUCU provided no such disclosure until recently, and by not doing so, deceived its accountholders.

**C.     The Imposition of Multiple Fees on a Single Transaction Breaches SCUCU's Duty of Good Faith and Fair Dealing.**

48.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. Further, as to bank transactions, the Uniform Commercial Code ("UCC")—which has been adopted by all states—mandates good faith and fair dealing. As such, when a party such as SCUCU gives itself discretion to act, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that SCUCU is prohibited from exercising its discretion to enrich itself and gouge its members. Indeed, SCUCU has a duty to honor transaction requests in a

way that is fair to Plaintiff and its other member and is prohibited from exercising its discretion to pile on ever greater penalties.

49.     Here—in the adhesion agreements SCUCU foisted on Plaintiff and its other members—SCUCU has provided itself numerous discretionary powers affecting member's credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, SCUCU abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectation that they will not be charged multiple fees for the same transaction.

50.     SCUCU exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other members—when it defines "item" in a way that directly leads to more fees. Further, SCUCU abuses the power it has over members and their credit union accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of SCUCU's implied covenant to engage in fair dealing and act in good faith.

51.     It was bad faith and entirely outside Plaintiff's reasonable expectations for SCUCU to use its discretion to assess multiple fees for a single attempted payment.

## II.     SCUCU CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT.

### A.  Overview of a Debit Transaction

52.     SCUCU issues debit cards to its checking accountholders, including Plaintiff, which allow its members to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions.

53.     Pursuant to its Account Documents, SCUCU charges fees for transactions that purportedly result in an overdraft.

54.    Plaintiff brings this cause of action challenging SCUCU's practice of charging OD Fees on "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

55.    A debit card transaction occurs in two parts. First, when a merchant physically or virtually "swipes" a member's debit card, the credit card terminal connects, via an intermediary, to SCUCU, which verifies that the member's account is valid and that sufficient available funds exist to cover the transaction amount.

56.    To determine whether sufficient funds exist, SCUCU maintains a running account balance tracking funds accountholders have for immediate use. This running account balance is adjusted, in real time, to account for debit card transactions when they are made. When a member makes a purchase with a debit card, SCUCU sequesters the funds needed to pay for the transaction, subtracting the dollar amount of the transaction from the member's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically held for when the given debit card transaction settles.

57.    If the account balance shows that there are sufficient funds in an account, the transaction is instantaneously approved.

58.    Second, SCUCU immediately reduces the funds from the accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

59.    The entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in

> the account when the transaction is presented for settlement. This is commonly
> referred to as a "debit hold." During the time the debit hold remains in place, which
> may be up to three days after authorization, those funds may be unavailable for the
> consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Bank Administration, Unfair

or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

60.    Sometime thereafter, the funds are actually transferred from the customer's account

to the merchant's account.

61.    SCUCU (like all banks and credit unions) decides whether to "pay" debit card

transactions at authorization. Once SCUCU authorizes a transaction, SCUCU is obligated to pay

the transaction no matter what. When the time comes to actually settle the transaction and transfer

the funds to the merchant's account, it is too late—the financial institution has no discretion and

must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial

institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a

demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-

01, 59046 (Nov. 17, 2009).

62.    Even though the merchant is not paid right away, there is no change—no impact

whatsoever—to the available funds in an account when the funds are actually transferred to the

merchant because a hold was already placed on the funds, removing them from the available

balance.

63.    Despite placing a hold on those funds, rendering them off-limits for later

transactions, SCUCU improperly charges OD Fees on those APPSN Transactions, even though

the APPSN Transactions ***always*** have sufficient available funds to be covered by virtue of the hold

placed on them.

64.     Besides being unfair and unjust, these practices breach contractual promises made in SCUCU's adhesion contracts—contracts that fail to inform accountholders about the true nature of SCUCU's processes and practices. Further, SCUCU lacks any discretion to apply OD Fees to APPSN Transactions.

65.     In short, SCUCU is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.     SCUCU's Account Contract**

66.     Plaintiff has a checking account with SCUCU, which is governed by SCUCU's standardized Account Documents, including Defendant's *Terms and Conditions of Your Account* ("Account Agreement").

