## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SUZANNE DOS SANTOS PAIS, on behalf of herself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) | Civil Action No. |
| v. ) ) | |
| SHARON & CRESCENT UNITED CREDIT UNION, ) ) ) | |
| Defendant. ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Suzanne Dos Santos Pais ("Plaintiff" or "Settlement Class Representative"), individually and on behalf of the proposed Settlement Classes, through her attorneys, KalielGold PLLC, Tanowitz Law Office, P.C., and Gibbs Law Group LLP, respectfully submits this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"). Defendant Sharon & Crescent United Credit Union ("Defendant") does not oppose the relief sought in Plaintiff's Motion. The terms and conditions of the proposed class action settlement is set forth in the Parties' Settlement Agreement and Release[1] (the "Settlement Agreement"), dated September 24, 2024, a copy of which is attached to the Declaration of Sophia Goren Gold, Esq., ("Gold Decl.") as ***Exhibit 1***. Plaintiff alleges that Defendant's improper practices of charging (1) assessing non-sufficient funds fees ("NSF Fees") in connection with represented automated clearinghouse ("ACH") transactions (the

---

[1]    The capitalized terms used herein are defined and have the same meaning as used in the Settlement Agreement unless otherwise stated.

"Representation Claims") and (2) assessing overdraft fees ("OD Fees") in connection with debit card transactions that were authorized with a positive account balance, but purportedly settled with a negative account balance (the "APPSN Claims") constitute breach of contract, including the covenant of good faith and fair dealing, and violation of the Massachusetts Consumer Protection Act, G.L. c. 93A. Defendant denies the allegations in the Federal Court Complaint, but given the risks, uncertainties, and burdens of litigation, has agreed to settlement according to the terms of the Settlement Agreement.

The Settlement achieved by the Parties, which was reached through arms-length negotiations with the assistance of a third-party neutral mediator, the Honorable Margaret R. Hinkle (Retired), guarantees a substantial monetary benefit for the Settlement Class Members. As detailed below, the Parties have agreed that Defendant will pay the total Settlement Amount of **$725,000.00** in monetary relief, that will be directly distributed—without the need for Settlement Class Members to complete a claim form or submit any accompanying proof—to the Settlement Classes in the form of either a direct deposit into Settlement Class Members' active Accounts or a cash settlement check mailed to Settlement Class Members whose accounts are no longer active. This amount represents approximately 53% of Class Members' best-case damages—an excellent result. Additionally, the Settlement also provides additional benefits for the Settlement Classes. Significantly, Defendant has agreed to provide Overdraft Forgiveness for those Settlement Class Members with Charged-Off Accounts. Defendant has also agreed to revise its account disclosures related to its assessment of OD Fees and APPSN Fees, which is relief that will benefit both current and future accountholders of Defendant.

The Parties have also agreed to a robust Class Notice plan designed to afford all members of the Settlement Classes due process and advise them of their rights under the Settlement Agreement.

As such, Plaintiffs respectfully request that this Court enter the Preliminary Approval Order submitted herewith that would, in pertinent part:

- Grant preliminary approval of the Settlement Agreement, finding the terms to be within the range of being fair, adequate, and reasonable;

- Provisionally certify the Settlement Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for settlement purposes only;

- Schedule the Final Approval Hearing;

- Approve the proposed Class Notice and authorize its dissemination to the Settlement Classes;

- Set the deadlines for the mailing of the Class Notice, opting out of or objecting to the Settlement, and filing papers in connection with the Final Approval Hearing;

- Appoint Settlement Class Representative as class representative and Class Counsel as counsel for the Settlement Classes; and

- Approve the appointment of the Settlement Administrator.

For the reasons set forth below, the Settlement Agreement meets all requirements of Preliminary Approval and provisional certification of the Settlement Classes. Therefore, Plaintiff respectfully requests that the Court preliminarily approve the Settlement, finding it to be fair, adequate and reasonable; certify the Settlement Classes for settlement purposes only; schedule the Final Approval Hearing; approve the proposed Class Notice and authorize its dissemination to the Settlement Classes; set deadlines for the mailing of the Class Notice, opting out of or objecting to the Settlement, and filing papers in connection with the Final Approval Hearing; appoint

Settlement Class Representative as class representative and Class Counsel as counsel for the Settlement Classes; and approve the appointment of the Settlement Administrator.

## I.    <u>BACKGROUND</u>

### A.    Litigation History

On December 7, 2022, Plaintiff filed a class action complaint in the Business Litigation Session of the Suffolk Superior Court, *Suzanne Dos Santos Pais v. Sharon & Crescent United Credit Union*, Docket No. 2284CV02759-BLS-1 (the "State Court Action") asserting claims against Defendant for breach of contract and breach of the covenant of good faith and fair dealing based on Defendant's alleged practices of (1) assessing non-sufficient funds fees ("NSF Fees") in connection with represented automated clearinghouse ("ACH") transactions (the "Representment Claims") and (2) assessing overdraft fees ("OD Fees") in connection with debit card transactions that were authorized with a positive account balance, but purportedly settled with a negative account balance (the "APPSN Claims"). On March 13, 2023, Plaintiff amended her complaint to include a claim for a violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, based on the same allegations.

