## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered into on September___, 2024, by and between (1) Plaintiff Suzanne Dos Santos Pais ("Plaintiff" or "Settlement Class Representative"), individually and on behalf of the proposed Settlement Classes (defined below) and (2) Defendant Sharon & Crescent United Credit Union ("Defendant"). Plaintiff and Defendant are collectively referred to herein as the "Parties." The Parties intend this Settlement Agreement to resolve and settle all released rights and claims to the extent set forth below and subject to the terms and conditions set forth below.

### RECITALS

1.      On December 7, 2022, Plaintiff filed a class action complaint in the Business Litigation Session of the Suffolk Superior Court, Docket No. 2284CV02759-BLS1 (the "State Court Action") asserting claims against Defendant for breach of contract and breach of the covenant of good faith and fair dealing based on Defendant's alleged practices of (1) assessing non-sufficient funds fees ("NSF Fees") in connection with represented automated clearinghouse ("ACH") transactions (the "Representment Claims") and (2) assessing overdraft fees ("OD Fees") in connection with debit card transactions that were authorized with a positive account balance, but purportedly settled with a negative account balance (the "APPSN Claims"). On March 13, 2023, Plaintiff amended her complaint to include a claim for a violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, based on the same allegations.

2.      On April 16, 2024, the Parties participated in an arms-length mediation of the State Court Action with the assistance of the Honorable Margaret R. Hinkle (Retired) of JAMS.

3.      As consideration for the Settlement, certain Settlement Class Members have received a pre-settlement refund of certain APPSN Fees ("Pre-Settlement Refund"). The Parties

1

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

intend for all such Settlement Class Members to be included in the definition of the APPSN Class and to be bound by this Agreement.

4.     Within seven (7) days of the date of the last Party's signature to this Agreement, Plaintiff shall cause to be filed a stipulation of dismissal without prejudice in the State Court Action and Plaintiff shall file a "Federal Court Action" asserting the Claims in the United States District Court for the District of Massachusetts.  A copy of the to-be-filed "Federal Court Complaint" in the Federal Court Action is attached as Exhibit A.  The State Court Action and the Federal Court Action, collectively, shall be referred to as the "Action."

5.     Defendant denies any and all liability to Plaintiff and the members of the Settlement Classes in the Action, and believes it would ultimately be successful in its defense of all claims asserted in the Action, but nevertheless desires to settle the Action, and all claims that could have been alleged therein, on the terms set forth in this Agreement solely for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing these proceedings.

6.     Plaintiff and Class Counsel have investigated the facts and law and have concluded that the Settlement is in the best interest of Plaintiff and the Settlement Classes to avoid the risks and uncertainties of continuing these proceedings, and to assure meaningful benefits to the Settlement Classes.

7.     The Parties agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any federal or state statute, rule, or regulation, or principle of common law or equity, or of any liability or wrongdoing whatsoever, or the truth of any of the claims asserted in the Action, or of the infirmity of any of the defenses that have been raised or could be raised by Defendant.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

8.     Without any admission or concession whatsoever by the Parties as to the strength or weakness of the merits of the claims and defenses asserted in the Action, it is hereby stipulated and agreed, in consideration of the covenants and agreements set forth herein, that the Action and all Released Claims shall be fully and forever settled, compromised, released, and dismissed on the merits with prejudice, subject to the Court's approval, on the following terms and conditions:

## AGREEMENT

## I.     DEFINITIONS

As used in this Agreement, the terms defined below shall have the meanings assigned to them when capitalized in the same fashion as in Section I of this Agreement.

1.     "Account" means any personal or business account maintained by Defendant in the name of one or more Settlement Class Members.

2.     "Action" means, collectively, the State Court Action and the Federal Court Action.

3.     "Agreement," "Settlement," or "Settlement Agreement" means this Settlement Agreement and Release.

4.     "APPSN Claims" means the claims asserted in the State Court Action based on the assessment of APPSN Fees.

5.     "APPSN Class" means all Account holders who were charged one or more APPSN Fees during the APPSN Class Period.

6.     "APPSN Class Period" means December 7, 2016 through April 18, 2023.

7.     "APPSN Fee" means any overdraft fee assessed to an Account during the APPSN Class Period for a debit card transaction that was authorized with a positive account balance and settled with a negative account balance as identified based on review and analysis of reasonable accessible transactional data and information.

3

8.      "Attorneys' Fees" means the attorneys' fees and costs related to this Settlement Agreement that Class Counsel intend to seek under Section IV.C of this Agreement.

9.      "Charged Off Account" means any Account of a Settlement Class Member that (a) was assessed a Representment Fee or APPSN Fee during the APPSN Class Period; (b) was closed with a Representment Fee or APPSN Fee owing to Defendant; and (c) continues to owe a Representment Fee or APPSN Fee to Defendant as of the Final Approval, as identified based on a review and analysis of reasonably accessible transactional data and information.

10.     "Claims" means, collectively, the Representment Claims and the APPSN Claims.

11.     "Class Counsel" means KalielGold PLLC and Gibbs Law Group LLC.

12.     "Class Notice" means the notice(s), substantially in the form attached as Exhibit(s) B and C, that will be provided to the Settlement Classes pursuant to Section III.D of this Agreement.

13.     "Court" means the United States District Court for the District of Massachusetts.

14.     "Defendant's Counsel" means K&L Gates LLP.

15.     "Defendant" means Sharon & Crescent United Credit Union.

16.     "Effective Date" means the Final Approval Date, or such date as the Parties otherwise agree in writing.

17.     "Federal Court Action" means the action that will be filed in the United States District Court for the District of Massachusetts, based on the same allegations and Claims asserted in the State Court Action.

18.     "Federal Court Complaint" means the operative complaint filed in the United States District Court for the District of Massachusetts, as required by Section III.A of this Settlement Agreement, and which shall be in substantially the same form as Exhibit A.

4

19.     "Fee Application" means Class Counsel's application for Attorneys' Fees.

20.     "Fees" means, collectively, the Representment Fees and the APPSN Fees that are at issue in the Claims.

21.     "Final Approval" means the approval of this Settlement Agreement by the Court at or following the Final Approval Hearing, and entry of the Final Approval Order on the Court's docket.

22.     "Final Approval Date" means the last date on which all the following have occurred:

a.     The Court has issued all necessary orders under Fed. R. Civ. P. 23 approving the Settlement in a manner substantially consistent with the terms and intent of this Agreement;

b.     The Court enters a Final Approval Order and judgment finally approving the Settlement of the Federal Court Action in a manner substantially consistent with the terms and intent of this Agreement; and

c.     Either: (i) 35 days have passed after entry of the Court's Final Approval Order and judgment, and within such time, no appeal is taken, or (ii) if an appeal is taken, the date upon which all appeals (including any requests for rehearing or other appellate review), as well as all further appeals therefrom (including all petitions for certiorari) have been finally resolved in a manner that is substantially consistent with the terms and intent of this Agreement, as determined by Defendant, and the deadline for taking any further appeals has expired such that no future appeal is possible.

23.     "Final Approval Hearing" means the hearing at or after which the Court will determine whether to finally approve the Settlement as fair, reasonable, and adequate.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

24. "Final Approval Order" means the Final Approval Order to be submitted to and entered by the Court in connection with the Final Approval Hearing, the proposed form of which is attached hereto as "Exhibit D".

25. "Last Known Address" means the most recently recorded mailing address for a Settlement Class Member, as such information is contained in Defendant's electronic records, or as updated by the procedures set forth herein.

26. "Net Settlement Fund" means the Settlement Amount, after deductions for: (i) any award of Attorneys' Fees; (ii) the Service Award; (iii) the cost of Class Notice; (iv) Settlement Administration Expenses; and (v) Taxes.

27. "Opt-Out and Objection Deadline" means the date 60 days after the deadline for the completion of Class Notice, or any other date set by the Court, by which the Settlement Class Members must opt out of the Settlement or make any objection to the proposed Settlement, the Fee Application, and/or the Service Award Application, in accordance with the procedures set forth herein and/or in any order of the Court.

28. "Overdraft Forgiveness Amount" means the total amount that Defendant, without admission of liability, agrees to provide as consideration for this Agreement in the form of reductions to the outstanding Representment Fees and/or APPSN Fees for Settlement Class Members with Charged Off Accounts, provided that such Fees are reasonable calculable based on review and analysis of reasonably accessible transactional data and information.

29. "Plaintiff" means Suzanne Dos Santos Pais.

30. "Preliminary Approval" means preliminary approval of the Settlement Agreement by the Court, conditional certification of the Settlement Classes, and approval of the method and content of the Class Notice to the Settlement Class Members.

6

31.    "Preliminary Approval Date" means the date on which the Preliminary Approval Order, or any other order(s) preliminarily approving the settlement, are entered by the Court.

32.    "Preliminary Approval Hearing" means the hearing at or after which the Court will determine whether to preliminarily approve the Settlement as fair, reasonable, and adequate and authorize the mailing of the Class Notice.

33.    "Preliminary Approval Order" means the order to be submitted to and entered by the Court in connection with the Preliminary Approval Hearing, the proposed form of which is attached hereto as Exhibit E.

34.    "Pre-Settlement Refund" shall mean the One Hundred Seventy-Six Thousand Four Hundred and Ninety-Six Dollars and Zero Cents ($176,496.00) that Defendant previously agreed to refund to certain Settlement Class Members and, as of April 18, 2024, has refunded to certain Settlement Class Members.

35.    "Released Claims" means the claims and matters released in Section V of this Settlement Agreement.

36.    "Released Parties" means the individuals and entities released in Section V of this Settlement Agreement.

37.    "Representment Claims" means the claims asserted in the State Court Action based on the assessment of Representment Fees.

38.    "Representment Class" means all Account holders who were charged one or more Representment Fees during the Representment Class Period.

39.    "Representment Class Period" means through December 7, 2016, through October 31, 2021.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

40.    "Representment Fee" means a NSF Fee assessed in connection with an ACH entry on an Account that (a) was resubmitted by the merchant or its bank with a "RETRY PYMT" indicator after the initial request for payment was declined or (b) was preceded by another returned ACH entry submitted by the same merchant in the same amount within the last ten days, so long as the merchant had not used the "RETRY PYMT" indicator on a resubmitted transaction.

41.    "Service Award" means the Court-approved service award to the Settlement Class Representative, pursuant to Section IV of this Settlement Agreement.

42.    "Service Award Application" means Class Counsel's application for a Service Award to the Settlement Class Representative.

43.    "Settlement Administrator" means Verita Class Action Settlement Services ("Verita"), subject to Court approval.

44.    "Settlement Administration Expenses" means the costs and expenses reasonably and actually incurred in obtaining the services of the Settlement Administrator to facilitate the Settlement and the costs and expenses incurred by Verita in connection with the Settlement, which work includes but is not limited to printing and mailing the Class Notice, establishing a settlement website, mailing settlement checks to Settlement Class Members, preparing the Settlement Class Member List, identifying Settlement Class Members and Fees assessed to Charged-Off Accounts, and related services.

45.    "Settlement Amount" means Seven Hundred Twenty-Five Thousand Dollars and Zero Cents ($725,000.00) which is inclusive of: (i) all payments to Settlement Class Members, including all payments already made as part of the Pre-Settlement Refund; (ii) any award of Attorneys' Fees; (iii) the Service Award; (iv) the cost of Class Notice; (v) Settlement Administration Expenses; and (vi) Taxes.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

46.    "Settlement Class Member" means a person in the Settlement Classes who is not a Successful Opt-Out.  If an Account has more than one account holder, then all authorized account holders shall be treated as one Settlement Class Member for purposes of the Settlement.

47.    "Settlement Class Member Payment" means the payment to a Settlement Class Member from the Settlement Amount.

48.    "Settlement Class Member List" means the list of all known Settlement Class Members to be provided by Defendant's Counsel to the Settlement Administrator in accordance with the terms and provisions of Section III.D.1 hereof.  The Settlement Class Member List will be compiled based on reasonably accessible transactional data and other information available to Defendant.  The costs of identifying and preparing the Settlement Class Member List, including any work done prior to the execution of the Settlement Agreement, shall be paid out of the Settlement Fund.

49.    "Settlement Class Representative" means Plaintiff Suzanne Dos Santos Pais.

50.    "Settlement Classes" means, collectively, the APPSN Class and the Representment Class.

51.    "Settlement Fund" means the Settlement Amount and any other funds held in escrow by the Settlement Administrator pursuant to this Settlement Agreement, including accrued interest.

52.    "State Court Action" means the action captioned, *Suzanne Dos Santos Pais v. Sharon & Crescent United Credit Union*, Docket No. 2284CV02759-BLS-1, that was filed in and, as of the date that the Parties executed this Settlement Agreement, is pending in the Business Litigation Session of the Suffolk Superior Court.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

53.    "Successful Opt-Out" means any person or persons who timely and validly exercise their right to opt out of the Settlement Classes, pursuant to Section III.D.11 hereof and Fed. R. Civ. P. 23, but shall not include, in the discretion of the Parties: (a) persons whose Opt-Outs are challenged by Defendant and the challenge is not overruled by the Court or withdrawn by Defendant; (b) persons whose communications are not treated as an Opt-Out, as provided in Section III.D.11 hereof; and (c) persons who purport to opt out of the Settlement as a group, aggregate, or class.

54.    "Taxes" means (1) all federal, state, or local taxes of any kind on any income earned on the Settlement Fund and (2) the reasonable expenses and costs incurred by the Settlement Administrator in connection with determining the amount of, and paying, any taxes owed on interest accrued on the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants).

55.    "Uncashed Settlement Checks" means any checks sent to Settlement Class Members that remain uncashed after a period of 180 days from the date of the first distribution of checks to Settlement Class Members.

56.    Capitalized terms used in this Settlement Agreement but not defined above shall have the meaning ascribed to them in this Settlement Agreement, including the attached Exhibits.

## II.    <u>SETTLEMENT CLASSES</u>

A.    <u>Class Definitions</u>.  To effectuate the Settlement, the Parties agree and consent, for settlement purposes only, and subject to Court approval, that the following Settlement Classes shall be certified:

**Representment Class:** All Account holders who were charged one or more Representment Fees during the Representment Class Period.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

**APPSN Class:** All Account holders who were charged one or more APPSN Fees during the APPSN Class Period.

B.    <u>Certification of Settlement Purposes Only</u>.    The Parties' agreement as to certification of the Settlement Classes is solely for purposes of effectuating a settlement and for no other purpose.  Defendant retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to contest class certification, if the Settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to become effective.  The Parties acknowledge that there has been no stipulation to any classes or certification of any classes for any purpose other than effectuating the Settlement, and that if the Settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to become effective, this agreement as to certification of the Settlement Classes becomes null and void ab initio, and this Settlement Agreement or any other Settlement-related statement may not be cited regarding certification of the Settlement Classes, or in support of an argument for certifying a class for any purpose related to this or any other proceeding.

C.    <u>Settlement Class Representative</u>.  The Parties agree that, for settlement purposes only, Plaintiff is an adequate Class Representative of the Settlement Classes.