67.     The Account Agreement promises that an overdraft only occurs if an accountholder does not have enough funds in the account, with Defendant reserving discretion on whether to pay an overdraft and to charge an OD Fee:

> **Transactions That May Result in an Overdraft:** An overdraft occurs when you do not have enough money in your account to cover a transaction. Although there are many reasons why your account might become overdrawn, most overdrafts result from the following:
> 1. You write a check, use your debit card or initiate an electronic funds transfer in an amount that exceeds the amount of funds available in your account;
> 2. You deposit a check or other item into your account which is returned unpaid, and the amount is deducted from your account balance;
> 3. You have inadequate funds in your account when we assess a fee or service charge; or
> 4. You initiate a transaction before funds deposited into your account are "available" or "finally paid" according to our Funds Availability Policy. For example, if you deposit a check into your account, the proceeds of that check may not be available to you for up to several days after you deposit the check. If you do not have sufficient funds in your account — independent of the check — to cover the transaction, you will incur an overdraft.
>
> **Transactions That Are Covered by the OPS Program:** The general OPS program applies to only certain types of transactions, including checks, other transactions made using your checking account number, automatic bill payments,

and preauthorized, recurring transactions made with your debit card. **The OPS program does not automatically include ATM transactions and everyday (one-time) debit card transactions.** We will not include ATM and everyday debit card transactions within our OPS program without first receiving your affirmative consent to do so. Absent your affirmative consent, ATM and everyday debit card transactions generally will not be paid.

[…]

As noted above, we retain full discretion to decline to pay any item under the OPS program. This means we can refuse to pay any overdraft for any reason. Even if we decide to pay an overdraft item, absent an agreement to the contrary, such payment does not create any duty to pay future overdrafts. If we do not authorize and pay an overdraft under the OPS program, your transaction will be declined and we may assess non-sufficient funds (NSF) fees on your account in accordance with your account agreement and the fee schedule in effect at the time of the overdraft. We post transactions, whether deposits or withdrawals (payments as described above) against your account balance in the order in which they are received by us, without regard to the type or amount of the transaction.

**Fees:** For each item we pay under OPS that results in an overdraft, we will charge the standard per item Overdraft Fee set forth in our Service Charge Schedule. However, absent your affirmative consent to do so, if we inadvertently pay an ATM or everyday debit card transaction, causing an overdraft, we will not charge a fee. We will not charge for more than five items in any one day, and an insufficient funds fee will not be assessed on items less than $5.01. We will notify you by mail if we pay or return any insufficient or unavailable funds items on your account; however, we have no obligation to notify you before we pay or return any item. The amount of any overdrafts, including our fees, are due and payable immediately or on demand.

Ex. A, pp. 8-9.

68.    Defendant's Account Agreement defines transactions as overdraft transactions only when an account does not contain sufficient funds to cover a transaction.

69.    In other words, a transaction that is authorized with a positive account balance should not incur an overdraft fee because there is enough money in the account to cover the transaction. Not only that, but when SCUCU authorizes a transaction with a positive balance, it places a hold on the funds needed for the transaction, making those funds unavailable for use in later transactions. It follows that those same funds are then used to settle or pay the transaction.

70.     However, SCUCU's actual practice is to assess the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

71.     More specifically, the moment a debit card transaction is getting ready to settle SCUCU does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, SCUCU releases the hold placed on the funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

72.     This secret step allows SCUCU to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized with sufficient funds and for which SCUCU specifically set aside money to pay.

73.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall

net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

74.    This conduct is a breach of SCUCU's Account Agreement.

75.    First, the Account Agreement never discloses that SCUCU will charge members OD fees on transactions approved with a positive balance. Second, SCUCU also does not disclose, that contrary to reasonable expectation, SCUCU will re-deposit sequestered funds into an account and re-assess whether an overdraft fee is due prior to settling a previously authorized transaction. Finally, the Account Agreement does not disclose SCUCU's internal policy allowing them to manipulate the settlement process to justify an OD Fee.

76.    This discrepancy between SCUCU's actual practices and the contract causes accountholders to incur more OD Fees than they should. In fact, accountholders could have never even expected to have an overdraft, because they initiated the transaction with enough funds.

### C.  SCUCU Abuses Contractual Discretion

77.    In addition to breaching the express terms of the Account Documents, SCUCU's practice of charging overdraft fees on APPSN Transactions falls outside of any contractual discretion it has with respect to payment of overdrafts.