On April 16, 2024, the Parties participated in an arms-length mediation of the State Court Action with the assistance of the Honorable Margaret R. Hinkle (Retired) of JAMS. In advance of this mediation, Defendant provided Plaintiff's' counsel with certain aggregate and transactional data to allow the Parties to analyze potential class-wide damages under Plaintiff's theories of liability. Equipped with this data, Plaintiff engaged an expert consultant to review the transactional data and analyze the estimated damages at issue for the putative classes. Having engaged in such due diligence, the Parties engaged in mediation and ultimately agreed to the material terms of the Settlement, resulting in the Settlement Agreement now pending before the Court.

As part of the Settlement process, Plaintiff agreed to file a stipulation of dismissal without prejudice in the Suffolk County state court action and to file the instant Federal Action.

**B.      The Key Terms of the Proposed Settlement**

The Parties have entered into the Settlement Agreement, which completely resolves the Federal Action. The Settlement Agreement includes the following pertinent terms:

**1.      The Settlement Classes**

Plaintiffs propose, for settlement purposes only, that this Court certify two Settlement Classes defined as:

**APPSN Class:** all Account holders who were charged one or more APPSN Fees during the APPSN Class Period.

The APPSN Class period means December 7, 2016 through April 18, 2023.

**Representment Class**: all Account holders who were charged one or more Representment Fees during the Representment Class Period.

The Representment Class Period means December 7, 2016 through October 31, 2021.

Settlement Agreement, §§ I.5-6, 38-39.

**2.      Settlement Benefits and Releases**

Settlement Class Member Payments. The Settlement Amount shall be paid by Defendant in accordance with the Settlement Agreement. Settlement Agreement, § IV.A.1. Within fourteen (14) days of receiving Verita's estimate of Advance Class Notice Costs, Defendant shall deposit the Advance Class Notice Costs into the Settlement Fund, which shall be credited against the Settlement Amount. *Id.*, § IV.A.2. Defendant will pay the Settlement Fund Balance within twenty (20) business days after the date of entry of the Final Approval Order. *Id.* § IV.A.3.

Within fifteen (15) days of the Effective Date, the Settlement Administrator will wire to Defendant the funds necessary to make all Settlement Class Member Payments to those members

with active Accounts. *Id.* § IV.B.2. Those Settlement Class Members will receive direct deposits into their active Accounts within sixty (60) days of the Effective Date. *Id.* For Settlement Class Members whose Accounts are no longer active, the Settlement Administrator shall mail them their Settlement Class Member Payments via check within sixty (60) days after the Effective Date. *Id.*

The calculation of Settlement Class Member Payments will be made out of the Net Settlement Fund and will be determined by identifying all Accounts held by Settlement Class Members for which Defendant assessed APPSN Fees and/or Representation Fees during the respective Class Period and totaling the number of Fees for each Account. *Id.*, § IV.B.1. The Net Settlement Fund will be allocated on a pro rata basis for each Settlement Class Member by dividing the amount of Representation Fees and APPSN Fees paid by that Class Member by the total amount of Representation Fees and APPSN Fees paid by all Settlement Class Members. *Id.* Each Settlement Class Member's pro rata percentage will be multiplied by the amount of the Net Settlement Fund, yielding the Settlement Class Member's distribution. *Id.*

In the event there are uncashed or returned checks in the Net Settlement Fund after 195 days from the date the first distribution check is mailed, the Settlement Administrator shall, within fifteen (15) days after the checks expire, redistribute the funds remaining in equal amounts to Settlement Class Members whose checks were cashed and those whose payments were directly deposited into their active Accounts, by mailing them a second check. *Id.* § IV.B.5. If redistribution is economically unfeasible or costs more than the amount to be redistributed, or if additional funds remain after the second distribution, the remainder of the Settlement Fund (less costs of administration) shall be paid to Greater Boston Legal Services ("GBLS") as the *cy pres* recipient. *Id. Cy pres* distributions are appropriate where "it is economically infeasible to distribute the money to class members" and "money remain[s] from the defendant's payout after money for

damages has been distributed to class members." *In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24, 34 (1st Cir. 2009); *see e.g., In re Lupron Mktg. and Sales Pracs. Litig.,* 677 F.3d 21, 31-37 (1st Cir. 2012) (upholding *cy pres* award to cancer foundation in case alleging overcharge of anti-cancer medication). The purpose of the *cy pres* award here will be directly related to the concerns of Plaintiff and the proposed Settlement Classes in this case because GBLS provides free legal assistance and representation to individuals of lesser means in disputes involving consumer protection laws, unfair business practices, and financial institution fraud. *See generally https://www.gbls.org/our-work/consumer-rights* (last accessed October 28, 2024).