III.    <u>**SETTLEMENT PROCEDURES**</u>

A.    <u>Filing in Federal Court</u>. To effectuate the settlement, within seven (7) days of the date of the last Party's signature to this Agreement: (1) Plaintiff shall cause to be filed a stipulation of dismissal without prejudice in the State Court Action; (2) Plaintiff shall file the Federal Court

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

Complaint, in the form attached as Exhibit A, in the United States District Court for the District of Massachusetts; and (3) Plaintiff shall, simultaneous with the filing of the Federal Court Complaint, file a stipulated motion to stay the Federal Court Action pending completion and Final Approval of the Settlement.  Plaintiff shall not serve the Federal Court Complaint on Defendant.

      B.    <u>Settlement Administrator</u>.  Subject to Court approval, Verita will administer the Settlement.  All costs of settlement administration shall be paid from the Settlement Fund.

      C.    <u>Preliminary Approval Motion</u>.  As soon as practicable after the execution of this Agreement, and not later than seven (7) days after filing the Federal Court Complaint, Plaintiff shall move the Court in the Federal Court Action for an order substantially in the form of Exhibit A hereto, which shall specifically include provisions that: (a) preliminarily approve the Settlement memorialized in this Agreement as fair, reasonable, and adequate; (b) certify the Settlement Classes as defined herein for settlement purposes only; (c) set a date for a Final Approval Hearing; (d) approve the proposed Class Notice that is attached as Exhibit(s) B and C and authorize its dissemination to Settlement Class Members; (e) set deadlines consistent with this Agreement for mailing of the Class Notice, opting out of, or objecting to the Settlement, and filing papers in connection with the Final Approval Hearing; (f) appoint Settlement Class Representative as class representative and Class Counsel as counsel for the Settlement Classes; and (g) approve the appointment of the Settlement Administrator.

      D.    <u>Class Notice</u>. The Settlement Administrator shall provide timely Class Notice in the manner and form approved by the Court.

      1.    Within 90 days of the Preliminary Approval Date, Defendant's Counsel shall provide to the Settlement Administrator the Settlement Class Member List.  In preparing the Settlement Class Member List, Defendant shall have no obligation to look beyond information

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

obtainable from Defendant's readily searchable electronic databases.  The Settlement Class Member List shall specify:

      a.     The names of all Settlement Class Members;

      b.     The Last Known Address for each Settlement Class Member, and, to the extent reasonably available, the email address for each Settlement Class Member who has elected to receive electronic notifications from Defendant;

      c.     The total number of Representment Fees charged to each Account during the Representment Class Period, and the total number of APPSN Fees charged to each Account during the APPSN Class Period; and

      d.     The status of each Account (open or closed).

The Settlement Administrator shall utilize current U.S.P.S. software and/or the National Change of Address ("NCOA") database searches to update the address records so that a Settlement Class Member's most recent address will be utilized for mailing purposes.

2.     The Settlement Class Member List and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time.  Neither the Settlement Class Member List, nor the information contained in it, shall be reproduced, copied, stored, or distributed in any form, electronic or otherwise, and shall be subject to return or destruction pursuant to Section VII.E.2 of this Agreement.

3.     The Settlement Administrator shall provide notice of this Settlement and the Final Approval Hearing to all Settlement Class Members by mailing a copy of the Class Notice, or, for Settlement Class Members who have elected to receive notices electronically from Defendant, by email notice.  Unless adjusted by Court order, the mailing and emailing of all Class Notices shall

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

be completed within 21 days of the Settlement Administrator's receipt of the Settlement Class Member List.

4.      Prior to the dissemination and mailing of the Class Notice to any Settlement Class Member, the Settlement Administrator shall establish an Internet website using a domain to be mutually agreed upon by the Parties (the "Settlement Website"), which will contain the Class Notice and inform Settlement Class Members of the relevant dates and deadlines and related information.  The website shall include, in .pdf downloadable format, the following: (i) Motion for Preliminary Approval (ii) the Class Notice; (iii) the Preliminary Approval Order; (iv) this Agreement (including all its Exhibits), (v) the Federal Court Complaint; (vi) Plaintiffs' Petition for Attorneys' Fees, Costs and Expenses, and Incentive Award; (vii) Motion for Final Approval; (viii) Final Approval Order; and (ix) any other materials agreed upon by the Parties and/or required by the Court.  The Internet website shall provide persons in the Settlement Class with the ability to complete and submit a request to opt out of the Settlement Classes prior to the Opt-Out and Objection Deadline.

5.      The cost of providing the Class Notice to each person on the Settlement Class Member List including, without limitation, postage costs and data processing, shall be paid solely from the Settlement Fund, and Defendant shall have no additional obligation or liability with respect to such costs or expenses.  The Parties, in good faith, will endeavor to minimize these costs to the extent possible or prudent.

6.      If a Class Notice is returned to the Settlement Administrator by the U.S.P.S. because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Class Notice to the forwarding address within seven (7) days of receiving the returned Class Notice.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

7.      In the event that subsequent to the first mailing of a Class Notice, and at least fourteen (14) days prior to the Opt-Out and Objection Deadline, a Class Notice is returned to the Settlement Administrator by the U.S.P.S. because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Class Notice within seven (7) days of receiving such information.

8.      For a period of 360 days after the Preliminary Approval Date, or 225 days after the Effective Date, whichever is longer, the Settlement Administrator shall maintain, at its expense, a post office box or address, to receive communications in connection with the Settlement.

9.      Defendant shall provide notice of this proposed class settlement to the appropriate state and federal officials in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), and file proof of same in the Federal Court Action.  The Parties agree that Defendant is permitted to provide such notice as required by law and that any notice by Defendant shall be prepared to effectuate the Settlement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

10.     <u>Confirmation of Class Notice</u>.  At least five (5) days prior to the Final Approval Hearing, Class Counsel shall serve and file sworn statements evidencing compliance with the provisions of the Preliminary Approval Order concerning the mailing of the Class Notice.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

11.    <u>Opt-Out Rights</u>.

a.    The Class Notice shall permit Settlement Class Members to exclude themselves from the Settlement Classes and not to be bound by this Agreement, if, within such time as is ordered by the Court and contained in the Class Notice, the Settlement Class Member either: (i) signs and mails a notice of intention to opt out to the Settlement Administrator (in no particular format, but which contains the Settlement Class Member's name, address, and telephone number and the words "opt out," "exclusion," or words to that effect clearly indicating an intent not to participate in the settlement); or (ii) completes and electronically submits the opt-out form on the Settlement Website. If there is more than one account holder on an Account, all account holders must execute the notice of intention to opt out for the opt-out to be effective.  If necessary, the Parties shall confer as to whether a communication from a Settlement Class Member is a request to opt out and shall inform the Court of their position at the Final Approval Hearing.  In no event shall any notice in which a Settlement Class Member purports to opt out any other person (including any group, aggregate, or class involving more than one Settlement Class Member) be considered a valid opt-out.  Individuals are not permitted to exclude other individuals, and if there is a group of opt-outs, each individual Settlement Class Member must evidence his or her intent by complying with the procedures above.  Any opt-out submitted by a Settlement Class Member on behalf of a group, aggregate, or putative class shall be deemed valid as to that Settlement Class Member only, and shall be invalid as to the group, aggregate, or putative class.

b.    The Class Notice shall provide that requests by any Settlement Class Member to opt out of the Settlement must either be (i) mailed to the Settlement Administrator postmarked by the Opt-Out and Objection Deadline, or (ii) submitted on the Settlement Website by the Opt-Out and Objection Deadline or be forever barred.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

c.      The Settlement Administrator must send Defendant's Counsel and Class Counsel copies of any opt-out notices it receives within seven (7) days of receipt. Defendant's Counsel or Class Counsel may dispute an opt-out or purported opt-out, including an attempt to opt out as a group, aggregate or class, within 30 days of the postmarking of the notice of intention to opt out, or by the Final Approval Date, whichever occurs later. Such objection shall be effective to void any opt-out or purported opt-out, unless and until (i) the other Party's counsel disputes the objection, in good faith and in writing to the objecting party's counsel, within ten (10) days of the objection, and (ii) promptly seeks a ruling by the Court and proves that the objection should be rejected or overruled. The Court shall retain jurisdiction to resolve such disputes. Any decision by Defendant's Counsel not to dispute an opt-out or purported opt-out shall not be a waiver, determination, or preclusive finding against Defendant with respect to any other opt out notice.

12.     Opt-Out Termination.  The terms set forth herein will be null and void, at Defendant's option, if more than one percent (1%) of the Settlement Class Members opt out of the Settlement Classes.  If Defendant elects to terminate the Settlement pursuant to this term, it must inform Class Counsel within (10) business days of learning that the Opt-Out Termination threshold has been reached.

13.     Representation of Successful Opt-Outs.  Class Counsel shall not solicit or represent Settlement Class Members who are Successful Opt-Outs.

14.     Objections To the Settlement.

a.      The Class Notice shall permit any Settlement Class Members who do not opt out of the Settlement to appear at the Final Approval Hearing to object to the proposed Settlement and/or to the Fee Application and/or the Service Award Application, but only if the Settlement Class Member has first filed a written objection with the Clerk of Court, in accordance

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

with the requirements set forth in Section III.D.14.b below, by the Opt-Out and Objection Deadline. Further, any Settlement Class Member who intends to appear at the Final Approval Hearing must file a Notice of Intention to Appear with the Clerk of Court and serve the Notice on all Parties.

b.    In order to be heard at the Final Approval Hearing, the Settlement Class Member must make his, her, or their objection in writing and file it with the Court by the Opt-Out and Objection Deadline and serve the objection on all Parties, postmarked no later than the last day to file the objection, at the following addresses: (i) Class Counsel – Sophia Gold, KalielGold PLLC, 950 Gilman Street, Suite 200, Berkeley, CA 94710; and (ii) Defendant's Counsel – Christopher J. Valente, K&L Gates LLP, 1 Congress Street, Suite 2900, Boston, MA 02114. An objection must: (a) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a member of the Settlement Classes; (b) include a detailed statement of such Settlement Class Member's specific objections; (c) state the grounds for such objections; (d) identify all documents which the Settlement Class Member asks the Court to consider; and (e) if the Settlement Class Member is represented by counsel concerning the objection, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the Fee Application or the Service Award Application, the name of such counsel.

c.    Plaintiff and Defendant may file responses to any objections that are submitted by a Settlement Class Member.

d.    Any Settlement Class Member who does not provide a timely, written objection shall be deemed to have waived any objection and shall forever be foreclosed from

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, the award of Attorneys' Fees, or the Service Award.

E.    Final Approval.

1.    At the time designated by the Court, Plaintiff shall move the Court for a Final Approval Order, substantially in the form of Exhibit D hereto, which shall specifically include provisions that: (a) finally approve the Settlement as fair, reasonable, and adequate; (b) find that the Class Notice as distributed was the best notice practicable under the circumstances and fully satisfied the requirements of due process and applicable rules; (c) approve the plan of distribution of the Settlement Amount and interest accrued thereon; (d) finally certify the Settlement Classes; (e) confirm that Plaintiff and the Settlement Class Members (except those who have timely and validly requested exclusion from the Settlement Classes) have released all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims against the Released Parties; and (f) dismiss the Federal Court Action with prejudice, without costs to any Party, except as provided in the Agreement, and subject to the Court's continuing jurisdiction over the Parties and the Settlement Fund for the purpose of enforcement of the terms of the Settlement Agreement.

2.    At the Final Approval Hearing, Plaintiff and Class Counsel shall make a good faith effort to present sufficient evidence to support the entry of the Final Approval Order and shall present such evidence as they deem appropriate to support any award of Attorneys' Fees.

IV.    **SETTLEMENT CONSIDERATION**

A.    Monetary Consideration.

1.    Settlement Amount.  In exchange for the releases described below and dismissal with prejudice of the Federal Court Action, Defendant agrees to pay the total Settlement Amount

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

of Seven Hundred Twenty-Five Thousand Dollars and Zero Cents ($725,000.00) in full settlement of the Action.  The Settlement Amount shall include (i) all payments to Settlement Class Members, including the amounts already paid as part of the Pre-Settlement Refund; (ii) any award of Attorneys' Fees; (iii) any Service Award to the Settlement Class Representative; (iv) the cost of Class Notice; (v) Settlement Administration Expenses; and (vi) Taxes.  Under no circumstances shall Defendant be required to pay any amount in addition to the Settlement Amount in connection with the Settlement.

2.      Advance Class Notice Costs.  Within seven (7) days of the delivery of the Settlement Class List, the Settlement Administrator shall make a good faith estimate of the Settlement Administration Expenses that will be necessary prior to the Effective Date (the "Advance Class Notice Costs") based on the number of Class Notices to be mailed and the costs of producing and mailing the Class Notices and establishing a settlement website.  Within fourteen (14) days after delivery of the Settlement Class List, Defendant shall deposit the Advance Class Notice Costs into the Settlement Fund, which advances shall be credited against the Settlement Amount.  Defendant shall pay no portion of the Settlement Amount, including any Advance Notice Costs, until it has received a properly completed W-9 Form from the Settlement Administrator.

3.      Settlement Fund Balance.  Within twenty (20) business days after the Effective Date, Defendant shall deposit the balance of the Settlement Fund (less the Pre-Settlement Refund and Advance Class Notice Costs) into the Settlement Fund.

4.      Refund Upon Termination.  If the Settlement is not approved, or is terminated, canceled, or fails to become effective for any reason, the remaining Settlement Fund (including accrued interest), less expenses and Taxes incurred or due and owing and payable from the Settlement Fund in accordance with this Agreement, shall be refunded to Defendant.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

5.      <u>Overdraft Forgiveness for Charged Off Accounts.</u>  For each Charged Off Account belonging to a Settlement Class Member, the Account's outstanding balance due to Defendant shall be reduced by the total amount of Fees for that Account, provided that such Fees are reasonably calculable based on review and analysis of reasonably accessible transactional data and information.  Defendant will implement the Overdraft Forgiveness within 180 days after the Effective Date.