78.    SCUCU reserves discretion to pay overdrafts and to assess an OD Fee when it pays an overdraft. That discretion extends to SCUCU's decision as to whether to pay an overdraft at the time that SCUCU is asked to authorize a transaction.

79.     SCUCU's discretion to approve overdrafts does not extend to imposing OD Fees on transactions that never overdrew an account in the first place. SCUCU thus abuses its contractual discretion by approving debit transactions made on a positive balance, driving down the account balance, and then momentarily depositing and withdrawing the requested funds to falsely claim that the account had an insufficient balance for the original transaction.

80.     SCUCU uses its contractual discretion unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

### D. Reasonable Accountholders Understand Debit Card/POS Transactions Are Debited Immediately

81.     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with an accountholder's reasonable expectation that they will only be charged OD Fees on transactions that overdraw their account at the time that they are authorized. When an accountholder initiates what later becomes an APPSN Transaction, their available balance displayed on an app, website, or ATM tells them that they have sufficient available funds for the transaction. Accountholders know that SCUCU will place a hold on the funds needed for the transaction and reduce their available balance rendering those funds unavailable. They expect that those same funds will be applied to settle the debit card transactions for which they are debited. Otherwise, there would be no purpose of the immediate debit and hold for transactions. SCUCU was and is aware that this is precisely how accountholders reasonably understand such transactions to work.

82.     Defendant also knows that many accountholders use debit cards as a budgeting device because they prevent the accountholder from running up debts and because the money comes directly out of a checking account so that the accountholder cannot spend money that they do not have.

83.    Further, Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *What Do I Need to Know About Using a Debit Card?*, Consumer Action (Jan. 14, 2019), https://www.consumer-action.org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card  (last visited June 4, 2021).

84.    Further, Consumer Action informs consumers that "Debit cards offer the convenience of paying with plastic without the risk of overspending. When you use a debit card, you do not get a monthly bill. You also avoid the finance charges and debt that can come with a credit card if not paid off in full." *Understanding Debit Cards*, Consumer Action, http://www.consumer-action.org/english/articles/understanding_debit_cards (last visited June 4, 2021).

85.    This understanding is a large part of the reason that debit cards have risen in popularity. The number of terminals that accept debit cards in the United States increased by approximately 1.4 million in a recent five-year period and, with that increasing ubiquity, consumers have viewed debit cards "as a more convenient option than refilling their wallets with cash from an ATM." Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases,* MarketWatch, Mar. 23, 2016, http://www.marketwatch.com/story/morepeople-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

86. Not only have accountholders increasingly transitioned from cash to debit cards, but they believe that a debit card purchase is the fundamental equivalent of a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

SCUCU was aware of accountholder perception that debit transactions reduce an account's available balance *at a specified time*—namely, the moment they are actually initiated—and its account agreement only supports this perception.

### E. Plaintiff's Experience

87. As an example, in May 2019, Plaintiff was assessed OD Fees in the amount of $32 for a debit card transaction that settled that day, despite the fact that positive funds were previously sequestered for the transaction. At the time the funds were sequestered, Plaintiff had a positive balance, which would not have caused an OD Fee.

## CLASS ACTION ALLEGATIONS

88. Plaintiff brings this class action on behalf of herself, and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. The proposed classes are defined as:

> All SCUCU accountholders who, during the applicable statute of limitations, were charged OD Fees on debit card transactions that were authorized into a positive available balance ("APPSN class").

> All SCUCU accountholders who, during the applicable statute of limitations, were charged multiple NSF Fees or OD Fees on the same item ("Multiple Fee class").

Plaintiff also brings their claims on behalf of Subclasses of Massachusetts accountholders with the subclasses to be defined as follows:

> All Massachusetts citizens who, during the applicable statute of limitations, were SCUCU checking account holders and charged an OD Fee on debit card transactions that were authorized into a positive available balance ("Massachusetts

APPSN Class").

All Massachusetts citizens who, during the applicable statute of limitations, were SCUCU checking account holders and charged multiple NSF Fees or OD Fees on the same item ("Massachusetts Multiple Fee Class").

89.     Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, all members who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, their immediate family members, and chambers staff.

90.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes, including by adding subclass(es), before this Court determines whether certification is appropriate.