Overdraft Forgiveness. Within one-hundred eighty (180) days after the Effective Date, Defendant will reduce the total amount of outstanding Representment Fees and/or APPSN Fees for Settlement Class Members with Charged-Off Accounts, provided that such Fees are reasonably calculable based on review and analysis of reasonably accessible Defendant transactional data and information. Settlement Agreement, § IV.A.5.

Prospective Relief. As of the Effective Date, Defendant shall no longer assess Representment Fees and  APPSN Fees. Settlement Agreement, § IV.D.

Releases. Upon Final Approval, Settlement Class Representative and each Settlement Class Member shall be deemed to have fully and irrevocably released and forever discharged the Released Parties from the Released Claims. Settlement Agreement, § V.A.1. The Released Claims include, but are not limited to, claims or defenses concerning the Representment Claims and the APPSN Claims, as well as those arising out of or relating to the allegations made in the State Court Action and/or the Federal Action. *Id.* §§ V.A.1-2. Defendant agrees to release its claims or rights to recover any amounts forgiven on any Charged-Off Account. *Id.* § V.A.5.

### 3.    Attorneys' Fees and Costs and Service Awards

Defendant has agreed not to oppose Class Counsel's request for reasonable attorneys' fees from the Settlement Fund in an amount not to exceed 33.33% of the Settlement Amount. Settlement Agreement, § IV.C.2. Nor will Defendant object to Class Counsel's request for reimbursement of reasonable expenses from the Settlement Amount. *Id.* Defendant also agrees not to oppose Class Counsel's request for Service Awards in the amount of $5,000.00 to be paid to Plaintiff for serving in her role as Settlement Class Representative. *Id.*

## II.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e)(2) requires that class action settlements be "fair, reasonable, and adequate." The approval process for a class action settlement involves two stages. *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503-DJC, 2018 WL 11293802, at *1 (D. Mass. Mar. 12, 2018) (citing *Manual for Complex Litig.* (Fourth) § 21.632 (2015) (describing multi-step approval process)). In the first stage, commonly known as "preliminary approval," the Court determines whether the class can be certified for purposes of giving notice to the class members and whether the proposed settlement is within the range of possible final approval. *Manual* at § 21.632. "In this preliminary evaluation of a proposed settlement, the Court determines only whether the settlement has 'obvious deficiencies' or whether 'it is in the range of fair, reasonable, and adequate.'" *In re Solodyn*, 2018 WL 11293802, at *1 (citing *Manual* § 21.632). In the second stage, commonly known as "final approval," after notice has been given to the class members and they have had an opportunity to opt-out or object, the Court holds a final hearing to decide whether to grant final approval to the settlement and enter judgment upon it as being "fair, reasonable, and adequate." *Manual* at § 21.634.

"As the Manual for Complex Litigation Fourth (2004) notes, the certification of a settlement class can provide significant benefits to class members while enabling defendants to

achieve an expedited and final resolution of multiple suits." *In re Lupron Mktg. & Sales Pracs. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004). Indeed, voluntary settlements are favored, and "[t]here is a presumption that a settlement is within the range of reasonableness '[w]hen sufficient discovery has been provided and the parties have bargained at arms-length.'" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (quoting *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

In assessing the reasonableness of a settlement, trial court judges must "balanc[e] the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Bezdek*, 809 F.3d at 82 (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009)). In general, four procedural guidelines support a finding that the proposed settlement is presumptively fair and reasonable: "(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron*, 345 F. Supp. 2d at 137.

However, "[b]efore the court can preliminarily approve the proposed settlement, it first must also 'determine whether to certify the class for settlement purposes.'" *Jean-Pierre v. J&L Cable TV Services, Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (citing *Hochstadt v. Bos. Sci. Corp.,* 708 F. Supp. 95, 101 (D. Mass. 2010)). Generally, a district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class. *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st. Cir. 2003). The analysis does not focus on whether the plaintiff has stated a cause of action or will prevail on the merits; but rather, whether the requirements of Rule 23 are met. *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298

(1st Cir. 2000) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). In the settlement context, there is an important refinement to the Rule 23 analysis: the court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A district court, however, must still give "undiluted, even heightened attention" to Rule 23's requirements to protect absent class members. *Id.* "This cautionary approach notwithstanding, the law favors class action settlements." *In re Lupron Mktg. and Sales Pracs. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005).

## III.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.  The Proposed Settlement is Fair, Adequate, and Reasonable

#### 1.  Fairness Standards

Although considerations in making a fairness determination pursuant to Rule 23(e) often overlap with the class certification requirements of Rule 23(a) and Rule 23(b), a district court must analyze fairness as a separate and distinct issue. *In re Lupron*, 228 F.R.D. at 93; *see Amchem*, 521 U.S. at 621 (Rule 23(e) "was designed to function as an additional requirement, not a superseding direction, for the 'class action' to which Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b)."). In doing so, as the Parties are proposing a settlement in lieu of litigation, there is a strong presumption that the proposed settlement falls within the appropriate "range of reasonableness" when certain procedural guidelines were followed during the process. *In re M3 Power Razor System Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62-63 (D. Mass. 2010).