B.      <u>Distribution Plan</u>.

1.      <u>Calculation of Settlement Class Member Payment</u>.  Each Settlement Class Member who paid at least one Representment Fee during the Representment Class Period and/or at least one APPSN Fee during the APPSN Class Period that falls within the definition of one or both Settlement Classes shall be entitled to receive a Settlement Class Member Payment.  The following method will be used to calculate the Settlement Class Member Payments.  The Settlement Amount, after deductions for: (i) the Pre-Settlement Refund; (ii) any award of Attorneys' Fees; (iii) any Service Award to the Settlement Class Representative; (iv) the cost of Class Notice; (v) Settlement Administration Expenses; and (vi) Taxes (the "Net Settlement Fund"), will be divided on a pro rata basis as follows:

$$Class\ Member's\ Pro\ Rata\ \% = \frac{Amount\ of\ Representment\ Fees\ and\ APPSN\ Fees\ Paid\ by\ That\ Class\ Member}{Total\ Amount\ of\ Representment\ Fees\ and\ APPSN\ Fees\ Paid\ By\ All\ Class\ Members}$$

$$Class\ Member\ Distribution = Class\ Member's\ Pro\ Rata\ \% \times Net\ Settlement\ Fund$$

2.      <u>Settlement Class Members with Open Accounts</u>.  Within fifteen (15) days of the Settlement Administrator's receipt of the Settlement Fund Balance per Paragraph IV.A.3 above, the Settlement Administrator will wire to Defendant the funds necessary to make all Settlement Class Member Payments to Settlement Class Members whose applicable Accounts are still open.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

Defendant shall then directly deposit the Settlement Class Member Payments into the Settlement Class Members' open Accounts within 60 days after the Effective Date.  If any Settlement Class Members close their applicable Account before Defendant can deposit their Settlement Class Member Payment, Defendant shall deposit those Settlement Class Member Payments back into the Settlement Fund, and those Settlement Class Members shall be paid by check from the Settlement Administrator in accordance with Section IV.B.3 below.  The checks shall have the same expiration date as the checks sent to Settlement Class Members with closed Accounts, as outlined in Section IV.B.3 below.

       3.    <u>Settlement Class Members with Closed Accounts</u>. For Settlement Class Members whose applicable Accounts are no longer open, the Settlement Administrator shall mail checks in the amount of each Settlement Class Member Payment within 60 days after the Effective Date. The checks shall indicate that they expire 180 days after the date on which the check is issued.

       4.    <u>Deceased Settlement Class Members</u>.  Deceased Settlement Class Members' Settlement Class Member Payments shall be paid by check made out to the estate of the deceased Settlement Class Member, provided that, prior to the Effective Date, the Settlement Class Member's estate informs the Settlement Administrator of the Settlement Class Member's death and provides a death certificate confirming that the Settlement Class Member is deceased.

       5.    <u>Redistribution of Uncashed Settlement Checks</u>.  Within fifteen (15) days after the Settlement checks expire (195 days from the date that the Settlement Administrator issues the Settlement checks to Settlement Class Members), the Settlement Administrator shall, if economically feasible, redistribute any funds remaining as a result of Uncashed Settlement Checks (less the cost of redistribution) in equal amounts to Settlement Class Members whose Settlement checks were cashed and Settlement Class Members whose Settlement payments were directly

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

deposited into their Accounts, by mailing checks to those Settlement Class Members. If the distribution of remaining funds costs more than the amount to be distributed or is otherwise economically unfeasible, or if additional funds remain after a second distribution, the remainder of the Settlement Fund (less costs of settlement administration) will be paid to Greater Boston Legal Services within 30 days of the expiration of any paper checks used to make the second distribution.

6.      <u>Status Report.</u>  Class Counsel will file a status report with the Court confirming the distribution of funds, as well as any second distribution, 270 days after the Effective Date.

7.      <u>Tax Obligations</u>.  The Parties shall have no responsibility or liability for any federal, state, or other taxes owed by Settlement Class Members because of, or that arise from, any Settlement payments to Settlement Class Members or any other term or condition of this Agreement.

C.      <u>Attorneys' Fees and Service Awards</u>

1.      At least twenty-one (21) days before the Opt-Out and Objection Deadline, Class Counsel may apply to the Court for an award of Attorneys' Fees via a Fee Application, and for a Service Award for the Settlement Class Representative via a Service Award Application, all to be paid from the Settlement Fund.  Class Counsel will provide the current draft of their Fee Application and their brief in support of their Fee Application to Defendant's Counsel no less than one week before filing, unless a shorter time period is agreed upon by the Parties.

2.      Defendant agrees not to oppose Class Counsel's request for Attorneys' Fees of up to 33.33% of the Settlement Amount, and not to oppose Class Counsel's request for reimbursement of reasonable expenses actually incurred and paid.  Defendant further agrees not to oppose Class Counsel seeking a $5,000 Service Award for the Settlement Class Representative.  However,

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

Defendant reserves its right to oppose any request for Attorneys' Fees over and above 33.33% of the Settlement Amount, in addition to unreasonable expenses incurred and paid, and to oppose any request for a Service Award for the Settlement Class Representative that is over and above $5,000. In the event that the Court does not approve Class Counsel's request for Attorneys' Fees or the Court does not approve the request for a Service Award for the Settlement Class Representative, the Settlement and this Agreement shall otherwise remain effective.

3.      Class Counsel expressly disclaim all right to collect attorneys' fees and costs more than the amount awarded by the Court from any person or entity, and agree, upon demand, to execute a release of any person's or entity's obligation to pay such sums.  Class Counsel is responsible for distributing any award of Attorneys' Fees amongst themselves.  Defendant shall not be liable for any claims ensuing from the distribution of Attorneys' Fees.

4.      Defendant shall have no obligation to pay any attorneys' fees or costs to Class Counsel, or any Service Award to the Settlement Class Representative, except as part of the Settlement Amount.  Any Attorneys' Fees and Service Award approved by the Court shall be paid from the Settlement Fund within 30 days of the Effective Date.

5.      The Settlement is not conditioned upon the Court's approval of the Attorneys' Fees sought by Class Counsel, or the Service Award sought by Settlement Class Representative.  Any appellate proceedings relating solely to the award of Attorneys' Fees and/or the Service Award shall not delay the effectuation of the Releases contained herein.

D.      <u>Prospective Relief</u>. As of the Effective Date, Defendant shall no longer assess Representment Fees and APPSN Fees (the "Prospective Relief").  The Prospective Relief agreed to under this section shall not be enforceable by equitable means or by means of contempt of court.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

E.    The Settlement Fund.

1.    The Settlement Administrator shall invest the Settlement Fund in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or in an account fully insured by the United States Government and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Settlement Fund shall bear all risks related to investment of the Settlement Fund.

2.    The Settlement Administrator shall not disburse any portion of the Settlement Fund except as provided in this Agreement and with the written agreement of Class Counsel and Defendant's Counsel or by order of the Court.

3.    All funds held by the Settlement Administrator shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement or further order of the Court.

F.    Taxes

1.    Defendant (a) shall have the right to impose any reasonable terms and conditions on the operation and maintenance of the Settlement Fund, and of any funds it pays in connection with this Agreement, that it deems appropriate to take advantage of the Qualified Settlement Fund provisions of the tax code or to protect the moneys from intentional or unintentional diversion, expenditure, forfeiture, escheat, or other dispersion that is inconsistent with the express terms of this Agreement, and (b) shall inform Class Counsel of any such terms and conditions.  In the event Defendant desires to have the Settlement Administrator enter into an agreement or undertaking to take advantage of the Qualified Settlement Fund provisions of the tax code or to protect the moneys

25

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

in accordance with this paragraph, or to obtain any order from the Court in connection with this paragraph, Plaintiff agrees not to object to such requested agreement or order other than on the grounds that the terms or relief sought, in whole or in part, is inconsistent with the express terms of the Settlement.

2.     For this Section IV.F, references to the Settlement Fund shall include both the portion of the Settlement Amount deposited into escrow and any earnings thereon.

## V.    RELEASES

A.     Plaintiff and the Settlement Class Members provide the following releases:

1.     Upon Final Approval, and in consideration of the promises and covenants set forth in this Settlement Agreement, Settlement Class Representative and each Settlement Class Member, and each of their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-borrowers, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf will be deemed to have completely released and forever discharged Defendant, and each of its parents, subsidiaries, affiliates, officers, directors, employees, attorneys, shareholders, agents, successors, assigns, insurers, and third party suppliers and vendors (collectively, the "Released Parties"), from any claim, right, demand, charge, suit, matter, damage, loss, complaint, action, cause of action, obligation, or liability of any and every kind and description, from the beginning of the statute of limitations period until the end of the APPSN and/or Representation Class Period, that arises out of common law, state law, or federal law, whether by Constitution, statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, apparent or unapparent, matured or unmatured, disclosed or undisclosed,

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

accrued or unaccrued, latent or patent, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that were or could have been asserted in the State Court Action and/or the Federal Court Action, or which could be raised in the future, in any court, tribunal, forum, or proceeding, arising out of, in connection with, or relating in any way to the allegations made in the State Court Action, and/or the Federal Court Action or the underlying facts and circumstances, including, but not limited to, that Defendant was allegedly assessing improper Representation Fees and APPSN Fees on Accounts (the "Released Claims"). The Released Claims include, but are not limited to, claims or defenses concerning the Representation Claim and the APPSN Claim, and any violation and/or alleged violation of state and/or federal law, whether common law or statutory, arising from, relating to, or in connection with the conduct, acts, and/or omissions described in this paragraph.

2.        Without limiting the foregoing, the Released Claims specifically extend to claims that arise out of, relate to, or are in connection with the assessment of APPSN or Representation Fees that the Settlement Class Representative and the Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement, and the releases therein, becomes effective. This paragraph constitutes a waiver by the Settlement Class Representative, and shall be deemed to be a waiver by all Settlement Class Members, of any statutes, laws, or legal principles of any state providing, in effect, that a release does not extend to claims that the releasing party does not know or suspect to exist when executing the release and that, if known, would have affected his or her settlement with the released party, or language similar in purpose.

3.        Settlement Class Representative understands and acknowledges, and all Settlement Class Members shall be deemed to understand and acknowledge, the significance of the waiver set forth in the prior paragraph. In connection with such waiver and relinquishment, Settlement Class Representative acknowledges, on behalf of themselves and all Settlement Class Members, that

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement, but that it is their intention to release fully, and finally, and forever, all Released Claims, and in furtherance of such intention, the release of the Released Claims provided to the Released Parties will be and remain in effect notwithstanding the discovery or existence of any additional or different facts. This is true where such claims are known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

4.    Settlement Class Representative, on behalf of herself and the Settlement Class Members, covenant and agree: (i) not to sue, institute, cause to be instituted, permit to be instituted on their behalf, or assist in instituting or prosecuting any proceeding, or otherwise assert any Released Claims against any Released Parties; (ii) not to organize or solicit the participation of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Classes but who requested to be excluded from the Settlement Classes, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto, against any of the Released Parties; and (iii) that the foregoing covenants and this Settlement Agreement shall be a complete defense to any of the Released Claims against any of the Released Parties.

28

5.      Nothing in this Agreement shall operate or be construed to release any claims or rights Defendant has to recover any past, present, or future amounts that may be owed by Plaintiff or by any Settlement Class Member on any accounts, loans, or debts with Defendant, pursuant to the terms and conditions of such accounts, loans, or debts; provided however, that Defendant shall release its claims or rights to recover any amounts forgiven on any Charged-Off Account as described in this Agreement.

B.      <u>Dismissal.</u>  If the Settlement Agreement is finally approved, the Parties agree that Plaintiff will cause the claims in the Action to be dismissed with prejudice, with all parties to bear costs not otherwise awarded.  Plaintiff will perform all procedural steps necessary to effectuate dismissal with prejudice of the Action upon Final Approval of the Settlement.

## VI.      <u>REPRESENTATIONS AND WARRANTIES</u>

A.      <u>Attorneys' Fees.</u>  Settlement Class Representative and Class Counsel represent and warrant that (i) the Settlement Amount includes all Attorneys' Fees incurred in connection with the State Court Action and the Federal Court Action, and (ii) any Fee Application Class Counsel file shall include all persons (natural or legal) having any interest in any award of Attorneys' Fees in connection with the State Court Action and the Federal Court Action.  Any Fee Application shall include within its scope all attorneys and law firms with a financial interest in any such award. Settlement Class Representative and Class Counsel agree to indemnify and hold harmless Defendant and all Released Parties against any claims related to or arising from any other persons or entities claiming any interest in any award of Attorneys' Fees in connection with the State Court Action, the Federal Court Action, or the Released Claims.

B.      <u>Class Counsel</u>.  Settlement Class Representative and Class Counsel represent and warrant that the term "Class Counsel" as defined in Section I.10 of this Agreement includes all

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

persons (natural or legal) having any interest in any award of attorneys' fees or costs in connection with the State Court Action, and the Federal Court Action.

      C.    <u>Best Efforts</u>.  Plaintiff and Class Counsel represent and warrant that they shall use their best efforts to cause the Court to grant Preliminary and Final Approval of this Agreement as promptly as possible, use their best efforts to resist and oppose any or all objections to the Settlement and any or all attempts to opt out of the Settlement on any basis other than an individual basis, and take or join in such other steps as may be necessary to implement this Agreement and to effectuate the Settlement.

      D.    <u>Cooperation</u>.  Plaintiff and Class Counsel represent and warrant that they shall reasonably cooperate with Defendant and Defendant's Counsel in executing any additional documents required for implementation, effectuation, and/or documentation of this Agreement.

      E.    <u>Parties Authorized to Enter into Settlement Agreement</u>.  Any individual executing this Settlement Agreement on behalf of a Party represents and warrants that he or she is fully authorized to execute this Settlement Agreement on such Party's behalf and to carry out the obligations provided for therein.  Everyone executing this Agreement on behalf of a Party covenants, warrants, and represents that he or she is and has been fully authorized to do so by such Party.  Each Party represents and warrants that he, she, or it intends to be bound fully by the terms of this Settlement Agreement.

      F.    <u>Breach of Settlement Agreement</u>.  If any person, legal or natural, breaches the terms of any of the representations and warranties in this section, he, she, or it shall be fully liable for all damages he, she, or it caused, including legal fees and costs reasonably incurred because of the breach, to any adversely affected Party.  Any adversely affected Party may institute a proceeding before the Court to recover all sums due and owing under this paragraph, and to seek additional

30

equitable relief as the Court deems proper and just, and the Court shall retain jurisdiction over this matter to entertain such proceedings.

G.    <u>Advice of Counsel</u>.  Each Party to this Settlement Agreement warrants that he, she, or it is acting upon his, her or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Settlement Agreement.

H.    <u>Agreement Review</u>.  This Settlement Agreement has been carefully read by each of the Parties, or the responsible officers thereof, and its contents are known and understood by each of the Parties.  This Settlement Agreement is signed freely by each Party executing it.

I.    <u>No Assignment, Transfer, Grant</u>.  No Party to this Settlement Agreement has heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, or cause or causes of action disposed of by this Settlement Agreement.

VII.    <u>**MISCELLANEOUS PROVISIONS**</u>

A.    <u>Settlement Conditioned Upon Approval</u>.  In addition to the provisions hereof, this Agreement shall be subject to the ordinary and customary judicial approval procedures.  If the Settlement is not finally approved, certification of the Settlement Classes will be void, no doctrine of waiver, estoppel, or preclusion shall be asserted in any litigated class certification proceedings in the Action or any other action relating to the subject matter of this Settlement, and this Agreement and its existence shall be inadmissible to establish any fact relevant to class certification or any alleged liability of Defendant for the matters alleged in the Action or for any other purpose.  In the event that the Settlement is not approved as presented, or if Defendant terminates the Settlement as permitted herein, the Parties agree that neither the terms of this

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

Agreement, the Parties' settlement negotiations, nor any publicly disseminated information regarding the Settlement, including, without limitation, the Class Notice, court filings, orders, or public statements, may be used as evidence for any purpose whatsoever. In addition, neither the fact of, nor any documents relating to, Defendant's termination of the Settlement, any failure of the Court to approve this Agreement, or any objections or interventions may be used as evidence for any purpose whatsoever.