91.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because SCUCU has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

92.     These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

a.  Whether SCUCU charged OD Fees on transactions that were authorized into a positive available balance;

b.  Whether SCUCU breached its own contract by charging OD Fees on transactions

that were authorized into a positive available balance;

c. Whether SCUCU charged multiple fees on the same item;

d. Whether SCUCU breached its own contract by charging multiple fees on the same item.

e. Whether SCUCU breached the covenant of good faith and fair dealing;

f. Whether SCUCU engaged in unfair and deceptive acts and practices relating to the imposition of OD Fees, in violation of G.L. c. 93A, §§ 2 and 9;

g. The proper method or methods by which to measure damages; and

h. The declaratory and injunctive relief to which the proposed Classes are entitled.

93.     There are common answers to these questions such that they can be answered in one fell swoop with respect to all Class members.

94.     Plaintiff's claims are typical of the claims of the members of the Classes as they arise from the same core practices, namely, SCUCU charging multiple fees on the same item and OD Fees on APPSN Transactions in breach of its contracts with Plaintiff and the putative Class members. The material facts underlying the claims of each putative Class member are the same material facts supporting Plaintiff's claims. Plaintiff and the other Class members have sustained injuries from, and are facing harm arising out of, SCUCU's common course of conduct as complained of herein. The losses of each Class member were caused directly by SCUCU's wrongful conduct as alleged herein.

95.     Plaintiff will fairly and adequately represent and protect the interests of the Classes as they arise from the same core practices. By proving her individual claims, Plaintiff will necessarily prove the claims of the Classes and prove SCUCU's liability to the Classes. Plaintiff has no known conflicts of interest with any members of the Classes; her interests and claims are

not antagonistic to those of any other Class members; and her claims are not subject to any unique defenses.

96.    Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation, including complex consumer class actions, both within and outside Massachusetts. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

97.    As alleged above with respect to the commonality requirement, SCUCU's conduct toward Plaintiff and the Classes raises common questions of law and fact that predominate over any questions affecting only individual members of the Classes, as SCUCU improperly and regularly charges multiple fees on the same item, and OD Fees on APPSN Transactions. Plaintiff and the members of the Classes suffered, and will continue to suffer, harm as a result of SCUCU's unlawful and wrongful conduct.

98.    A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Because the Classes encompass thousands of claims, a single class action is more efficient than thousands of individual actions, each requiring the same discovery and proof. Given the relatively small amount of claims of each Class member, it is likely that absent class representation, such claims will not be brought, and the Classes will never have appropriate redress for SCUCU's improper conduct.

99.    Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts where the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum. The

conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

100.    Class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide relief to Class members for their past and future injuries. It will also deter SCUCU from engaging in such wrongful conduct in the future.

101.    There are no unusual difficulties likely to be encountered in the maintenance of this action as a class action suit, as this Court can effectively manage the class action.

102.    More specifically, the Classes are not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants because SCUCU keeps records of member accounts during the class period, including records of members to whom it charged multiple fees and OD Fees on APPSN Transactions. Therefore, both the membership of the Classes and the amount of individual damages are readily ascertainable from SCUCU's records.

103.    Thus, a class action is superior and more efficient to other available methods for the fair and efficient adjudication of this controversy. Indeed, unless the Classes are certified, SCUCU will continue to unlawfully charge multiple fees on the same item and OD Fees on APPSN Transactions.

104.    Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for SCUCU as the party opposing the Classes; and/or (b) adjudications with respect to individual Class members would, as a practical

matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

105.    SCUCU, as the party opposing the Classes, has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## COUNT I
**Breach of Contract, Including the Covenant of Good Faith and Fair Dealing**
**(On behalf of Plaintiff and the Classes)**

106.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

107.    Plaintiff and SCUCU have contracted for credit union account deposit, checking, ATM, and debit card services. The contract does not permit SCUCU to charge multiple fees on the same item or OD Fees on APPSN Transactions.

108.    In breach of its Account Documents, Defendant charged multiple fees on the same item.

109.    In breach of its Account Documents, Defendant charged OD Fees on transactions that were authorized on a positive balance and did not overdraw an account.

110.    Defendant's breach has caused Plaintiff and the Classes to incur additional NSF and OD Fees that were never disclosed nor agreed to in the Account Documents.

111.    Further, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the spirit of their contract in addition to its substance.