Those guidelines include whether: "(1) the negotiations occurred at arm's length, (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the proposed class objected." *Id.* at 63 (citing *In re Lupron*, 345 F. Supp. 2d at 137). In particular, district courts give enormous weight to the opinion and judgment

of experienced counsel who conducted arm's length negotiations. *See Roland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable, and adequate should be given significant weight"); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (when the proponents of settlement are counsel with experience in the type of litigation in which they seek to settle, significant weight is given to such counsel's representations that the proposed settlement provides class-wide relief that is fair, reasonable and adequate).

### 2.    The Parties Engaged in Extensive, Arm's-Length Settlement Negotiations

The Settlement was reached only after several rounds of arm's-length negotiations conducted in good faith by experienced counsel and facilitated by a third-party neutral mediator. The Parties, through counsel, thoroughly analyzed their respective claims and defenses, contemplated the costs and risks of litigation, and exchanged detailed settlement communications regarding liability and possible frameworks for resolution.

At each step of the negotiation, counsel for both Parties thoughtfully considered the risks associated with continued litigation. Indeed, this case faced potential obstacles at all levels that could have resulted in no recovery at all for the Settlement Classes, including losing at the pleading stage; losing class certification; losing summary judgment; losing at trial; or losing on appeal at either class certification or after a successful trial. Any one of these risks would have been devastating to the potential recovery, and even if the case had survived to a final collected judgment, that would only be obtained after years of delay and increased costs of litigation that would reduce the benefit obtained. "In considering the proposed compromise, it seems also to be of importance that (if approved), the substantial amounts of money are available for class members

now, and not at some distant time in the future. . . . It has been held proper to take the bird in the hand instead of a prospective flock in the bush." *West Va. v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) (quoting *Ladd v. Brickley,* 158 F.2d 212, 220 (1st Cir. 1946)). Plainly, there was no guarantee at any juncture that Plaintiff and the putative class members would ultimately prevail in the Action and the Settlement is particularly favorable given the risks of continued litigation.

Plaintiff believes the benefits under the Settlement are as good as, if not better, than the likely results at trial. Indeed, Plaintiff's best-case scenario at trial would be full reimbursement of all APPSN Fees and Representment Fees. However, Defendant disputes that any of those Fees were improperly assessed and asserts that said Fees were permitted under the relevant account agreements. Given this context, the amount of the Net Settlement Fund to be distributed to Settlement Class Members, representing approximately 53% of total actual damages incurred by the Settlement Classes, is an excellent recovery driven by good faith, arm's-length negotiations conducted between Counsel. Gold Decl., ¶ 7.

### 3.    There Was Sufficient Informal Discovery to Inform Resolution

In assessing the sufficiency and meaningfulness of discovery, "a court need not possess evidence to decide the merits of the issue, because compromise is proposed in order to avoid further litigation." Newberg & Conte, *Newberg on Class Actions*, § 11.45 (4th ed. 2008). Rather, a court needs only sufficient information "to raise its decision above mere conjecture." *Id.* Importantly, the answer to whether sufficient discovery has been conducted to provide the parties with adequate information to act intelligently in settlement negotiations is a "qualitative" and not a "quantitative" one. *See Bezdek*, 79 F. Supp. 3d at 348 (finding the "parties had a sufficient understanding of the merits of the case in order to engage in informed negotiations" even though

the discovery period was "less exhaustive" than in other class action settlements because it was nevertheless "meaningful").

The Parties engaged in a sufficiently adequate amount of informal discovery to drive the Parties' settlement discussions, as well as Plaintiff having consulted her own expert to analyze Defendant's transaction data and formulate viable damages methodologies. The Parties did not discuss attorneys' fees and costs, nor any potential service award, until they first agreed on the material terms of the Settlement, including the form and manner of Class Notice, Settlement Class Member Settlement Payments, and the scope of the Releases. Gold Decl., ¶ 8.

Furthermore, Plaintiff, through her counsel, engaged in an independent investigation of hrer claims as well as potential claims of other Settlement Class Members. Gold Decl., ¶ 9. Based on the information obtained, Plaintiff respectfully asserts that this Court may properly weigh, as the Parties and their counsel have, the pros and cons of continued litigation versus the proposed settlement of all claims, as set forth in the Settlement Agreement.

### 4. The Proponents of the Settlement Are Experienced in Similar Litigation

Class Counsel are highly experienced in complex class action litigation, including consumer disputes involving banking fee claims. *See* Gold Decl., ¶ 10, Exhibits **2-3**, (firm resumes). Collectively, Class Counsel has secured hundreds of millions of dollars on behalf of consumers as a result of their efforts in evoking large-scale reform of overdraft fee practices through class action settlements reached with financial institutions nationwide, including in Massachusetts. *See id.* Counsel for both Parties, as highly experienced trial attorneys and class counsel, are confident in the terms of the Settlement after expending a significant amount of time engaging in informed negotiations. Thus, Class Counsel's experience and considered judgment

weighs heavily in favor of finding the Settlement to be fair, adequate, and reasonable. *See Bussie,* 50 F. Supp. 2d at 77.