      B.   <u>Terms and Intent of Agreement</u>. This Agreement is entered into only for purposes of settlement. If the Court enters an order preliminarily or finally approving the Settlement of the Action in a manner that is inconsistent with the terms and intent of this Agreement, the Parties shall meet and confer in good faith regarding any modifications made to the proposed order. If, after meeting and conferring in good faith, Defendant determines that the modifications materially alter the terms and intent of this Agreement, including but not limited to, because the modifications may increase Defendant's liability or reduce the scope of the releases or of the Settlement Classes, or if the Court refuses to grant Final Approval of this Agreement or the Effective Date does not come to pass, then Defendant shall have the option to terminate this Agreement. Each Party reserves the right to prosecute or defend the Action if this Agreement does not become final and binding.

      C.   <u>No Admissions</u>. Defendant expressly disclaims and denies any wrongdoing or liability whatsoever. This Agreement, and any and all negotiations, statements, documents, and/or proceedings in connection with this Settlement, shall not be construed or deemed to be evidence of an admission or concession by Defendant of any liability or wrongdoing by Defendant or any of its affiliates, agents, representatives, vendors, or any other person or entity acting on its behalf with respect to the assessment of any Fees or that the case was properly brought as a class action,

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

and shall not be construed or deemed to be evidence of an admission or concession that any person suffered compensable harm or is entitled to any relief with respect to Defendant's assessment of any Fees. Defendant may file this Agreement in any action or proceeding that may be brought against it to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. In the event that this Agreement is not finally effective, all Parties agree that the Agreement shall have no legal effect and may never be mentioned at trial or in dispositive or class motions or motion papers (except as necessary to explain the timing of the procedural history of the Action), and the Parties will return to their respective positions as of the date this Agreement is executed.

       D.    <u>Stay and Bar of Other Proceedings</u>. Pending determination of whether this Agreement should be granted Final Approval, the Parties agree not to pursue any claims or defenses otherwise available to them in the Action, and no Settlement Class Member, either directly, on a representative basis, or in any other capacity, will commence or prosecute any action or proceeding against any of the Released Parties asserting any of the Released Claims, pending final approval of this Agreement.

       E.    <u>Confidentiality.</u>

       1.    It is agreed that until the filing of the Preliminary Approval Motion, this Agreement and its terms shall be confidential and shall not be disclosed to any person, other than the Parties' counsel, accounting or tax advisors, insurance carriers, and the Settlement Administrator, unless required by applicable disclosure laws, required to be disclosed to auditors or regulators, or agreed to by the Parties.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

2.      Pursuant to the Protective Order entered in the State Court Action on April 4, 2024 ("Protective Order"), within 60 days after the Effective Date, any confidential material shall be returned to the producing party or destroyed by the receiving party.  Counsel for each Party may, however, maintain in its files copies of all pleadings, motion papers, legal memoranda, correspondence, attorney work product, and consultation and expert work product, even if such materials contain confidential material.

F.      <u>Publicity</u>.  Plaintiff, Class Counsel, Defendant, and Defendant's Counsel shall not issue any press release, advertisement, Internet posting, or similar public statement, whether oral or written, regarding this Agreement, the State Court Action, or the Federal Court Action for any purpose.

G.      <u>Non-Disparagement</u>.    Plaintiff, Class Counsel, Defendant, and Defendant's Counsel shall refrain from making any statement, whether oral or written, that (i) disparages Plaintiff, Class Counsel, Defendant, or Defendant's Counsel, including any statement tending to harm a Party's reputation, business interests, or goodwill or (ii) includes evidence or information protected from disclosure by the Protective Order.

H.      <u>Notices</u>.  Any notice sent in connection with this Agreement shall be transmitted by U.S.P.S. or Federal Express overnight delivery, or an equivalent overnight delivery service, as follows:To Plaintiff and Class Counsel:

Sophia Gold
KALIELGOLD PLLC
490 43rd Street, No. 122
Oakland, CA 94609

To Defendant and Defendant's Counsel:

Christopher J. Valente
Peter W. Shanley
K&L Gates LLP

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

1 Congress Street, Suite 2900
Boston, MA  02114

I.      <u>Time Periods</u>:  The time periods and dates described in this Agreement with respect to the giving of Class Notice and hearings will be subject to Court approval and modification by the Court with the consent of the parties.

J.      <u>Governing Law</u>:  The Agreement is governed by the laws of the Commonwealth of Massachusetts, without regard to choice-of-law principles.

K.      <u>No Construction Against Drafter</u>:  The Agreement was, and is deemed to have been, drafted by all Parties, and any rule that a document shall be interpreted against the drafter will not apply to this Agreement.

L.      <u>Agreement Binding on Successors in Interest</u>:  This Agreement is binding on and shall inure to the benefit of the respective heirs, successors, and assigns of the Parties.

M.      <u>Execution</u>:  The Parties and their counsel may execute this Agreement in counterparts.  Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same document.

N.      <u>Entire Agreement</u>:  This Agreement contains the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement.

O.      <u>Exhibits</u>.  Every exhibit to this Agreement is incorporated herein by this reference as though fully set forth herein.  If there is any conflict between the terms of the Agreement and the attached exhibits, the Agreement shall control.

P.      <u>No Waiver</u>.  The provisions of the Agreement may be waived only in a writing executed by the waiving Party.  The waiver by one Party of any breach of this Agreement.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

Q.    <u>Modifications</u>.  This Agreement may be amended or modified only by a written agreement, signed by all Parties or their successors in interest or their duly authorized representatives, and with Court approval.  No amendments or modifications to this Agreement may be made without written agreement of all Parties and Court approval.

R.    <u>Third-Party Beneficiaries</u>.  The Released Parties who are not signatories hereto shall be third-party beneficiaries under this Agreement and shall be entitled to enforce this Agreement in accordance with its terms. Aside from the Released Parties, this Agreement shall not inure to the benefit of any third party.

S.    <u>Error Limitations</u>.  The obligations of Defendant with respect to Section IV.B.2 of this Agreement relating to the deposit of moneys in Settlement Class Members' open Accounts shall be performed reasonably and in good faith, subject to the further proviso that the terms of the Settlement and any Court orders shall control.  So long as Defendant abides by the terms of this Agreement, Defendant shall not be liable for erroneous, improper or inaccurate actions, omissions, crediting or payment, or the actions of third parties other than Defendant, and the releases and any judgment shall be effective as of Final Approval as to every Settlement Class Member notwithstanding any error or dispute and regardless of whether such error or dispute is corrected or addressed only thereafter.

T.    <u>No Claims Arising from this Agreement</u>.  No person shall have any claim against any of the Released Parties, against Settlement Class Representative, or against counsel for any Party, based on distribution of benefits made substantially in accordance with this Agreement or related order(s) of the Court.

U.    <u>No Alteration of Accounts or Release of Debt</u>.  Except as specifically provided for in Section IV.A.5 herein, under no circumstances shall the Agreement be deemed to alter, amend,

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

or change the terms and conditions of any credit card, debit card, consumer account, or debt as to which any Settlement Class Member is or was a party, or to provide a defense to any such debtor relationship. Settlement Class Representative and Settlement Class Members expressly covenant and agree, as a material inducement to Defendant, and recognizing the practical difficulties faced by Defendant in ongoing or future matters, that each of them waives and forever relinquishes any claim to have Defendant or the Released Parties amend, alter or revise rights, demands, suits or other claims made (or to be made) in order to reflect the Settlement Fund provided or to be provided or to reflect the other terms of this Agreement.

V.    <u>Retention of Jurisdiction</u>.  Although the Court shall enter a judgment, the Court shall retain jurisdiction over the interpretation, effectuation, enforcement, administration, and implementation of this Agreement.

W.    <u>Severability</u>.  The provisions of this Agreement, except for the provisions in Section V (Releases), are severable insofar as the partial or complete invalidity, illegality, or legal ineffectiveness of any term in the Agreement shall not affect the validity, legality or legal effectiveness of the remainder of such term or of any other terms therein.

X.    <u>Deadlines</u>.  If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day.

[SIGNATURE PAGE FOLLOWS]

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

**PLAINTIFF:**

Date: September 24, 2024

_____

SUZANNE DOS SANTOS PAIS

**DEFENDANT:**

Date: September __, 2024

SHARON & CRESCENT
UNITED CREDIT UNION

By: _____
     Name:
     Title:

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

# EXHIBIT A

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE DOS SANTOS PAIS, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> SHARON & CRESCENT UNITED CREDIT UNION, <br><br> Defendant. | Civil Action No. |

## CLASS ACTION COMPLAINT

Plaintiff Suzanne Dos Santos Pais ("Plaintiff"), on behalf of herself and all others similarly situated brings this class action complaint against Defendant Sharon & Crescent United Credit Union ("Defendant" or "SCUCU"), and alleges the following:

## NATURE OF THE ACTION

1.      Plaintiff brings this action individually and on behalf of all similarly situated consumers against Defendant SCUCU, arising from (1) SCUCU's routine practice of assessing more than one non-sufficient funds fee ("NSF Fee") or overdraft fee ("OD Fee") on the same transaction, and (2) SCUCU's improper assessment and collection of OD Fees on accounts that were never actually overdrawn.

2.      SCUCU misleadingly and deceptively misrepresents the above practices in its publicly available marketing materials, including its own account contracts

3.      SCUCU's members have been injured by SCUCU's improper practices to the tune of millions of dollars bilked from their accounts in clear violation of their agreements with SCUCU.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

4.      Plaintiff, on behalf of herself and two classes of similarly situated consumers, seeks to end SCUCU's abusive and predatory practices and force it to refund the improper charges. Plaintiff asserts a claim for breach of contract, including breach of the covenant of good faith and fair dealing, and for violations of the Massachusetts Consumer Protection Action, G.L. c. 93A, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

<u>**PARTIES**</u>

5.      Plaintiff Suzanne Dos Santos Pais is a citizen and resident of Brockton, Massachusetts.

6.      Defendant SCUCU is a Massachusetts credit union with its principal place of business located in Brockton, Massachusetts. It has $1.2 billion in assets and maintains branches throughout Massachusetts.

<u>**JURISDICTION AND VENUE**</u>

7.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Massachusetts; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because SCUCU is subject to personal jurisdiction here, regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.    SCUCU CHARGES MULTIPLE FEES ON THE SAME ITEM**

9.    SCUCU's Account Documents provide the general terms of the contractual relationship between Plaintiff and Defendant.

10.    SCUCU's Account Documents allow SCUCU to charge a *single* $35 NSF Fee or OD Fee when an "item" is returned for insufficient funds or paid despite insufficient funds.

11.    SCUCU breached its Account Documents with its accountholders by charging more than one $35 NSF Fee or OD Fee on the same item, since its contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF Fee or OD Fee.

12.    A recent Washington Post article discussed predatory overdraft fees, labeling NSF fees like those SCUCU imposes as "indefensible" because "the customer gets hit with multiple charges for the same item." *I bought my kids dinner – and saw firsthand how overdraft fees punish the poor,* The Washington Post (October 1, 2021), https://www.washingtonpost.com/outlook/i-bought-my-kids-dinner--and-saw-firsthand-how-overdraft-fees-punish-the-poor/2021/09/30/32383c40-216e-11ec-b3d6-8cdebe60d3e2_story.html. The banks "are charging a fee for doing literally nothing.... [T]his is like asking a friend if I can borrow $20, only to have him take $10 out of my wallet for turning down my request." *Id.*

13.    In its March 2022 issue of *Consumer Compliance Supervisory Highlights*, the FDIC addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers

3

about re-presentment practices and fees"—i.e., unclear definitions of "per item" or "per transaction"—may be deceptive:

> During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentation of unpaid transactions. Some disclosures and account agreements explained that one NSF fee would be charged "per item" or "per transaction." These terms were not clearly defined and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if the injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance.

*Consumer Compliance Supervisory Highlights*, Federal Deposit Insurance Corporation, p. 8 (March 2022), https://www.fdic.gov/regulations/examinations/consumer-compliance-supervisory-highlights/documents/ccs-highlights-march2022.pdf (last accessed May 25, 2022).

14.     SCUCU's abusive practices are not standard within the financial services industry. Indeed, major banks such as Wells Fargo—one of the largest consumer banks in the country—charge one fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as SCUCU, their members agree to terms authorizing the fee practice.

15.     Indeed, only recently did SCUCU amend their Account Documents to disclose that an item may incur multiple fees. However, at the time Plaintiff incurred fees, this disclosure was not in effect.

16.     SCUCU's Account Documents did not say that SCUCU repeatedly charged members multiple fees on a single item. To the contrary, the Account Documents indicated it would only charge a single NSF Fee or OD Fee on an item.

4

### A.    Plaintiff Dos Santos Pais's Experience

17.    In support of her claim, Plaintiff Dos Santos Pais offers examples of fees that should not have been assessed against her checking account. As alleged below, SCUCU: (a) reprocessed previously declined transactions; and (b) charged an additional fee upon reprocessing.

18.    As an example, on February 19, 2019, Plaintiff Dos Santos Pais was charged multiple $32[1] NSF Fees on the same payment when it was resubmitted by the merchant for payment without Plaintiff Dos Santos Pais's request to reprocess the transaction. Each merchant request for payment was for a single transaction and, as is laid out in SCUCU's Account Documents, should be subject to, at most, a single NSF Fee or OD Fee.

19.    Plaintiff Dos Santos Pais understood each payment to be a single item as is laid out in SCUCU's contract, capable at most of receiving a single NSF Fee (if SCUCU returned it) or OD Fee (if SCUCU paid it).

### B.    The Imposition of Multiple Fees on a Single Transaction Violates SCUCU's Express Promises and Representations.

20.    SCUCU's Account Documents state that SCUCU will assess a single fee of $35 for an "item" that is returned due to insufficient funds.

21.    The Account Documents do not indicate that multiple fees may be assessed against a single item. In fact, according to the operative fee schedule, at most a single fee will be assessed for each "item" that is returned or paid into overdraft.

22.    SCUCU's Account Documents, namely its *Schedule of Fees*, state that the credit union will assess a single fee of $35 for an item that is rejected due to insufficient funds:

Overdraft Privilege Service (OPS) Paid Item*          $35.00
Non-Sufficient Funds (NSF) Returned Item             $35.00

---

[1] The NSF Fee has since been raised to $35.

5

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

Ex. A.

23.     The same check, ACH, or other electronic payment is not a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

24.     Even if SCUCU reprocesses an instruction for payment, it is still the same item or transaction. Defendant's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

25.     As alleged herein, Plaintiff took only a single action to make a single payment; she may therefore be charged only a single fee.

26.     SCUCU promises that one $35 NSF Fee or OD Fee will be assessed per "item," such as a check or ACH payment, and this must mean all iterations of the same instruction for payment. As such, SCUCU breached the contract when it charged more than one fee per item.