112.    Failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

113.    SCUCU has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, SCUCU had no discretion to charge multiple fees on the same item or OD Fees on transactions that were authorized on a positive available balance. SCUCU's discretion regarding payment of overdrafts did not include discretion to charge multiple fees on the same item or OD Fees in the absence of an overdraft.

114.    Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

115.    Plaintiff and members of the Classes have sustained damages as a result of SCUCU's breach of the contract.

**<u>COUNT II</u>**
**Violation of Massachusetts Consumer Protection Act, G.L. C. 93A**
**(On Behalf of Plaintiff and the Massachusetts Subclasses)**

116.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

117.    This claim is asserted on behalf of Plaintiff and the members of the Massachusetts Subclasses under Massachusetts Consumer Protection Act, G.L. c. 93A, *et seq*.

118.    The Massachusetts Consumer Protection Act declares unlawful any "unfair or deceptive acts or practices in the conduct of any trade or commerce." G.L. c. 93A, §2.

119.    SCUCU's acts and practices were in and affected trade or commerce as defined by G.L. c. 93A, §1.

120. SCUCU engaged in unfair and deceptive acts and practices relating to the imposition of NSF and OD Fees, in violation of G.L. c. 93A, §§2 and 9. Specifically, SCUCU misrepresented its practice of charging multiple NSF Fees and OD Fees in its Account Documents.

121. SCUCU's acts and practices proximately caused injury to Plaintiff and the Massachusetts Subclasses, and they are entitled to, inter alia, damages, injunctive, and declaratory relief.

122. SCUCU's actions as detailed above were knowing or willful violations of Mass. Gen. Laws c. 93A, §§2 and 9, entitling Plaintiff and members of the Massachusetts Subclasses to an award of double or treble damages.

123. On December 9, 2022, before filing this Second Amended Complaint, Plaintiff sent a written demand for relief to Defendant. Defendant did not make a satisfactory response or reasonable offer of settlement.

124. Because of the unfair and deceptive acts and practices of SCUCU, on behalf of herself and the Massachusetts Subclasses, Plaintiff seeks actual damages, minimum statutory damages, double and treble damages, injunctive relief, and other such equitable relief as the Court finds necessary and proper, as well as reasonable attorneys' fees and costs under G.L. c. 93A, §9(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Suzanne Dos Santos Pais, individually and on behalf of the Classes, respectfully requests that the Court:

A. Issue an order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and that Plaintiff's counsel be appointed Class Counsel;

B.       Declare Defendant's NSF and OD fee policies and practices to be wrongful, unfair, and unconscionable;

C.       Order Defendant to immediately cease the wrongful conduct set forth above and enjoin SCUCU from conducting business via the unlawful and unfair business acts and practices complained of herein;

D.       Award restitution of all wrongfully charged NSF and OD Fees paid to Defendant by Plaintiff and members of the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.       Award actual and exemplary damages in an amount to be determined at trial;

F.       Award pre-judgment interest at the maximum rate permitted by applicable law;

G.       Award costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

H.       Award double and treble damages against Defendant for its knowing or willful violations of Massachusetts Consumer Protection Act, G.L. c. 93A §§ 2, 9; and

I.       Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: November 27, 2024

Respectfully submitted,

*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz, BBO #630710
TANOWITZ LAW OFFICE, P.C.
1340 Centre Street, Suite 103
Newton, MA 02459 617-965-1130

Telephone: (617)965-1130
Email: ellen@tanowitzlaw.com

David M. Berger (*to be admitted pro hac vice*)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
Email: dmb@classlawgroup.com

Shawn K. Judge (*to be admitted pro hac vice*)
Mark H. Troutman (*to be admitted pro hac vice*)
GIBBS LAW GROUP LLP
1554 Polaris Parkway, Suite 325
Columbus, Ohio 43240
Telephone: (510) 350-9700
Fax: (510) 350-9701
Email: skj@classlawgroup.com
Email: mht@classlawgroup.com

Jeffrey Kaliel (*to be admitted pro hac vice*)
Sophia Gold (*to be admitted pro hac vice*)
KALIEL GOLD PLLC
1100 14th Street NW, 4th Fl.
Washington, DC 20005
Telephone: (202) 250-4783
Email: jkaliel@kalielpllc.com
Email: sgold@kalielgold.com

*Attorneys for Plaintiff and the Proposed Class*