**5.    Settlement Class Objections**

Although Settlement Class Member objections are more properly dealt with at a final approval hearing, neither Plaintiff nor Class Counsel are aware of any competing claims made by any proposed Settlement Class Members. Gold Decl., ¶ 11. *See In re Asacol Antitrust Litig.*, No. 1:15-cv-12730 (DJC), 2017 WL 4118967, at *3 (D. Mass. Sept. 14, 2017) (explaining that the "fourth factor is more often relevant for purposes of final approval, after notice has issued and class members have been given an opportunity to object to a settlement").

As demonstrated throughout, Plaintiff and the Settlement Classes faced significant legal risks in this case. Given these risks, highly experienced counsel for the Parties diligently engaged in arm's-length negotiations, conducted in good faith and driven by a substantial amount of informal discovery and investigation. A settlement that provides Settlement Class Members with a direct, guaranteed payment of approximately 53% of their most probable damages falls within the range of possible approval. Accordingly, all factors weigh in favor of finding that the proposed Settlement is fair, adequate, and reasonable, and therefore, Plaintiff respectfully requests that the Court grant preliminary approval.

**B.    The Proposed Settlement Classes Meet the Requirements of Rule 23**

It is well-settled that, to obtain class certification under Rule 23, a moving party must satisfy the four elements of Rule 23(a) and at least one element of Rule 23(b). *See Smilow*, 323 F.3d at 38 (citing *Amchem Prods.*, 521 U.S. at 614). Here, Plaintiff seeks to certify two Settlement Classes pursuant to Rules 23(a) and (b)(3). As set forth below, the proposed Settlement Classes satisfy all elements of Rule 23(a) and (b)(3).

14

**1.     The Proposed Settlement Classes Satisfy Rule 23(a)**

Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### i.     Numerosity

The threshold to establish numerosity is low. *See Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st. Cir. 2009); *DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 98 (D. Mass. 2010) ("Classes of 40 or more have been found to be sufficiently numerous[.]"). Here, Defendant's records indicate that the Settlement Classes includes thousands current and former accountholders of Sharon & Crescent United Credit Union. Therefore, the Settlement Classes are sufficiently numerous such that joinder is impracticable.

### ii.     Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . Their claims must depend upon a common contention . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal citations and quotations omitted).

Like the numerosity requirement, the threshold for commonality "is a low bar and courts have generally given it a permissive application." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008) (citations omitted). Indeed, commonality "requires

only that resolution of common questions affect all or a substantial number of the class members." *See In re Lupron*, 228 F.R.D. at 88 (citations omitted).

Here, both common facts and common legal issues are present. The Settlement Class Members' claims arise from a common nucleus of facts because all of them maintained accounts governed by Defendant's form contract language and were uniformly assessed APPSN Fees and/or Representation Fees by Defendant. Common legal issues also unite the Settlement Classes. They include: (1) the elements of Plaintiffs' claims and Defendant's defenses; (2) whether Defendant breached its contracts with Plaintiff and the Settlement Class Members when it assessed APPSN Fees on debit card transactions that were authorized with a positive account balance and settled with a negative account balance; (3) whether Defendant breached its contracts with Plaintiffs and the Settlement Class Members when it assessed Representation Fees on reinitiated ACH transactions; (4) whether Defendant breached the implied covenant of good faith and fair dealing through these fee practices; (5) whether Plaintiff and the Settlement Class Members have sustained damages as a result of Defendant's business practices; and (6) the measure of damages owed to Plaintiff and Settlement Class Members. There are no issues of law or fact that affect only individual Settlement Class Members.

Thus, because resolution of these issues will globally affect the claims of all proposed Settlement Class Members, the commonality requirement of Rule 23 is met.

### iii.    Typicality

To establish typicality, a party need only show that "the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *See In re Lupron,* 228 F.R.D. at 89 (citation omitted). The test for typicality is not

demanding. *See id.* "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical." *Bezdek,* 79 F. Supp. 3d at 338.

Here, Plaintiff's claims are based on the same facts and underlying legal theories as those of the Settlement Classes. Like all other class members, Plaintiff was charged APPSN Fees and/or Representation Fees pursuant to the same policies and practices that Defendant applied. Because the same proof would suffice for Plaintiff's claims as it would for absent Class Members, Plaintiff's claims are typical of those of the putative Settlement Classes she seeks to represent. The Fees at issue here arise from "the same events or course of conduct" that can be readily evaluated by this Court on a collective basis. *Bezdek*, 79 F. Supp. 3d at 339; *see e.g., Meaden v. HarborOne Bank*, No. 23-CV-10467-AK, 2023 WL 3529762, at *2 (D. Mass. May 18, 2023) (plaintiff's claim was "typical to the class as a whole" where "all potential members were allegedly charged multiple fees on a single item" and sought recovery "grounded in contract law"). This is precisely the kind of case that should be resolved on a class-wide basis. Accordingly, typicality is also met.