27.     Reasonable accountholders understand any given authorization or payment to be one item, as that term is used in SCUCU's Account Documents.

28.     The Account Documents described above never discuss a circumstance where SCUCU may assess multiple fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

29.     Taken together, the representations identified above convey to members that all submissions for payment of the same transaction will be treated as the same "item," which Defendant will either pay (resulting in an overdraft fee) or return (resulting in a non-sufficient funds fee) when there are insufficient funds in the account. Nowhere does SCUCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do SCUCU members ever agree to such fees.

6

30.     Further, members reasonably understand, based on the language of SCUCU's Account Documents, that Defendant's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional fees. In other words, it is always the same item.

31.     Other banks and credit unions like SCUCU that employ this abusive multiple-fee practice know how to plainly and clearly disclose it—something SCUCU did not do until recently.

32.     For example, First Hawaiian Bank engages in the same abusive practices as SCUCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added) *Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://bit.ly/2KWMvTg (last accessed Jan. 28, 2021).

33.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

(emphasis added) *Consumer Account Terms and Conditions*, Klein Bank 4 (Jan. 2013), https://bit.ly/2KVCkhI.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

34.    Central Pacific Bank, a leading bank in Hawai'i, states in its deposit account under

the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient funds ("NSF") in your account, may be resubmitted one or more times for payment, and a returned item/transaction fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/non-sufficient funds.

*Miscellaneous    Fee    Schedule*,    Central    Pacific    Bank    1    (Jan.    4.    2021),

https://www.cpb.bank/media/2776/fee-001.pdf (last accessed June 4, 2021).

35.    BP Credit Union likewise states: "We may charge a fee each time an item is

submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result

of a returned item and resubmission(s) of the returned item." *Membership and Account Agreement,*

BP Federal Credit Union, ¶ 14(a), https://www.bpfcu.org/images/docs/membership-agreement.pdf

(last accessed June 4, 2021).

36.    Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

*Deposit Agreement*, Regions Bank 18 (2018), https://bit.ly/2L0vx6A (last accessed June 4, 2021).

37.    Andrews Federal Credit Union states:

> You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Terms & Conditions*, Andrews Federal Credit Union 17 (Aug. 2020), ¶ 6, https://bit.ly/3iXEdHb

(last accessed June 4, 2021).

38.    Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Member Services Guide*, Consumers Credit Union 5 (Apr. 2020), ¶ 11a, https://bit.ly/3iVM1ta

(last accessed June 4, 2021).

39.    Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information*, Wright Patt Credit Union 13 (July 2020), ¶ 6.1, (last accessed

June 4, 2021).

40.    Railroad & Industrial Federal Credit Union states:

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information for Our Members*, Railroad & Industrial Federal Credit Union, p.

2, (Aug. 1, 2019), https://bit.ly/3t5ehhF (last accessed June 4, 2021).

41.    Partners 1st Federal Credit Union states:

9

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Consumer Membership & Account Agreement*, Partners 1st Federal Credit Union, p. 11 (Sept. 15, 2019), https://bit.ly/39pDZWb (last accessed March 2, 2021).

42.    Members First Credit Union states:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment[.]

*Membership and Account Agreement*, Members First Credit Union of Florida 3, https://bit.ly/39rRJ2Y (last accessed March 2, 2021).

43.    Community Bank, N.A. states:

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank 5 (Nov. 12, 2019), https://bit.ly/3iY9dH2 (last accessed June 4, 2021).

44.    RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

*Service Agreement for Personal Accounts*, RBC Bank 13 (Sept. 17, 2014), https://bit.ly/3otUtko (last accessed June 4, 2021).

45.    Diamond Lakes Credit Union states,

10

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

*Membership and Account Agreement*, Diamond Lakes Federal Credit Union, https://bit.ly/39o2P94 (last accessed June 4, 2021).

46.    Parkside Credit Union states,

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

*Membership and Account Agreement*, Parkside Credit Union 21 (Jan. 30, 2020), https://bit.ly/3aaXfpG (last accessed March 2, 2021).

47.    SCUCU provided no such disclosure until recently, and by not doing so, deceived its accountholders.

**C.    The Imposition of Multiple Fees on a Single Transaction Breaches SCUCU's Duty of Good Faith and Fair Dealing.**

48.    Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. Further, as to bank transactions, the Uniform Commercial Code ("UCC")—which has been adopted by all states—mandates good faith and fair dealing. As such, when a party such as SCUCU gives itself discretion to act, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that SCUCU is prohibited from exercising its discretion to enrich itself and gouge its members. Indeed, SCUCU has a duty to honor transaction requests in a

11

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

way that is fair to Plaintiff and its other member and is prohibited from exercising its discretion to pile on ever greater penalties.

49.     Here—in the adhesion agreements SCUCU foisted on Plaintiff and its other members—SCUCU has provided itself numerous discretionary powers affecting member's credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, SCUCU abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectation that they will not be charged multiple fees for the same transaction.

50.     SCUCU exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other members—when it defines "item" in a way that directly leads to more fees. Further, SCUCU abuses the power it has over members and their credit union accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of SCUCU's implied covenant to engage in fair dealing and act in good faith.

51.     It was bad faith and entirely outside Plaintiff's reasonable expectations for SCUCU to use its discretion to assess multiple fees for a single attempted payment.

## II.    SCUCU CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT.

### A. Overview of a Debit Transaction

52.     SCUCU issues debit cards to its checking accountholders, including Plaintiff, which allow its members to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions.

53.     Pursuant to its Account Documents, SCUCU charges fees for transactions that purportedly result in an overdraft.

12

54.    Plaintiff brings this cause of action challenging SCUCU's practice of charging OD Fees on "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

55.    A debit card transaction occurs in two parts. First, when a merchant physically or virtually "swipes" a member's debit card, the credit card terminal connects, via an intermediary, to SCUCU, which verifies that the member's account is valid and that sufficient available funds exist to cover the transaction amount.

56.    To determine whether sufficient funds exist, SCUCU maintains a running account balance tracking funds accountholders have for immediate use. This running account balance is adjusted, in real time, to account for debit card transactions when they are made. When a member makes a purchase with a debit card, SCUCU sequesters the funds needed to pay for the transaction, subtracting the dollar amount of the transaction from the member's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically held for when the given debit card transaction settles.

57.    If the account balance shows that there are sufficient funds in an account, the transaction is instantaneously approved.

58.    Second, SCUCU immediately reduces the funds from the accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

59.    The entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Bank Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

60.    Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

61.    SCUCU (like all banks and credit unions) decides whether to "pay" debit card transactions at authorization. Once SCUCU authorizes a transaction, SCUCU is obligated to pay the transaction no matter what. When the time comes to actually settle the transaction and transfer the funds to the merchant's account, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

62.    Even though the merchant is not paid right away, there is no change—no impact whatsoever—to the available funds in an account when the funds are actually transferred to the merchant because a hold was already placed on the funds, removing them from the available balance.

63.    Despite placing a hold on those funds, rendering them off-limits for later transactions, SCUCU improperly charges OD Fees on those APPSN Transactions, even though the APPSN Transactions ***always*** have sufficient available funds to be covered by virtue of the hold placed on them.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

64.    Besides being unfair and unjust, these practices breach contractual promises made in SCUCU's adhesion contracts—contracts that fail to inform accountholders about the true nature of SCUCU's processes and practices. Further, SCUCU lacks any discretion to apply OD Fees to APPSN Transactions.

65.    In short, SCUCU is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

### B. SCUCU's Account Contract

66.    Plaintiff has a checking account with SCUCU, which is governed by SCUCU's standardized Account Documents, including Defendant's *Terms and Conditions of Your Account* ("Account Agreement").

67.    The Account Agreement promises that an overdraft only occurs if an accountholder does not have enough funds in the account, with Defendant reserving discretion on whether to pay an overdraft and to charge an OD Fee:

**Transactions That May Result in an Overdraft:** An overdraft occurs when you do not have enough money in your account to cover a transaction. Although there are many reasons why your account might become overdrawn, most overdrafts result from the following:

1.  You write a check, use your debit card or initiate an electronic funds transfer in an amount that exceeds the amount of funds available in your account;
2.  You deposit a check or other item into your account which is returned unpaid, and the amount is deducted from your account balance;
3.  You have inadequate funds in your account when we assess a fee or service charge; or
4.  You initiate a transaction before funds deposited into your account are "available" or "finally paid" according to our Funds Availability Policy. For example, if you deposit a check into your account, the proceeds of that check may not be available to you for up to several days after you deposit the check. If you do not have sufficient funds in your account — independent of the check — to cover the transaction, you will incur an overdraft.

**Transactions That Are Covered by the OPS Program:** The general OPS program applies to only certain types of transactions, including checks, other transactions made using your checking account number, automatic bill payments,

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

and preauthorized, recurring transactions made with your debit card. **The OPS program does not automatically include ATM transactions and everyday (one-time) debit card transactions.** We will not include ATM and everyday debit card transactions within our OPS program without first receiving your affirmative consent to do so. Absent your affirmative consent, ATM and everyday debit card transactions generally will not be paid.

[…]

As noted above, we retain full discretion to decline to pay any item under the OPS program. This means we can refuse to pay any overdraft for any reason. Even if we decide to pay an overdraft item, absent an agreement to the contrary, such payment does not create any duty to pay future overdrafts. If we do not authorize and pay an overdraft under the OPS program, your transaction will be declined and we may assess non-sufficient funds (NSF) fees on your account in accordance with your account agreement and the fee schedule in effect at the time of the overdraft. We post transactions, whether deposits or withdrawals (payments as described above) against your account balance in the order in which they are received by us, without regard to the type or amount of the transaction.

**Fees:** For each item we pay under OPS that results in an overdraft, we will charge the standard per item Overdraft Fee set forth in our Service Charge Schedule. However, absent your affirmative consent to do so, if we inadvertently pay an ATM or everyday debit card transaction, causing an overdraft, we will not charge a fee. We will not charge for more than five items in any one day, and an insufficient funds fee will not be assessed on items less than $5.01. We will notify you by mail if we pay or return any insufficient or unavailable funds items on your account; however, we have no obligation to notify you before we pay or return any item. The amount of any overdrafts, including our fees, are due and payable immediately or on demand.

Ex. B, pp. 8-9.

68.     Defendant's Account Agreement defines transactions as overdraft transactions only when an account does not contain sufficient funds to cover a transaction.

69.     In other words, a transaction that is authorized with a positive account balance should not incur an overdraft fee because there is enough money in the account to cover the transaction. Not only that, but when SCUCU authorizes a transaction with a positive balance, it places a hold on the funds needed for the transaction, making those funds unavailable for use in later transactions. It follows that those same funds are then used to settle or pay the transaction.

16

70.     However, SCUCU's actual practice is to assess the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

71.     More specifically, the moment a debit card transaction is getting ready to settle SCUCU does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, SCUCU releases the hold placed on the funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

72.     This secret step allows SCUCU to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized with sufficient funds and for which SCUCU specifically set aside money to pay.

73.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall

17

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

74.     This conduct is a breach of SCUCU's Account Agreement.

75.     First, the Account Agreement never discloses that SCUCU will charge members OD fees on transactions approved with a positive balance. Second, SCUCU also does not disclose, that contrary to reasonable expectation, SCUCU will re-deposit sequestered funds into an account and re-assess whether an overdraft fee is due prior to settling a previously authorized transaction. Finally, the Account Agreement does not disclose SCUCU's internal policy allowing them to manipulate the settlement process to justify an OD Fee.

76.     This discrepancy between SCUCU's actual practices and the contract causes accountholders to incur more OD Fees than they should. In fact, accountholders could have never even expected to have an overdraft, because they initiated the transaction with enough funds.

**C.  SCUCU Abuses Contractual Discretion**

77.     In addition to breaching the express terms of the Account Documents, SCUCU's practice of charging overdraft fees on APPSN Transactions falls outside of any contractual discretion it has with respect to payment of overdrafts.

78.     SCUCU reserves discretion to pay overdrafts and to assess an OD Fee when it pays an overdraft. That discretion extends to SCUCU's decision as to whether to pay an overdraft at the time that SCUCU is asked to authorize a transaction.

18

79.     SCUCU's discretion to approve overdrafts does not extend to imposing OD Fees on transactions that never overdrew an account in the first place. SCUCU thus abuses its contractual discretion by approving debit transactions made on a positive balance, driving down the account balance, and then momentarily depositing and withdrawing the requested funds to falsely claim that the account had an insufficient balance for the original transaction.

80.     SCUCU uses its contractual discretion unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

### D. Reasonable Accountholders Understand Debit Card/POS Transactions Are Debited Immediately

81.     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with an accountholder's reasonable expectation that they will only be charged OD Fees on transactions that overdraw their account at the time that they are authorized. When an accountholder initiates what later becomes an APPSN Transaction, their available balance displayed on an app, website, or ATM tells them that they have sufficient available funds for the transaction. Accountholders know that SCUCU will place a hold on the funds needed for the transaction and reduce their available balance rendering those funds unavailable. They expect that those same funds will be applied to settle the debit card transactions for which they are debited. Otherwise, there would be no purpose of the immediate debit and hold for transactions. SCUCU was and is aware that this is precisely how accountholders reasonably understand such transactions to work.

82.     Defendant also knows that many accountholders use debit cards as a budgeting device because they prevent the accountholder from running up debts and because the money comes directly out of a checking account so that the accountholder cannot spend money that they do not have.

19

83.    Further, Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *What Do I Need to Know About Using a Debit Card?*, Consumer Action (Jan. 14, 2019), https://www.consumer-action.org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card  (last visited June 4, 2021).

84.    Further, Consumer Action informs consumers that "Debit cards offer the convenience of paying with plastic without the risk of overspending. When you use a debit card, you do not get a monthly bill. You also avoid the finance charges and debt that can come with a credit card if not paid off in full." *Understanding Debit Cards*, Consumer Action, http://www.consumer-action.org/english/articles/understanding_debit_cards (last visited June 4, 2021).

85.    This understanding is a large part of the reason that debit cards have risen in popularity. The number of terminals that accept debit cards in the United States increased by approximately 1.4 million in a recent five-year period and, with that increasing ubiquity, consumers have viewed debit cards "as a more convenient option than refilling their wallets with cash from an ATM." Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases,* MarketWatch, Mar. 23, 2016, http://www.marketwatch.com/story/morepeople-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

86.     Not only have accountholders increasingly transitioned from cash to debit cards, but they believe that a debit card purchase is the fundamental equivalent of a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

SCUCU was aware of accountholder perception that debit transactions reduce an account's available balance *at a specified time*—namely, the moment they are actually initiated—and its account agreement only supports this perception.

### E.  Plaintiff's Experience

87.     As an example, in May 2019, Plaintiff was assessed OD Fees in the amount of $32 for a debit card transaction that settled that day, despite the fact that positive funds were previously sequestered for the transaction. At the time the funds were sequestered, Plaintiff had a positive balance, which would not have caused an OD Fee.