### iv.    Adequacy

Rule 23(a)(4) requires that the "proposed class representatives 'fairly and adequately protect the interests of the class." *In re M3 Power Razor*, 270 F.R.D. at 55 (quoting Rule 23(a)(4)). The standard for satisfying adequacy is not high; a party need only show that (1) the representative party will not conflict with the interests of any class member, and (2) the counsel chosen by the representative party is qualified and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Co.,* 780 F.2d 124, 130 (1st Cir. 1985). Particularly in complex actions such as the case here, a representative plaintiff need not have expert knowledge of the case; general knowledge and a willingness to participate in discovery are all that is required. *See In re Lupron*, 228 F.R.D. at 90.

Plaintiff understands that her role is to remain informed regarding the lawsuit and to assist Class Counsel in the interest of the Settlement Classes. Plaintiff understands that she cannot, and does not, have any legal conflicts with the Settlement Classes. And Plaintiff has already demonstrated her willingness to serve the Settlement Class's interest by filing this lawsuit to vindicate the interests of the Settlement Classes, and she has actively participated in the prosecution of this case on behalf of the Settlement Classes since its inception. Plaintiff communicates effectively with Class Counsel, has provided documents to Class Counsel, has participated in informal discovery throughout this litigation, and is willing to sit for a deposition if noticed by Defendant. Moreover, Plaintiff does not have any claims antagonistic to or in conflict with those of other members of the Settlement Classes. As discussed above, Plaintiff is pursuing the exact same legal theories as the rest of the Settlement Classes relating to the same courses of Defendant's conduct. Plaintiff and other Class Members' claims turn on the same alleged misrepresentations and omissions. In addition, Plaintiff seeks remedies equally applicable and beneficial to herself and all other members of the Settlement Classes. *See Bussie*, 50 F. Supp. 2d at 71 (finding named plaintiffs adequate in breach of contract action where they, "like the Class overall, fell victim to Allmerica's alleged scheme and, as such, the representatives and the Class share the same interest in seeking remediation for their injury").

Plaintiffs have also selected experienced and competent counsel to represent the Settlement Classes. Collectively, Class Counsel has an extensive background in litigating complex litigation and consumer class actions (including several bank fee cases such as this one), has been appointed class counsel in prior and similar cases, and has the resources necessary to prosecute this Action to its conclusion. Class Counsel has recovered hundreds of millions of dollars for the classes they

have represented. Thus, Class Counsel is qualified to represent the Settlement Classes and will, along with Plaintiff, vigorously protect the interests of the Settlement Classes.

### 2.    The Proposed Settlement Classes Satisfy Rule 23(b)(3)

Rule 23(b) provides, in relevant part, that if Rule 23(a) is satisfied, an action may be maintained as a class action if

> the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy . . .

Fed. R. Civ. P. 23(b)(3) (emphasis added). Courts commonly refer to this as demonstrating "predominance" and "superiority." *In re M3 Power Razor*, 270 F.R.D. at 55. "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Lupron*, 228 F.R.D. at 92 (quoting *Amchem*, 521 U.S. at 615). "The superiority analysis dovetails with the predominance analysis." *Id.*

### i.    Common Questions Predominate

A district court's predominance inquiry under Rule 23(b)(3) overlaps with, but is more demanding than, its commonality inquiry under Rule 23(a)(2). *See In re M3 Power Razor*, 270 F.R.D. at 55. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *See Amchem*, 521 U.S. at 623; *In re Lupron*, 228 F.R.D. at 91. Furthermore, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for

handling the dispute on a representative rather than on an individual basis." 7A Wright & Miller. *Federal Practice and Procedure* § 1778 (2d ed. 1986).

The predominance requirement is easily satisfied here. As discussed above, Plaintiff alleges that all Settlement Class Members are entitled to the same legal remedies premised on Defendant's same alleged wrongdoing. And the issues for every claimant are substantially the same, if not identical. To illustrate, the core issue of contractual interpretation that entirely governs the outcome of this case is common to each and every member of the Settlement Class. *See e.g., Meaden*, 2023 WL 3529762, at *2-3 (finding "common issues of fact" predominated in banking fee class action where "all class members maintained accounts with [the Bank], which were governed by the same form contract language," incurred "multiple fees for single transactions," and the "predominant common legal question" was "whether [the] Bank breached its contracts with all class members when it charged multiple fees to their accounts"); *Wright v. Southern New Hampshire Univ.*, 565 F. Supp. 3d 193, 205 (D.N.H. 2021) (finding common issues predominated in breach of contract action where all class members had "substantially similar contracts" with the university); *Bussie*, 50 F. Supp. 2d at 71. And where, as here, common questions predominate as to liability, predominance is typically met "even if individual damages issues remain." *Smilow*, 323 F.3d at 40 (collecting cases).

Under these circumstances, predominance under Rule 23(b)(3) is satisfied.