## CLASS ACTION ALLEGATIONS

88.     Plaintiff brings this class action on behalf of herself, and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. The proposed classes are defined as:

> All SCUCU accountholders who, during the applicable statute of limitations, were charged OD Fees on debit card transactions that were authorized into a positive available balance ("APPSN class").

> All SCUCU accountholders who, during the applicable statute of limitations, were charged multiple NSF Fees or OD Fees on the same item ("Multiple Fee class").

Plaintiff also brings their claims on behalf of Subclasses of Massachusetts accountholders with the subclasses to be defined as follows:

> All Massachusetts citizens who, during the applicable statute of limitations, were SCUCU checking account holders and charged an OD Fee on debit card transactions that were authorized into a positive available balance ("Massachusetts

21

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

APPSN Class").

All Massachusetts citizens who, during the applicable statute of limitations, were SCUCU checking account holders and charged multiple NSF Fees or OD Fees on the same item ("Massachusetts Multiple Fee Class").

89.     Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, all members who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, their immediate family members, and chambers staff.

90.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes, including by adding subclass(es), before this Court determines whether certification is appropriate.

91.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because SCUCU has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

92.     These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

a.  Whether SCUCU charged OD Fees on transactions that were authorized into a positive available balance;

b.  Whether SCUCU breached its own contract by charging OD Fees on transactions

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

that were authorized into a positive available balance;

c.   Whether SCUCU charged multiple fees on the same item;

d.   Whether SCUCU breached its own contract by charging multiple fees on the same item.

e.   Whether SCUCU breached the covenant of good faith and fair dealing;

f.   Whether SCUCU engaged in unfair and deceptive acts and practices relating to the imposition of OD Fees, in violation of G.L. c. 93A, §§ 2 and 9;

g.   The proper method or methods by which to measure damages; and

h.   The declaratory and injunctive relief to which the proposed Classes are entitled.

93.    There are common answers to these questions such that they can be answered in one fell swoop with respect to all Class members.

94.    Plaintiff's claims are typical of the claims of the members of the Classes as they arise from the same core practices, namely, SCUCU charging multiple fees on the same item and OD Fees on APPSN Transactions in breach of its contracts with Plaintiff and the putative Class members. The material facts underlying the claims of each putative Class member are the same material facts supporting Plaintiff's claims. Plaintiff and the other Class members have sustained injuries from, and are facing harm arising out of, SCUCU's common course of conduct as complained of herein. The losses of each Class member were caused directly by SCUCU's wrongful conduct as alleged herein.

95.    Plaintiff will fairly and adequately represent and protect the interests of the Classes as they arise from the same core practices. By proving her individual claims, Plaintiff will necessarily prove the claims of the Classes and prove SCUCU's liability to the Classes. Plaintiff has no known conflicts of interest with any members of the Classes; her interests and claims are

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

not antagonistic to those of any other Class members; and her claims are not subject to any unique defenses.

96.    Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation, including complex consumer class actions, both within and outside Massachusetts. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

97.    As alleged above with respect to the commonality requirement, SCUCU's conduct toward Plaintiff and the Classes raises common questions of law and fact that predominate over any questions affecting only individual members of the Classes, as SCUCU improperly and regularly charges multiple fees on the same item, and OD Fees on APPSN Transactions. Plaintiff and the members of the Classes suffered, and will continue to suffer, harm as a result of SCUCU's unlawful and wrongful conduct.

98.    A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Because the Classes encompass thousands of claims, a single class action is more efficient than thousands of individual actions, each requiring the same discovery and proof. Given the relatively small amount of claims of each Class member, it is likely that absent class representation, such claims will not be brought, and the Classes will never have appropriate redress for SCUCU's improper conduct.

99.    Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts where the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum. The

24

conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

100.    Class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide relief to Class members for their past and future injuries. It will also deter SCUCU from engaging in such wrongful conduct in the future.

101.    There are no unusual difficulties likely to be encountered in the maintenance of this action as a class action suit, as this Court can effectively manage the class action.

102.    More specifically, the Classes are not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants because SCUCU keeps records of member accounts during the class period, including records of members to whom it charged multiple fees and OD Fees on APPSN Transactions. Therefore, both the membership of the Classes and the amount of individual damages are readily ascertainable from SCUCU's records.

103.    Thus, a class action is superior and more efficient to other available methods for the fair and efficient adjudication of this controversy. Indeed, unless the Classes are certified, SCUCU will continue to unlawfully charge multiple fees on the same item and OD Fees on APPSN Transactions.

104.    Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for SCUCU as the party opposing the Classes; and/or (b) adjudications with respect to individual Class members would, as a practical

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

105.    SCUCU, as the party opposing the Classes, has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## **COUNT I**
**Breach of Contract, Including the Covenant of Good Faith and Fair Dealing**
**(On behalf of Plaintiff and the Classes)**

106.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

107.    Plaintiff and SCUCU have contracted for credit union account deposit, checking, ATM, and debit card services. The contract does not permit SCUCU to charge multiple fees on the same item or OD Fees on APPSN Transactions.

108.    In breach of its Account Documents, Defendant charged multiple fees on the same item.

109.    In breach of its Account Documents, Defendant charged OD Fees on transactions that were authorized on a positive balance and did not overdraw an account.

110.    Defendant's breach has caused Plaintiff and the Classes to incur additional NSF and OD Fees that were never disclosed nor agreed to in the Account Documents.

111.    Further, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the spirit of their contract in addition to its substance.

26

112.    Failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

113.    SCUCU has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, SCUCU had no discretion to charge multiple fees on the same item or OD Fees on transactions that were authorized on a positive available balance. SCUCU's discretion regarding payment of overdrafts did not include discretion to charge multiple fees on the same item or OD Fees in the absence of an overdraft.

114.    Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

115.    Plaintiff and members of the Classes have sustained damages as a result of SCUCU's breach of the contract.

## <u>COUNT II</u>
### Violation of Massachusetts Consumer Protection Act, G.L. C. 93A
### (On Behalf of Plaintiff and the Massachusetts Subclasses)

116.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

117.    This claim is asserted on behalf of Plaintiff and the members of the Massachusetts Subclasses under Massachusetts Consumer Protection Act, G.L. c. 93A, *et seq*.

118.    The Massachusetts Consumer Protection Act declares unlawful any "unfair or deceptive acts or practices in the conduct of any trade or commerce." G.L. c. 93A, §2.

119.    SCUCU's acts and practices were in and affected trade or commerce as defined by G.L. c. 93A, §1.

27

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

120.    SCUCU engaged in unfair and deceptive acts and practices relating to the imposition of NSF and OD Fees, in violation of G.L. c. 93A, §§2 and 9. Specifically, SCUCU misrepresented its practice of charging multiple NSF Fees and OD Fees in its Account Documents.

121.    SCUCU's acts and practices proximately caused injury to Plaintiff and the Massachusetts Subclasses, and they are entitled to, inter alia, damages, injunctive, and declaratory relief.

122.    SCUCU's actions as detailed above were knowing or willful violations of Mass. Gen. Laws c. 93A, §§2 and 9, entitling Plaintiff and members of the Massachusetts Subclasses to an award of double or treble damages.

123.    On December 9, 2022, before filing this Second Amended Complaint, Plaintiff sent a written demand for relief to Defendant. Defendant did not make a satisfactory response or reasonable offer of settlement.

124.    Because of the unfair and deceptive acts and practices of SCUCU, on behalf of herself and the Massachusetts Subclasses, Plaintiff seeks actual damages, minimum statutory damages, double and treble damages, injunctive relief, and other such equitable relief as the Court finds necessary and proper, as well as reasonable attorneys' fees and costs under G.L. c. 93A, §9(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Suzanne Dos Santos Pais, individually and on behalf of the Classes, respectfully requests that the Court:

A.    Issue an order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and that Plaintiff's counsel be appointed Class Counsel;

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

B.      Declare Defendant's NSF and OD fee policies and practices to be wrongful, unfair, and unconscionable;

C.      Order Defendant to immediately cease the wrongful conduct set forth above and enjoin SCUCU from conducting business via the unlawful and unfair business acts and practices complained of herein;

D.      Award restitution of all wrongfully charged NSF and OD Fees paid to Defendant by Plaintiff and members of the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.      Award actual and exemplary damages in an amount to be determined at trial;

F.      Award pre-judgment interest at the maximum rate permitted by applicable law;

G.      Award costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

H.      Award double and treble damages against Defendant for its knowing or willful violations of Massachusetts Consumer Protection Act, G.L. c. 93A §§ 2, 9; and

I.      Grant such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: August , 2024                          Respectfully submitted,

                                              */s/ Jonathan M. Hixon*
                                              Jonathan M. Hixon, BBO # 692420
                                              Hackett Feinberg P.C.
                                              155 Federal Street, 9th Floor
                                              Boston, MA 02110
                                              Tel. (617) 422-0200
                                              jmh@bostonbusinesslaw.com

29

David M. Berger (*to be admitted pro hac vice*)
Shawn K. Judge (*to be admitted pro hac vice*)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
Email: dmb@classlawgroup.com
Email: skj@classlawgroup.com


Jeffrey Kaliel (*to be admitted pro hac vice*)
Sophia Gold (*to be admitted pro hac vice*)
**KALIEL GOLD PLLC**
1100 14th Street NW, 4th Fl.
Washington, DC 20005
Telephone: (202) 250-4783
Email: jkaliel@kalielpllc.com
Email: sgold@kalielgold.com


*Attorneys for Plaintiff and the Proposed Classes*

30

# EXHIBIT B

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

# Long Form Notice

## Suzanne Dos Santos Pais, et al. v. Sharon & Crescent United Credit Union

**NOTICE OF PENDING CLASS ACTION AND PROPOSED SETTLEMENT**

**READ THIS NOTICE FULLY AND CAREFULLY; THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS!**

**IF YOU HAVE OR HAD A CHECKING ACCOUNT WITH SHARON & CRESCENT UNITED CREDIT UNION AND YOU WERE CHARGED CERTAIN OVERDRAFT FEES AND/OR CERTAIN NSF FEES BETWEEN DECEMBER 7, 2016, AND APRIL 18, 2023, THEN YOU MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT**

United States District Court for the District of Massachusetts has authorized this Notice; it is not a solicitation from a lawyer.

| SUMMARY OF YOUR OPTIONS AND THE LEGAL EFFECT OF EACH OPTION | |
|---|---|
| **DO NOTHING** | If you don't do anything, you will receive a payment from the Settlement Fund so long as you do not opt out of or exclude yourself from the settlement (described in the next box). |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT; RECEIVE NO PAYMENT BUT RELEASE NO CLAIMS** | You can choose to exclude yourself from the settlement or "opt out." This means you choose not to participate in the settlement. You will keep your individual claims against Defendant, but you will not receive a payment for relevant fees and/or Overdraft Forgiveness. If you exclude yourself from the settlement but want to recover against Defendant, you will have to file a separate lawsuit or claim. |
| **OBJECT TO THE SETTLEMENT** | You can file an objection with the Court explaining why you believe the Court should reject the settlement. If your objection is overruled by the Court, then you may receive a payment and/or Overdraft Forgiveness and you will not be able to sue Defendant for the claims asserted in this litigation. If the Court agrees with your objection, then the settlement may not be approved. |

These rights and options – **_and the deadlines to exercise them_** – along with the material terms of the settlement are explained in this Notice.

## BASIC INFORMATION

| 1. | What is this lawsuit about? |
|---|---|

In the lawsuit, the Plaintiff alleges that Sharon & Crescent United Credit Union assessed supposedly improper APPSN Fees between December 7, 2016, and April 18, 2023 and Retry NSF Fees between December 7, 2016, and October 31, 2021.

The lawsuit being settled is entitled *Suzanne Dos Santos Pais v. Sharon & Crescent United Credit Union*, Civil Action No. _____ pending in the United States District Court for the District of Massachusetts. The lawsuit is a "class action." That means that the "Class Representative," Suzanne Dos Santos Pais, is an individual who is acting on behalf of current and former customers who were assessed supposedly improper APPSN Fees between December 7, 2016 and April 18, 2023 and Retry NSF Fees between December 7, 2016, and October 31, 2021. The Class Representative has asserted claims for breach of contract, including breach of the implied covenant of good faith and fair dealing, and violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A.

Defendant denies any and all liability to Plaintiff and the members of the Settlement Classes in the Action, and believes it would ultimately be successful in its defense of all claims asserted in the Action, but nevertheless desires to settle the Action, and all claims that could have been alleged therein, on the terms set forth in this Agreement solely for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing these proceedings.

| 2. | Why did I receive this Notice of this lawsuit? |
|---|---|

You received this Notice because Defendant's records indicate that you were charged one or more overdraft fees or NSF fees that are the subject of this action. The Court directed that this Notice be sent to all Class Members because each such member has a right to know about the proposed settlement and the options available to him or her before the Court decides whether to approve the settlement.

| 3. | Why did the parties settle? |
|---|---|

In any lawsuit, there are risks and potential benefits that come with a trial versus settling at an earlier stage. It is the Class Representative's and her lawyers' job to identify when a proposed settlement offer is good enough that it justifies recommending settling the case instead of continuing to trial. In a class action, the Class Representative's lawyers, known as Class Counsel, make this recommendation to the Class Representative. The Class Representative has the duty to act in the best interests of the class as a whole and, in this case, it is her belief, as well as Class Counsel's opinion, that this settlement is in the best interest of all Class Members.

There is legal uncertainty about whether a judge or a jury will find that Defendant was contractually and otherwise legally obligated not to assess the fees at issue. And even if it was contractually wrong to assess these fees, there is uncertainty about whether the Class Representative's claims are subject to other defenses that might result in no or less recovery to Class Members. Even if the Class Representative was to win at trial, there is no assurance that the Class Members would be awarded more than the current settlement amount and it may take years of litigation before any

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

payments would be made. By settling, the Class Members will avoid these and other risks and the delays associated with continued litigation.

While Defendant disputes the allegations in the lawsuit and denies any liability or wrongdoing, it enters into the settlement solely to avoid the expense, inconvenience, and distraction of further proceedings in the litigation.

## WHO IS IN THE SETTLEMENT

| 4. | How do I know if I am part of the settlement? |
|---|---|

If you received this notice, then Defendant's records indicate that you are a Class Member who is entitled to receive a payment or credit to your account.

## YOUR OPTIONS

| 5. | What options do I have with respect to the settlement? |
|---|---|

You have three options: (1) do nothing and you will receive a payment according to the terms of this settlement; (2) exclude yourself from the settlement ("opt out" of it); or (3) participate in the settlement but object to it. Each of these options is described in a separate section below.

| 6. | What are the critical deadlines? |
|---|---|

There is no deadline to receive a payment. If you do nothing, then you will get a payment.

The deadline for sending a letter to exclude yourself from or opt out of the settlement is _____.

The deadline to file an objection with the Court is also _____.

| 7. | How do I decide which option to choose? |
|---|---|

If you do not like the settlement and you believe that you could receive more money by pursuing your claims on your own (with or without an attorney that you could hire) and you are comfortable with the risk that you might lose your case or get less than you would in this settlement, then you may want to consider opting out.