### ii. A Class Action is the Superior Method to Resolve this Controversy

Rule 23(b)(3) sets forth non-exhaustive factors for determining whether a class action is superior to other methods for the fair and efficient adjudication of the controversy. In analyzing superiority, Rule 23(b)(3) expressly states that a court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Superiority dovetails with predominance. *In re Lupron*, 228 F.R.D. at 92. Superiority generally is met when "seriatim litigation would promise such modest recoveries as to be economically impracticable." *Gintis v. Bouchard Tansp. Co., Inc.*, 596 F.3d 64, 66-67 (1st Cir. 2010). In particular, when a proposed action involves an excessive number of potential plaintiffs with small individual claims, superiority is usually met. *In re M3 Power Razor*, 270 F.R.D. at 56. "In the absence of class certification, there would be nothing for an individual class member to control because a separate action would not be prosecuted." *Id.* That is because, absent certification, it is highly unlikely that any individual consumer will seek redress, as the costs of litigation would far exceed the damages recoverable. *Id.* Put simply, then, since "few, if any, members of the settlement class have incurred damages in an amount sufficient to justify the costs of pursuing an individual action[,]" pursuing a class action as a "litigation vehicle" is a superior method of adjudicating those claims. *In re Lupron*, 228 F.R.D. at 92.

A class action is the superior method of adjudicating this case. Because the proof of Defendant's violations is common to all Settlement Class Members, a class action will avoid repetitive and needless litigation of the same issues and instead, will permit all claims to be resolved only once, with binding effect. The alternative is for each class member to file a separate case; but here, it would be impracticable to bring each class member's claim individually and such small claims would not be economically feasible or practical. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or

her rights." (quotation and citation omitted)). Thus, it is highly unlikely that any proposed Settlement Class Member would have any incentive to bring a claim against Defendant absent the ability to use a class action as a litigation vehicle. Indeed, "given the large number of potential class members and small value of individual claims, not only is a class action the superior method of resolving this case, it is the very sort of case for which the Rule 23(b)(3) class action mechanism was intended." *In re Dial Complete Mktg. and Sales Pracs. Litig.*, 312 F.R.D. 36, 57 (D.N.H. 2015).

No other proposed Settlement Class Member, to Plaintiff's knowledge, has brought another action against Defendant or has any interest in individually controlling the prosecution of separate actions. Gold Decl., ¶ 12.

Additionally, the fact that the Parties have proposed a settlement eliminates any potential difficulties in managing the trial of the litigation as a class action. *Amchem*, 521 U.S. at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial"). Therefore, superiority is also satisfied.

## C. The Proposed Class Notice to Settlement Class Members is the Best Notice Practicable Under the Circumstances

Rule 23(e) directs that notice of a proposed settlement be given to all members of the class. Fed. R. Civ. P. 23(e). Among other things, notice is provided to inform class members of their rights to exclude themselves from the settlement and not to be bound by any judgment that subsequently issues from final approval. *See Eisen*, 417 U.S. at 173. For any class certified under Rule 23(b)(3) in particular, a district court must direct the best notice practicable "under the circumstances" to class members, including individual notice to all members who can be identified through reasonable effort. *Id.* (*citing* Fed. R. Civ. P. 23(c)(2)(B)). That notice must concisely state

in plain, easily understandable language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). The notice must also inform proposed class members of Class Counsel's request for attorneys' fees and costs. Fed. R. Civ. P. 23(h)(1). The Parties believe that the form of Class Notice and manner of delivery of the Class Notice proposed in the Settlement Agreement satisfy both Rule 23(c)(2)(B) and Rule 23(e) requirements.

The proposed Class Notice is accurate, informative, neutral, and readable by the average person. *See* Settlement Agreement, ***Exhibit B***. It is written in plain, simple language, and provides key information about the Settlement Agreement so that members of the Settlement Classes can choose what to do, including: the settlement benefits; the fact that Settlement Class Members will be bound by the judgment; the right to opt out or object and the method for doing so; and the time, date, and place of the final approval hearing. Moreover, the Class Notice will be directly delivered via email and/or mail, respectively, to each member of the Settlement Classes. Additionally, Settlement Class Members will have access to the Settlement Website, which will also set forth the specific procedures for objecting to and opting out of the Settlement and information concerning the date, time, and location of the Final Approval Hearing.

Thus, the Parties are confident that these methods cumulatively provide a strong chance of effecting notice of the Settlement to a substantial number of Settlement Class Members. In light of the amount of Class Member contact information within Defendant's control, this constitutes the best notice practicable under the circumstances. Similarly, the content of the Class Notice sets

forth substantial detail regarding the nature of the action and the claims, the structure of the Settlement and class benefits, and apprises each Class Member of his or her rights and obligations, as such, the Court should approve the proposed Class Notice. *See Bezdek*, 79 F. Supp. 3d at 334-36 (finding email and postal notice, among other methods, including the maintenance of a settlement website, was "robust" and given to settlement class members "by the best means practicable under the circumstances"); *In re Lupron*, 345 F. Supp. 2d at 140 (approving notice program that included the mailing of notice to identifiable class members and publishing notice on settlement website).