If you believe the settlement is unreasonable, unfair, or inadequate and the Court should reject the settlement, you can object to the settlement terms. The Court will decide if your objection is valid. If the Court agrees, then the settlement may not be approved, and no payments will be made to you or any other Class Member. If your objection (and any other objection) is overruled, and the settlement is approved, then you may still get a payment and/or forgiveness of Overdraft Forgiveness and will be bound by the settlement.

If you want to participate in the settlement, then you don't have to do anything; you will receive a payment if the settlement is approved by the Court.

| 8. | What has to happen for the settlement to be approved? |
|---|---|

The Court has to decide that the settlement is fair, reasonable, and adequate before it will approve it. The Court already has decided to provide Preliminary Approval of the Settlement, which is why

you received a Notice. The Court will make a final decision regarding the settlement at a "Fairness Hearing" or "Final Approval Hearing," which is currently scheduled for _____.

## THE SETTLEMENT PAYMENT

| 9.      How much is the settlement? |
|---|

Defendant has agreed to create a Settlement Fund of $725,000. It will also provide Overdraft Forgiveness, as defined in the Agreement.

As discussed separately below, attorneys' fees, litigation costs, and the costs paid to a third-party Claims Administrator to administer the settlement (including mailing and emailing Notice) will be paid out of the Settlement Fund. The Net Settlement Fund will be divided among all Class Members entitled to Class Member payments based on formulas described in the Agreement.

| 10.      How much of the Settlement Fund will be used to pay for attorneys' fees and costs? |
|---|

Class Counsel will request the Court to approve attorneys' fees of not more than $ _____, equal to 33 1/3% of the Value of the Settlement and will request that it be reimbursed for litigation costs incurred in prosecuting the case. The Court will decide the amount of the attorneys' fees and costs based on a number of factors, including the risk associated with bringing the case on a contingency basis, the amount of time spent on the case, the amount of costs incurred to prosecute the case, the quality of the work, and the outcome of the case.

| 11.      How much of the Settlement Fund will be used to pay the Class Representatives Service Awards? |
|---|

Class Counsel will request that the Class Representative be paid a Service Award in the amount of $ 5,000 for her work in connection with this case. The Service Award must be approved by the Court.

| 12.      How much will my payment be? |
|---|

The balance of the Settlement Fund after attorneys' fees and costs, the Service Awards, and the Claims Administrator's fees, also known as the Net Settlement Fund, will be divided among all Class Members entitled to Class Member payments in accordance with the formulas outlined in the Agreement. Current customers of Defendant will receive a credit to their accounts for the amount they are entitled to receive. Former customers of Defendant shall receive a check from the Claims Administrator. Class Members entitled to Overdraft Forgiveness shall receive this benefit automatically.

| 13.      Do I have to do anything if I want to participate in the settlement? |
|---|

No. If you received this Notice, then you may be entitled to receive a Class Member payment and/or Overdraft Forgiveness without having to make a claim, unless you choose to exclude yourself from the settlement, or "opt out."

| 14.      When will I receive my payment? |
|---|

The Court will hold a Final Approval Hearing on _____, at _____ to consider whether the settlement should be approved. If the Court approves the settlement, then payments should be made, or credits should be issued within 15 days of the Effective Date. However, if someone objects to the settlement, and the objection is sustained, then there is no settlement. Even if all objections are overruled and the Court approves the settlement, an objector could appeal, and it might take months or even years to have the appeal resolved, which would delay any payment.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| 15. | How do I exclude myself from the settlement? |
|-----|---------------------------------------------|

If you do not want to receive a payment or if you want to keep any right you may have to sue Defendant for the claims alleged in this lawsuit, then you must exclude yourself, or "opt out."

To opt out, you **must** send a letter to the Claims Administrator saying that you want to be excluded. Your letter can simply say "I hereby elect to be excluded from the settlement in the *Suzanne Dos Santos Pais, v. Sharon & Crescent United Credit Union* class action." Be sure to include your name, the last four digits of your account number(s) or former account number(s), address, telephone number, and email address. Your exclusion or opt out request must be postmarked by _____, and sent to:

Suzanne Dos Santos Pais v. Sharon & Crescent United Credit Union

Claims Administrator

Attn: ADDRESS OF THE CLAIMS ADMINISTRATOR

| 16. | What happens if I opt out of the settlement? |
|-----|---------------------------------------------|

If you opt out of the settlement, you will preserve and not give up any of your rights to sue Defendant for the claims alleged in this case. However, you will not be entitled to receive a payment from the settlement.

## OBJECTING TO THE SETTLEMENT

| 17. | How do I notify the Court that I do not like the settlement? |
|-----|-------------------------------------------------------------|

You can object to the settlement or any part of it that you do not like **IF** you do not exclude yourself, or opt-out, from the settlement. (Class Members who exclude themselves from the settlement have no right to object to how other Class Members are treated.) To object, you **must** send a written document by mail or private courier (e.g., Federal Express) to the Claims Administrator at the address below. Your objection must include the following information:

- A statement of your intention to object to the settlement in the *Suzanne Dos Santos Pais. v. Sharon & Crescent United Credit Union* class action;

- Your name, address, telephone number, the last four digits of your account number or former account number, and the contact information for any attorney you have retained in connection with this case;

- A statement of the factual and legal basis for each objection and any exhibits you wish the Court to consider in connection with the objection;

- A statement as to whether you intend to appear at the Final Approval Hearing, either in person or through an attorney, and, if through an attorney, identifying the attorney by name, address, and telephone number; and

- Your signature.

All objections must be post-marked <u>no later</u> than <mark>_____</mark>, and must be mailed to the Claims Administrator as follows:

| **CLAIMS ADMINSTRATOR** |
| --- |
| Suzanne Dos Santos Pais. v. Sharon & Crescent United Credit Union Claims Administrator Attn: <mark>ADDRESS OF THE CLAIMS ADMINISTRATOR</mark> |

| **18.    What is the difference between objecting and requesting exclusion from the settlement?** |
| --- |

Objecting is telling the Court that you do not believe the settlement is fair, reasonable, and adequate for the Class Members, and asking the Court to reject it. You can object only if you do not opt out of the settlement. If you object to the settlement and do not opt out, then you are entitled to a Class Member payment and/or forgiveness of Overdraft Forgiveness if the settlement is approved, but you will release claims you might have against Defendant. Excluding yourself or opting-out is telling the Court that you do not want to be part of the settlement, and do not want to receive a Class Member payment or Overdraft Forgiveness, or release claims you might have against Defendant for the claims alleged in this lawsuit.

| **19.    What happens if I object to the settlement?** |
| --- |

If the Court sustains your objection, or the objection of any other Class Member, then there is no settlement. If you object, but the Court overrules your objection and any other objection(s), then you will be part of the settlement.

## THE COURT'S FINAL APPROVAL HEARING

| **20.    When and where will the Court decide whether to approve the settlement?** |
| --- |

The Court will hold a Final Approval or Fairness Hearing at _____ on _____, 2024 at _____ which is located at _____. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. The Court may also decide how much to award Class Counsel for attorneys' fees and litigation costs and the amount of the Service Awards to the Class Representatives. The hearing may be virtual, in which case the instructions to participate shall be posted on the website at [WEBSITE].

| **21.** | **Do I have to come to the hearing?** |

No. Class Counsel will answer any questions the Court may have. You may attend if you desire to do so. If you have submitted an objection, then you may want to attend.

| **22.** | **May I speak at the hearing?** |

If you have objected, you may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include with your objection, described in Question 18, above, the statement, "I hereby give notice that I intend to appear at the Final Approval Hearing."

## THE LAWYERS REPRESENTING YOU

| **23.** | **Do I have a lawyer in this case?** |

The Court ordered that the lawyers and their law firms referred to in this notice as "Class Counsel" will represent you and the other Class Members.

| **24.** | **Do I have to pay the lawyer for accomplishing this result?** |

No. Class Counsel will be paid directly from the Settlement Fund.

| **25.** | **Who determines what the attorneys' fees will be?** |

The Court will be asked to approve the amount of attorneys' fees at the Final Approval Hearing. Class Counsel will file an application for attorneys' fees and costs and will specify the amount being sought as discussed above. You may review a physical copy of the fee application at the website established by the Claims Administrator.

## GETTING MORE INFORMATION

This Notice only summarizes the proposed settlement. More details are contained in the Settlement Agreement, which can be viewed/obtained online at [WEBSITE].

For additional information about the settlement and/or to obtain copies of the Settlement Agreement, or to change your address for purposes of receiving a payment, you should contact the Claims Administrator as follows:

Suzanne Dos Santos Pais v. Sharon & Crescent United Credit Union

Claims Administrator

Attn: ADDRESS OF THE CLAIMS ADMINISTRATOR

For more information, you also can contact the Class Counsel and Defense Counsel as follows:

KALIEL GOLD, PLLC
Sophia Goren Gold, Esq.
950 Gilman Street, Suite 200
Berkeley, CA 94710
Email: sgold@kalielgold.com

K&L Gates LLP
Christopher J. Valente
Peter W. Shanley
1 Congress Street, Suite 290
Boston, MA 02114

***PLEASE DO NOT CONTACT THE COURT OR ANY REPRESENTATIVE OF DEFENDANT CONCERNING THIS NOTICE OR THE SETTLEMENT.***

# <u>EXHIBIT C</u>

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

Suzanne Dos Santos Pais, et al. v. Sharon & Crescent United Credit Union

**NOTICE OF PENDING CLASS ACTION AND PROPOSED SETTLEMENT**
<span style="color:red">**READ THIS NOTICE FULLY AND CAREFULLY; THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS!**</span>

**IF YOU HAVE OR HAD A CHECKING ACCOUNT WITH SHARON & CRESCENT UNITED CREDIT UNION AND YOU WERE CHARGED CERTAIN OVERDRAFT FEES AND/OR CERTAIN NSF FEES BETWEEN DECEMBER 7, 2016, AND APRIL 18, 2023, THEN YOU MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT**

United States District Court for the District of Massachusetts has authorized this Notice; it is not a solicitation from a lawyer.

You may be a Class Member in *Suzanne Dos Santos Pais v. Sharon & Crescent United Credit Union*, Civil Action No: _____ pending in the United States District Court for the District of Massachusetts in which the plaintiff alleges that Sharon & Crescent United Credit Union ("Defendant") improperly assessed certain overdraft fees for debit card payments between December 7, 2016, and April 18, 2023, and/or certain NSF and/or overdraft fees for check and ACH payments between December 7, 2016, and October 31, 2021. Defendant denies any and all liability to Plaintiff and the members of the Settlement Classes in the Action, but believes it would ultimately be successful in its defense of all claims asserted in the Action, but nevertheless desires to settle the Action, and all claims that could have been alleged therein, on the terms set forth in this Agreement solely for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing these proceedings.

If you are a Class Member and if the settlement is approved, you may be entitled to receive a cash payment from the $725,000 Settlement Fund and/or Overdraft Forgiveness.

The Court has preliminarily approved this settlement. It will hold a Final Approval Hearing in this case on [INSERT DATE]. At that hearing, the Court will consider whether to grant final approval to the settlement, and whether to approve payment from the Settlement Fund of up to $5000 for a service award to the class representative (Suzanne Dos Santos Pais), up to $ _____, equal to 33.33% of the Value of the Settlement as attorneys' fees, and reimbursement of costs to the attorneys and the Claims Administrator. If the Court grants the Final Approval Order and you do not request to be excluded from the settlement, you will release your right to bring any claim covered by the settlement. In exchange, Defendant has agreed to issue a credit to your account, make a cash payment to you if you are no longer a customer, and/or to forgive certain overdraft fees.

**To obtain a more detailed explanation of the settlement terms and other important documents please visit [INSERT WEBSITE ADDRESS]. Alternatively, you may call [INSERT PHONE #].**

**If the Final Approval Hearing is held by Zoom or by other remote means, information on how to access the hearing can be found on [INSERT WEBSITE ADDRESS].**

*If you do not want to participate in this settlement—you do not want to receive a credit or cash payment and/or Overdraft Forgiveness and you do not want to be bound by any judgment entered in this case—you may exclude yourself by submitting an opt-out request postmarked no later than*

*[PARTIES TO INSERT DATE]. If you want to object to this settlement because you think it is not fair, adequate, or reasonable, you may object by submitting an objection postmarked no later than [PARTIES TO INSERT DATE]. You may learn more about the opt-out and objection procedures by visiting [PARTIES TO PROVIDE WEBSITE ADDRESS] or by calling [Insert Phone #].*

# EXHIBIT D

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

## THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE DOS SANTOS PAIS, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> SHARON & CRESCENT UNITED CREDIT UNION, <br><br> Defendant. | Case No.: |

## (PROPOSED) FINAL APPROVAL ORDER

**WHEREAS**, the Parties in the above-captioned class action ("Action") entered into a Settlement Agreement dated _____, 2024 (the "Agreement," "Settlement Agreement," or "Settlement");

**WHEREAS**, on _____, 2024, the Court entered a Preliminary Approval Order, which, inter alia: (i) preliminarily approved the Settlement; (ii) determined that, for purposes of the settlement only, the Action should proceed as a class action pursuant to Fed. R. Civ. P. 23; (iii) appointed Suzanne Dos Santos Pais as Settlement Class Representative for the Settlement Classes; (iv) appointed KalielGold PLLC as Settlement Class Counsel; (v) approved the form and manner of the Class Notice; and (vi) set a hearing date to consider final approval of the Settlement;

**WHEREAS**, Class Notice was provided to all persons identified in the Settlement Class Member List in accordance with the Court's Preliminary Approval Order by individual mailings

1

to all persons in the Settlement Class who could be reasonably identified;

**WHEREAS**, on _____, 2024, at _____ _.m., at

the United States District Court for the District of Massachusetts, _____,

Massachusetts 02110, The Honorable _____ held a hearing to determine

whether the Settlement was fair, reasonable, and adequate ("Final Approval Hearing"); and

**WHEREAS**, based on the foregoing, having considered the papers filed and proceedings

held in connection with the Settlement, having considered all of the other files, records, and

proceedings in the Action, and being otherwise fully advised,

**IT IS HEREBY ORDERED** that:

A.     This Court has jurisdiction over the subject matter of the Action and over all Parties

to the Action, including all Settlement Class Members.

B.     This Order incorporates the definitions in the Settlement Agreement, and all terms

used in this Order have the same meanings as set forth in the Settlement Agreement, unless

otherwise defined herein.

C.     The Class Notice provided to the Settlement Class in accordance with the

Preliminary Approval Order was the best notice practicable under the circumstances, and

constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons

entitled to notice.