## IV. PLAINTIFF SHOULD BE APPOINTED CLASS REPRESENTATIVE, KALIELGOLD PLLC, TANOWITZ LAW OFFICE, P.C., AND GIBBS LAW GROUP LLP SHOULD BE APPOINTED AS CLASS COUNSEL, AND VERITA CLASS ACTION SETTLEMENT SERVICES SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR

Plaintiff requests that the Court designate her as Settlement Class Representative for the Settlement Classes. For each of the reasons addressed regarding adequacy above, Plaintiff will fairly and adequately protect the interests of the Settlement Classes.

Additionally, Rule 23(g)(1) requires the Court to appoint class counsel to represent the interests of the Class. *See* Fed. R. Civ. P. 23(g)(1). Plaintiffs respectfully requests that KalielGold PLLC, Tanowitz Law Office, P.C., and Gibbs Law Group LLP be appointed Class Counsel. As set forth above, the law firms are well-equipped to vigorously, competently, and efficiently represent the proposed Settlement Classes. *See* Gold Decl., ¶ 13. Accordingly, the Court should appoint KalielGold PLLC, Tanowitz Law Office, P.C., and Gibbs Law Group LLP as Class Counsel.

Further, Plaintiff requests that the Court appoint Verita Class Action Settlement Services ("Verita") as the Settlement Administrator to administer the Settlement and provide notice to the Settlement Classes. Settlement Agreement, §§ I.43, III.B.

**V.   THE COURT SHOULD APPROVE THE PROPOSED DEADLINES FOR THE MAILING OF THE CLASS NOTICE, FOR SETTLEMENT CLASS MEMBERS TO OBJECT TO OR OPT OUT OF THE SETTLEMENT, AND FOR FILING FINAL APPROVAL PAPERS, AS WELL AS SET A FINAL APPROVAL HEARING**

Lastly, the Settlement provides Settlement Class Members with sufficient time to decide whether they will exclude themselves from or object to the Settlement. The Settlement Administrator shall complete the mailing and emailing of all Class Notices within twenty-one (21) days of its receipt of the Settlement Class Member List. Settlement Agreement, § III.D.3. The Opt-Out and Objection Deadline will be specified in the Class Notice, but in no event will it be any later than sixty (60) days after the deadline for the completion of Class Notice. Settlement Agreement, § I.27. This is reasonable amount of time for Settlement Class Members to make an informed decision, while also not unduly delaying consideration of final approval for Settlement Class Members who do wish to timely receive a Settlement Class Member Payment. Therefore, the Court should approve the proposed Opt-Out and Objection Deadline and deadline to complete mailing of the Class Notice.

Further, a final approval hearing must be held after notice has been completed by the Settlement Administrator and after Settlement Class Members have had an opportunity to opt-out of or object to the terms of the Settlement. The Final Approval Hearing will be the appropriate time for Class Counsel and Counsel for Defendant to appear and further explain why the Settlement should be granted final approval. Also, Class Counsel's Fee Application for attorneys'

fees and costs, as well as the Service Award Application for service awards for the Settlement Class Representatives, will be made at the Final Approval Hearing.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court: (1) preliminarily approve the Settlement, finding it to be fair, adequate, and reasonable; (2) certify the Settlement Classes for settlement purposes only; (3) schedule the Final Approval Hearing; (4) approve the proposed Class Notice and authorize its dissemination to the Settlement Classes; (5) set deadlines for the mailing of the Class Notice, opting out of or objecting to the Settlement, and filing papers in connection with the Final Approval Hearing; (6) appoint Plaintiff as Settlement Class Representative and Class Counsel as counsel for the Settlement Classes; and (7) approve the appointment of Verita as the Settlement Administrator.

Dated: November 27, 2024

Respectfully submitted,

*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz, BBO #630710
**TANOWITZ LAW OFFICE, P.C.**
1340 Centre Street, Suite 103
Newton, MA 02459 617-965-1130
Telephone : (617)965-1130
Email: ellen@tanowitzlaw.com

David M. Berger (*to be admitted pro hac vice*)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
Email: dmb@classlawgroup.com

Shawn K. Judge (*to be admitted pro hac vice*)
Mark H. Troutman (*to be admitted pro hac vice*)
**GIBBS LAW GROUP LLP**
1554 Polaris Parkway, Suite 325

Columbus, Ohio 43240
Telephone: (510) 350-9700
Fax: (510) 350-9701
Email: skj@classlawgroup.com
Email: mht@classlawgroup.com

Jeffrey Kaliel (*to be admitted pro hac vice*)
Sophia Gold (*to be admitted pro hac vice*)
**KALIEL GOLD PLLC**
1100 14th Street NW, 4th Fl.
Washington, DC 20005
Telephone: (202) 250-4783
Email: jkaliel@kalielpllc.com
Email: sgold@kalielgold.com

*Attorneys for Plaintiff and the Proposed Class*