D.     The Settlement set forth in the Agreement (i) is in all respects fair, reasonable, and

adequate to the Settlement Class, (ii) was the product of informed, arms-length negotiations among

competent, able counsel, and (iii) was made based upon a record that is sufficiently developed and

complete to  enable the Settlement Class Representative and Defendant to adequately evaluate and

consider their positions. In finding the Settlement fair, reasonable, and adequate, the Court has also

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

considered the number of opt-outs from the Settlement, objections by Settlement Class Members, and the opinion of competent counsel concerning such matters. The Court has considered duly filed objections to the Settlement, if any, and to the extent such objections have not been withdrawn, superseded, or otherwise resolved, they are overruled and denied in all respects on their merits.

   E. The distribution plan proposed by the Parties is fair, reasonable, and adequate.

   F. The Settlement Class Representative has fairly and adequately represented the interests of Settlement Class Members in connection with the Settlement.The persons and entities who have timely and validly filed notices of intention to opt out are identified in Exhibit 1 attached hereto ("Excluded Persons").

   **NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that:

   1. The Settlement set forth in the Settlement Agreement is approved as fair,reasonable, and adequate. Accordingly, the Court authorizes and directs implementation of all terms and provisions of the Settlement Agreement.

   2. All Parties to this Action, and all Settlement Class Members, are bound by the Settlement as set forth in the Settlement Agreement and this Order. Excluded Persons identified in Exhibit 1 are no longer parties to this Action and are not bound by the Agreement or the Settlement.

   3. The appointment of Suzanne Dos Santos Pais as Settlement Class Representative for the Settlement Classes is affirmed.

   4. The appointment of KalielGold PLLC and Gibbs Law Group LLC as Settlement Class Counsel is affirmed.

   5. The Court affirms the finding that the Settlement Class meets the relevant requirements of Fed. R. Civ. P. 23 for purposes of the Settlement in that: (a) the Settlement Classes

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

are so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Classes; (c) the claims or defenses of the Settlement Class Representative are typical of the claims or defenses of the Settlement Classes; (d) the Settlement Class Representative will fairly and adequately protect the interests of the Settlement Classes, and have retained experienced counsel to represent them; (e) the questions of law or fact common to the Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (f) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Judgment shall be, and hereby is, entered dismissing the Action with prejudice, without taxation of costs in favor of or against any Party.

6.    The Settlement Class Representative and each Settlement Class Member, and each of their respective spouses, children, executors, Representative, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-borrowers, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf are hereby conclusively deemed to have completely released and forever discharged Defendant, and each of its parents, subsidiaries, affiliates, officers, directors, employees, attorneys, shareholders, agents, assigns, and third party suppliers and vendors (collectively, the "Released Parties"), from any claim, right, demand, charge, suit, matter, damage, loss, complaint, action, cause of action, obligation, or liability of any and every kind and description, from the beginning of the world until today, that arises out of common law, state law, or federal law, whether by Constitution, statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, apparent or unapparent, matured or unmatured, disclosed or undisclosed, accrued or unaccrued, latent or patent, foreseen or unforeseen, actual or contingent,

4

liquidated or unliquidated, that were or could have been asserted in the Action, or which could be raised in the future, in any court, tribunal, forum, or proceeding, arising out of, in connection with, or relating in any way to the allegations made in the Action or the underlying facts and circumstances, including, but not limited to, that Defendant was allegedly assessing improper fees on Accounts (the "Released Claims"). The Settlement Class Representative, and all Settlement Class Members, are hereby conclusively deemed to have waived any statutes, laws, or legal principles of any state providing, in effect, that a release does not extend to claims that the releasing party does not know or suspect to exist when executing the release and that, if known, would have affected his or her settlement with the released party, or language similar in purpose.

7.      The Settlement Class Representative and all Settlement Class Members are hereby barred and permanently enjoined from instituting, asserting or prosecuting any or all of the Released Claims against any of the Released Parties.

8.      The distribution plan as described in the Class Notice to all persons identified in the Settlement Class Member List is hereby approved, subject to modification by further order of this Court, which may, at the discretion of the Court, be entered without further notice to the Settlement Class. Any order or proceedings relating to the distribution plan or amendments thereto shall not operate to terminate or cancel the Settlement Agreement or affect the finality of this Final Approval Order.

9.      The Court hereby decrees that neither the Settlement Agreement, nor this Order, nor the fact of the Settlement, is an admission or concession by Defendant or the Released Parties of any fault, wrongdoing or liability whatsoever, or as an admission of the appropriateness of class certification for trial or dispositive motion practice. This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the

5

Settlement shall be offered or received in evidence as an admission, concession, presumption or inference against Defendant or the Released Parties in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement or to support a defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense.

10.      Settlement Class Counsel is awarded attorneys' fees and costs in the amount of $_____, such amounts to be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement. Settlement Class Representative is awarded a service award of $_____ each, such amounts to be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement. The Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions from the Settlement Fund; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Settlement Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

11.      There being no just reason for delay, the Clerk of Court is hereby directed to enter final judgment in the Action.

12.      In the event that this "Final Approval Order" does not become "Final", as defined in _____ of the Settlement Agreement, then the Settlement shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement, and this Order shall be vacated. In such event, all orders entered and releases delivered in connection with the Settlement shall be null and void and the Action shall return to its status immediately prior to execution of the Settlement Agreement.

6

13.     The Court adjudges that the Settlement Class Representative and all Settlement Class Members shall be bound by this Final Approval Order. Upon the entry of this Order, the Settlement Class Representative and all Settlement Class Members shall be enjoined and barred from asserting any claims against Defendant and the Released Parties arising out of, relating to, or in connection with the Released Claims.

Date: _____, 2024.


_____
Hon. _____
District Judge

7

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

# **<u>EXHIBIT E</u>**

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

**THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUZANNE DOS SANTOS PAIS, on behalf of herself and all others similarly situated, | Case No.: |
| Plaintiff, | |
| vs. | |
| SHARON & CRESCENT UNITED CREDIT UNION, | |
| Defendant. | |

**(PROPOSED) PRELIMINARY APPROVAL ORDER**

**WHEREAS**, Plaintiff in the above-captioned class action ("Action") have applied for an order preliminarily approving a Settlement Agreement (the "Agreement," "Settlement Agreement," or "Settlement") entered into by the Parties as of _____, 2024 (which, together with its exhibits, is incorporated herein by reference) and dismissing the Action upon the terms and conditions set forth in the Agreement;

**WHEREAS,** all defined terms used in this Order have the same meanings as set forth in the Agreement;

**NOW, THEREFORE**, upon the agreement of the Parties, and after consideration of the Agreement and its exhibits,

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

**IT IS HEREBY ORDERED** that:

1.     The representations, agreements, terms, and conditions of the Settlement, as embodied in the Agreement and the exhibits attached thereto, are preliminarily approved pending a final hearing on the Settlement as provided herein.

2.     For purposes of the Settlement only, the Court finds and determines that the Action may proceed as a class action pursuant to Fed. R. Civ. P. 23, on behalf of the following "Settlement Classes":

> **APPSN Class**: All Account holders who were charged one or more APPSN Fees during the APPSN Class Period.

> **Representment Class**: All Account holders who were charged one or more Representment Fees during the Representment Class Period.

The Court finds that, for purposes of Settlement only, the Settlement Classes meet the relevant requirements of Fed. R. Civ. P. 23 in that: (a) the Settlement Classes are so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Classes; (c) the claims or defenses of the Settlement Class Representative are typical of the claims or defenses of the Settlement Classes; (d) the Settlement Class Representative will fairly and adequately protect the interests of the Settlement Classes, and have retained experienced counsel to represent them; (e) the questions of law or fact common to the Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (f) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

3.     Also for purposes of the Settlement only, the Court finds and determines that Plaintiff Suzanne Dos Santos Pais (the "Settlement Class Representative") will fairly and adequately represent the interests of the Settlement Class Members in enforcing their rights in the

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

Action, and appoints Plaintiff Pais as the Settlement Class Representative for the Settlement Classes.

4.      For purposes of the Settlement, the Court appoints KalielGold PLLC and Gibbs Law Group LLC as Settlement Class Counsel to act on behalf of the Settlement Classes and the Settlement Class Representative with respect to the Settlement.

5.      Verita Class Action Settlement Services is appointed as Settlement Administrator.

6.      The terms of the Settlement Agreement (and the Settlement provided for therein) are preliminarily approved as (a) fair, reasonable, and adequate in light of the relevant factual, legal, practical, and procedural considerations of the Action, (b) free of collusion, and (c) within the range of possible final judicial approval, subject to further consideration at the Final Approval Hearing.

7.      Having reviewed the proposed form of Class Notice submitted by the Parties as Exhibits ___ to the Agreement, the Court approves, as to form and content, such Class Notice.

8.      The Court directs that the Settlement Administrator cause a copy of the Class Notice to be mailed to all Settlement Class Members who can be identified by Defendant through its records, or, for Settlement Class Members who have elected to receive notices electronically from Defendant, by emailing the Class Notice to all Settlement Class Members who can be identified by Defendant through its records and who have provided their email addresses to Defendant.  The mailing is to be made by first class United States mail, postage prepaid, and mailing and emailing are to be completed within twenty-one (21) days of the Settlement Administrator's receipt of the Settlement Class Member List from Defendant.

9.      The Court finds and determines that mailing and emailing of the Class Notice pursuant to this Order constitutes the best notice practicable under the circumstances, and

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

constitutes due and sufficient notice of the matters set forth in the notices to all persons entitled to receive such notices.

10.     Any person falling within the definition of the Settlement Classes may, upon request, be excluded or "opt out" from the Settlement Class.  Any such person who desires to request exclusion from the Settlement Classes must submit a notice of intention to opt out.  Such notice of intention to opt out must be mailed to the Settlement Administrator or submitted online at www._____.com, such that it is postmarked or submitted online no later than _____ __, 2024.  If there is more than one account holder on an account, all account holders must execute the notice of intention to opt out for the opt-out to be effective.  Any notice in which a Settlement Class Member purports to opt out any other person (including any group, aggregate, or putative class involving more than one Settlement Class Member) shall not be considered a valid opt-out.  Individuals are not permitted to exclude other individuals, and if there is a group of opt-outs, each individual Settlement Class Member must evidence his or her intent by complying with the procedures set forth in this Order, the Class Notice, and the Settlement Agreement.  Any opt-out submitted by a Settlement Class Member on behalf of a group, aggregate, or putative class shall be deemed valid as to that Settlement Class Member only, and shall be invalid as to the group, aggregate, or putative class.  All persons and entities who submit valid and timely notices of intention to opt out as set forth in this Order, the Class Notice, and the Settlement Agreement shall have no rights under the Settlement, shall not share in the distribution of the Settlement Amount, and shall not be bound by the Settlement or any final judgment entered in this Action.

11.     A hearing will be held by this Court in the Courtroom of The Honorable _____, United States District Court for the District of Massachusetts at _____, Massachusetts 0_____ at _____am/p.m. on _____, 2024

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

("Final Approval Hearing"), to determine: (a) whether the Settlement should be approved as fair, reasonable, and adequate to the Settlement Classes; (b) whether the Final Approval Order should be entered in substance materially the same as Exhibit __ to the Agreement; (c) whether to approve any application of Settlement Class Counsel for an award of attorneys' fees and costs and/or service awards to the Settlement Class Representative; and (d) any other matters that may properly be brought before the Court in connection with the Settlement.  The Final Approval Hearing is subject to continuation, adjournment, and/or a change in location or method, by the Court without further notice to the Settlement Class.  The Court may approve the Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to the Settlement Class.

12.     Prior to the Final Approval Hearing, Settlement Class Counsel shall cause an affidavit or declaration to be filed with the Court and served on all Parties certifying that the Class Notice has been provided, as directed in ¶¶ 7 and 8 of this Order.

13.     Any Settlement Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice.  If a Settlement Class Member does not enter an appearance, he or she will be represented by Settlement Class Counsel.

14.     Any Settlement Class Member who wishes to object to the Settlement, to any request for an award of attorneys' fees and costs to Settlement Class Counsel, and/or to any request for service awards to the Settlement Class Representative, or to appear at the Final Approval Hearing and show cause, if any, why the Settlement should not be approved as fair, reasonable, and adequate to the Settlement Class, or why a final judgment should not be entered thereon, may do so, but must proceed as set forth in this paragraph.  No Settlement Class Member or other person will be heard on such matters unless they have submitted a written objection together with any

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

briefs, papers, statements, or other materials that the Settlement Class Member or other person wishes the Court to consider, postmarked by _____, 2024, as set forth in the Class Notice. Any objection must: (i) attach documents establishing, or provide information sufficient to allow the Parties to confirm that the objector is a member of the Settlement Class; (ii) include a detailed statement of such Settlement Class Member's specific objections; (iii) state the grounds for such objections; and (iv) identify all documents which the Settlement Class Member asks the Court to consider. An objecting Settlement Class Member who intends to appear in person at the Final Approval Hearing must file a Notice of Intention to Appear with the Clerk of Court and serve the Notice on all Parties. Settlement Class Representative and Defendant may file responses to any objections that are submitted by a Settlement Class Member.

15.    Any Settlement Class Member who does not make his or her objections in the manner and by the date set forth in ¶ 14 of this Order shall be deemed to have waived any objections, and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court.

16.    All Settlement Class Members shall be entitled to share in the Settlement Amount consistent with the distribution plan outlined in the Settlement Agreement.

17.    Upon the entry of this Order, the Settlement Class Representative and all Settlement Class Members shall be provisionally enjoined and barred from asserting any claims against the Defendant and the Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision as to whether to grant Final Approval of the Settlement.

18.    Upon the Effective Date, only persons who are Settlement Class Members shall have rights in the distribution of the Settlement Amount, except as provided in the Agreement.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

19.     All funds held by the Settlement Administrator shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the funds are distributed pursuant to the Agreement or further order of the Court.

20.     The Court reserves the right to adjourn or continue the Final Approval Hearing or change the location or method by which the Final Approval Hearing is held (*e.g.,* virtual), and any adjournment, continuance, or change may be without further notice of any kind to the Settlement Classes.

21.     In the event that the "Final Approval Order" does not become "Final," as defined in ¶ I.21 of the Settlement Agreement, then the Settlement shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement, and this Order shall be vacated.  In such event, all orders entered and releases delivered in connection with the Settlement shall be null and void.  In such event, the Action shall return to its status immediately prior to execution of the Settlement Agreement.

22.     Settlement Class Counsel and counsel for Defendant are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the Class Notice, and other exhibits that they jointly agree are reasonable or necessary.

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

Date: _____, 2024.


_____

Hon. _____

District Judge

8

Document Ref: FENRC-STBWD-3RVHL-2VKTJ

# Signature Certificate

Reference number: FENRC-STBWD-3RVHL-2VKTJ

| Signer | Timestamp | Signature |
|---|---|---|

**Suzanne Dos Santos Pais**
Email: szdos@aol.com
Shared via link

| | |
|---|---|
| Sent: | 12 Sep 2024 17:49:53 UTC |
| Viewed: | 24 Sep 2024 17:55:21 UTC |
| Signed: | 24 Sep 2024 18:00:20 UTC |

IP address: 66.30.27.89
Location: Brockton, United States

Document completed by all parties on:
24 Sep 2024 18:00:20 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 50,000+ companies worldwide.

