**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUZANNE DOS SANTOS PAIS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>SHARON & CRESCENT UNITED CREDIT UNION,<br><br>Defendant. | Case No. 1:24-cv-12954-GAO |

**MEMORANDUM IN SUPPORT OF**
**UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

*Leave to File Granted on August 12, 2025*

Plaintiff Suzanne Dos Santos Pais ("Plaintiff" or "Settlement Class Representative") respectfully requests that the Court approve an award of $241,642.50 in attorneys' fees for Class Counsel, an award of $28,186.23 for reimbursement of litigation costs, and award of the Settlement Administrator for its costs, and a Service Award of $5,000.00 for the Settlement Class Representative. These awards are to be paid from the $725,000.00 Settlement Fund established by Defendant Sharon & Crescent United Credit Union ("Defendant") in connection with the class action Settlement Agreement and Release[1] entered into by the Parties that was preliminarily approved by the Court on March 19, 2025. *See* Preliminary Approval Order, ECF No. 30.

Defendant does not oppose these awards as requested herein.

---

[1] All capitalized terms used throughout this Motion have the same meanings as those found in the Settlement Agreement and Release (the "Agreement").

Class Counsel is entitled to reasonable compensation for the work performed and the costs incurred in prosecuting this case. After litigating the case (in state and then federal court) since December 2022, the Parties—with the assistance of a highly respected retired judge serving as a mediator—reached an agreement to settle the matter on a class-wide basis. Defendant agreed to return to Settlement Class Members their share of the $725,000.00 Settlement Fund that they incurred in improper Representment Fees and APPSN Fees based upon a plan of allocation that fairly and adequately accounts for the value of each Class Member's individual claim. This Settlement provides a significant financial benefit for the Settlement Classes without absent Settlement Class Members having to expend any time or effort to participate.

This extraordinary result could not have been achieved without the Settlement Class Representative's efforts. In prosecuting this action, Plaintiff expended her time and effort and took significant financial and reputational risks for the benefit of the Settlement Classes; this imposed a financial burden on Plaintiff out of proportion to her individual stake in the matter. As such, the Settlement Class Representative should be awarded a service award to compensate her for her work in bringing the case and facing the attendant risks associated with serving as class representative.

Based on the work that Class Counsel did in order to obtain the outcome for the Settlement Classes, the requested attorneys' fee award represents just 33.33% of the Settlement. This amount is reasonable and its percentage is routinely approved by courts across the nation in similar complex banking fee class action settlements. Accordingly, Plaintiff respectfully requests that the Court grant the unopposed motion for attorneys' fees, costs, and service award.

## BACKGROUND

### I. CLASS COUNSEL'S INVESTIGATION

Prior to the filing of this lawsuit, Class Counsel spent many hours investigating the claims of several potential plaintiffs against Defendant, including interviewing the Settlement Class Representative to gather information about Defendant's conduct and its impact on consumers, which was essential to Class Counsel's ability to understand the nature of Defendant's conduct, the language of the relevant account agreements and other documents at issue, and potential remedies.

Through its independent investigation, Class Counsel expended significant resources researching and developing the legal claims at issue. Indeed, Class Counsel is particularly familiar with the instant claims through their extensive history of litigating and resolving other banking fee claims with similar factual and legal issues to the case at bar. Class Counsel has experience in understanding the damages at issue, what information is critical in determining class membership, and what data is necessary to calculate each Class Member's respective damages. Class Counsel, along with its expert, spent a significant amount of time analyzing preliminary data regarding Defendant's fee revenue related to the assessment of the Representment Fees and APPSN Fees at issue. This data and analysis evaluating potential damages at issue was used in preparation for the Parties' two mediations and to further drive the viability of resolution.

### II. OVERVIEW OF THE LITIGATION

On December 7, 2022, Plaintiff filed a class action complaint in the Business Litigation Session of the Suffolk Superior Court, *Suzanne Dos Santos Pais v. Sharon & Crescent United Credit Union*, Docket No. 2284CV02759-BLS-1 (the "State Court Action") asserting claims against Defendant for breach of contract and breach of the covenant of good faith and fair dealing

based on Defendant's alleged practices of (1) assessing non-sufficient funds fees ("NSF Fees") in connection with represented automated clearinghouse ("ACH") transactions (the "Representment Claims") and (2) assessing overdraft fees ("OD Fees") in connection with debit card transactions that were authorized with a positive account balance, but purportedly settled with a negative account balance (the "APPSN Claims"). On March 13, 2023, Plaintiff amended her complaint to include a claim for a violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, based on the same allegations.

On April 16, 2024, the Parties participated in an arm's-length mediation of the State Court Action with the assistance of the Honorable Margaret R. Hinkle (Retired) of JAMS. In advance of this mediation, Defendant provided Plaintiff's counsel with certain aggregate and transactional data to allow the Parties to analyze potential class-wide damages under Plaintiff's theories of liability. Equipped with this data, Plaintiff engaged an expert consultant to review the transactional data and analyze the estimated damages at issue for the putative classes. Having engaged in such due diligence, the Parties participated in mediation and ultimately agreed to the material terms of the Settlement. A term of the Settlement was the stipulated dismissal of the State Court Action and the filing of this Federal Court Action.

On March 19, 2025, after the Court thoroughly examined the Settlement in its entirety to ensure the Settlement was provisionally fair, adequate, and reasonable, this Court entered its Preliminary Approval Order, conditionally approving the Settlement and provisionally certifying the Settlement Classes for purposes of notice and settlement only.

On January 23, 2025, Named Plaintiff filed an unopposed motion seeking preliminary approval of the class action settlement. In its April 7, 2025 Order, the Court granted such preliminary approval, finding that the terms of the proposed Settlement are fair, adequate, and

reasonable under the law and that they provided substantial relief for the Settlement Classes. That same order appointed Plaintiff as Settlement Class Representative, appointed Class Counsel for the provisionally certified Settlement Classes, approved Verita as the Settlement Administrator, and approved the proposed Notice plan. The Order also established the Opt-Out and Objection Deadlines and set forth the remainder of the case schedule, including the October 8, 2025 Final Approval Hearing date.

In sum, the pre-filing investigation and the procedural history of the litigation illustrates that Class Counsel spent significant time conferring with Plaintiff, investigating facts, researching the law, preparing the pleadings, engaging in discovery and ongoing meet and confer efforts, working with expert witnesses, and reviewing important documents and data. Class Counsel's extensive efforts resulted in the provisionally approved Settlement.

## III. SUMMARY OF KEY SETTLEMENT TERMS

The Agreement, which completely resolves all claims in the Action, sets forth the following Settlement Classes, which the Court has previously provisionally certified:

> **APPSN Class:** All Account holders who were charged one or more APPSN Fees during the APPSN Class Period.
>
> **Representment Class:** All Account holders who were charged one or more Representment Fees during the Representment Class Period.

(Agreement, ¶ §§ I.5-6,I.38-39, II.A-B.) Note that "APPSN Fees" means overdraft fees "assessed to an Account during the APPSN Class Period for a debit card transaction that was authorized with a positive account balance and settled with a negative account balance as identified based on review and analysis of reasonable accessible transactional data and information." *Id.* ¶ 1.7. "Representment Fees" means NSF Fees "assessed in connection with an ACH entry on an Account that (a) was resubmitted by the merchant or its bank with a RETRY PYMT indicator after the

initial request for payment was declined or (b) was preceded by another returned ACH entry submitted by the same merchant in the same amount within the last ten days, so long as the merchant had not used the 'RETRY PYMT' indicator on a resubmitted transaction." *Id.* ¶ 1.40.

Defendant has agreed to pay $725,000.00 cash for the benefit of Settlement Class Members. Agreement ¶ 1.45. This cash amount will be used to pay: (a) Settlement Class Members their respective Settlement Class Member Payments; (b) any Court-awarded reasonable attorneys' fees and costs for Class Counsel; (c) any Court-awarded Service Award for Plaintiff's role as Settlement Class Representative; (d) costs associated with Class Notice; (e) the Settlement Administration Expenses, including any fees paid to the Settlement Administrator; and (f) if any residual funds remain after the distribution of Settlement Class Members' Payments, then to be distributed to the *cy pres* recipient. *Id.* ¶¶ I.45, III.B., III.D.5, IV.A.1, IV.C.1., IV.C.2.

## ARGUMENT

Pursuant to the Agreement, Class Counsel is entitled to request, and Defendant will not oppose, attorneys' fees of up to 33.33% of the Settlement Amount, plus reimbursement of reasonable litigation costs incurred in connection with the Action. Agreement ¶ IV.C.2. Attorneys' fees and costs will be paid out of the Settlement Fund. *Id.* The Parties reached an agreement regarding Defendant's non-opposition to Class Counsel's request for attorneys' fees and costs only after the Parties agreed to the material terms of the Settlement. Such an award is subject to the Court's final approval and will serve to compensate the time, risk, and expense Class Counsel incurred in pursuing claims for the benefit of the Settlement Classes.

In addition to attorneys' fees and costs, the Agreement provides that Class Counsel will seek a Service Award of up to $5,000.00 for the Plaintiff for her role in the case serving as Settlement Class Representative. Agreement, ¶ IV.C.2. The Service Award will be paid from the

Settlement Fund and will be in addition to the Settlement Class Member Payment that Plaintiff will be entitled to receive under the Settlement. *Id.* Notably, Defendant also does not object to Class Counsel's request for the Service Award.

# I. CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES IN THE AMOUNT OF 33.33% OF THE SETTLEMENT AMOUNT ARE REASONABLE AND SHOULD BE APPROVED

## A. The Court Should Apply the Percentage-of-The-Recovery Method

One federal judge in the District has explained:

> In the First Circuit, the percentage of fund methodology, where a percentage of the settlement is deducted from the common settlement fund and used to compensate the attorneys for their efforts, is favored and appropriate in common fund cases. [*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).] However, district courts may also calculate a fee award using either percentage of fund methodology or a lodestar when determining fee awards. *Id.* Regardless of the method used to calculate a fee award, the touchstone of the analysis is reasonableness.

*Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 3 (D. Mass. 2020). The United States Supreme Court has long recognized that under the favored common fund approach, a lawyer who achieves a settlement for the benefit of a class is entitled to be compensated for his or her efforts from the common fund created by the settlement. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Although the court has the discretion as to which method it applies, federal courts have recognized that "numerous criticisms have been lodged against the lodestar method" since its origination. *McCormick v. Adtalem Global Educ., Inc.*, No. 1-20-1197, 2022 IL App (1st) 201197-U, ¶ 26; *Ryan v. City of Chicago*, 274 Ill. App. 3d 913, 923 (1995) ("the lodestar approach has been subjected to increased scrutiny as its deficiencies began to offset or exceed its benefits"). Courts have recognized the many disadvantages of using the lodestar method to award attorneys' fees:

> (1) it increases the workload of an already overtaxed judicial system, (2) it is insufficiently objective and produces results that are far from homogenous, (3) it

> creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law, (4) it is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or an overall dollar amount, (5) it has led to abuses such as lawyers billing excessive hours, (6) it creates a disincentive for the early settlement of cases, (7) it does not provide the trial court with enough flexibility to reward or deter lawyers so that desirable objectives will be fostered, . . . [and] (9) it is confusing and unpredictable in its administration.

*Ryan*, 274 Ill. App. 3d at 923 (citing *Court Awarded Attorney Fees, Report of the Third Circuit*, 108 F.R.D. 237, 246-47 (1985)).

Similarly, the First Circuit has extolled the greater virtues of the common fund approach, also known as the percentage of fund approach, stating that "use of the POF method in common fund cases is the prevailing praxis" and affords "distinct advantages . . . in such cases." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 307.The Court of Appeals explained:

> In complex litigation—and common fund cases, by and large, tend to be complex—the POF approach is often less burdensome to administer than the lodestar method. *See Swedish Hosp.,* 1 F.3d at 1269 (finding POF approach "less demanding of scarce judicial resources"). Rather than forcing the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended, the POF method permits the judge to focus on "a showing that the fund conferring a benefit on the class resulted from" the lawyers' efforts. *Camden I,* 946 F.2d at 774. While the time logged is still relevant to the court's inquiry—even under the POF method, time records tend to illuminate the attorneys' role in the creation of the fund, and, thus, inform the court's inquiry into the reasonableness of a particular percentage[11]—the shift in focus lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation.
>
> For another thing, using the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement. *See* Third Circuit Report, 108 F.R.D. at 247–48 (finding that, in common fund cases, the lodestar method "encourag[es] lawyers to expend excessive hours" and "creates a disincentive for the early settlement of cases"); *see also* FJC Report, *supra,* at 310. If the POF method is

> utilized, a lawyer is still free to be inefficient or to drag her feet in pursuing settlement options—but, rather than being rewarded for this unproductive behavior, she will likely reduce her own return on hours expended.
>
> Another point is worth making: because the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character." *In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir.1992). In fine, the market pays for the result achieved.

*Id.* at 307. Accordingly, the Court should employ the common fund approach in this litigation.

**B. Class Counsel's Requested One-Third Percentage is Reasonable and Commonly Awarded by Federal Courts in Common Fund Class Actions Generally and in Bank Fee Litigation Specifically**

Federal courts routinely use the percentage-of-the-recovery method to calculate reasonable attorney fee awards in common fund cases and commonly award percentages of one-third or higher. *See e.g., Chambers v. Together Credit Union*, No. 19-cv-842-SPM, 2021 WL 1948452 at *2, 2021 U.S. Dist. LEXIS 92151 at *4 (S.D. Ill. May 14, 2021) (awarding 33.33% of the common fund in overdraft fee class action as "appropriate and reasonable" as an "amount being commonly awarded as the market rate").

More specifically, the requested fee percentage is routinely awarded in similar bank fee litigation and class action litigation across the country. *See e.g., Chambers*, 2021 WL 1948452 at *2, 2021 U.S. Dist. LEXIS 92151 at *4 (one-third fee award); *Edwards v. Mid-Hudson Valley Fed. Credit Union*, No. 1:22-cv-562-TJM-CFH, 2023 WL 5806409 (N.D.N.Y. Sept. 7, 2023) (same); *Lowe v. NBT Bank, N.A.*, No. 3:19-CV-1400 (MAD/ML), 2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022) (same); *Richard v. Glen Falls Nat. Bank*, No. 1:20-cv-734 (BKS/DJS), 2022 WL 3286551 (N.D.N.Y. July 22, 2022) (same); *Thompson v. Community Bank, N.A.*, No. 8:19-CV-919

(MAD/CFH), 2021 WL 4084148 (N.D.N.Y. Sept. 8, 2021) (same); *Holt v. Community America Credit Union*, No. 4:19-cv-00629 FJG, 2020 WL 12604384 (W.D. Mo. Dec. 8, 2020) (same); *Norwood v. The Camden Nat'l Bank*, No. BCD-CV-2020-13 (Me. Bus. Ct. Dec. 11, 2020) (same); *Fort Knox Fed. Credit Union*, No. 19-CI-01281 (Hardin Cnty., Ky.) (same); *L&N Fed. Credit Union*, No. 19-CI-002873 (Jefferson Cnty., Ky.) (same); *Old Hickory Credit Union*, No. 19-475-II (Davidson Cnty., Tenn.) (same); *Wilson Bank & Trust*, No. 19-400-BC (Tenn. Bus. Ct.) (same); *Ind. Members Credit Union*, No. 49D02-1804-PL-016174 (Marion Cnty., Ind.) (same); ORNL Fed. Credit Union, No. B9LA0107 (Anderson Cnty., Tenn.) (same); *Centra Credit Union*, No. 03D01-1804-PL-001903 (Bartholomew Cnty., Ind.) (same); *Johnson v. Elements Fin. Credit Union*, No. 49D01-2001-PL 004706 (Marion Cnty. Ind. Super. Ct. Oct. 29, 2020) (same); *Plummer v. Centra Credit Union*, No. 03D01-1804-PL-001903 (Bartholomew Cnty. Ind. Super. Ct. Oct. 2, 2020) (same); *Simpson v. Citizens Bank*, 2014 WL 12738263 (E.D. Mich. Jan. 31, 2014) (same); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) (same).

Class Counsel regularly receives a one-third or higher fee from common fund settlements involving similar banking fee claims in state and federal courts throughout the nation. *See* Supp. Gold Decl., ¶ 14.

**C. Multiple Factors Support the Reasonableness of the Requested Award**

The core issue before the Court is what constitutes a reasonable attorneys' fee. In making such a determination, courts within this Circuit often employ a multi-factor test that can include the following considerations: "the size of the fund and the number of persons benefitted"; "the skill, experience, and efficiency of the attorneys involved"; "the complexity and duration of the litigation"; "the risks of the litigation"; "the amount of time devoted to the case by counsel";

"awards in similar cases"; and "public policy considerations, if any." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011).

Here, the benefit conferred by the Settlement—guaranteed monetary relief—is substantial. Defendant has agreed to make a significant settlement payment by establishing a Settlement Fund of $725,000.00. From this Fund, Settlement Class Members will receive a direct settlement benefit in the form of either a credit to current accountholders' Accounts or a check to former accountholders. This benefit is automatic, as Settlement Class Members neither need to submit a claim nor provide proof of damages or any supporting documentation. The benefit conferred represents a substantial percentage of the Settlement Class's estimated potential damages. Thus, the results achieved—considerable benefits conferred on a considerable number of Settlement Class Members—weigh in favor of granting the requested fee award.

The risk of continued litigation was high. This case faced potential obstacles at all junctures that could have resulted in no recovery at all for the Settlement Classes, including losing the motions to dismiss; losing class certification; losing summary judgment; losing at trial; or losing on appeal at either class certification or after a successful trial. Additionally, the risk of further protracted litigation would likely reduce the amount of the benefit ultimately obtained due to years of delay and increased cost of litigation. Notwithstanding these hurdles, Class Counsel took the case on a pure contingency fee basis, devoted significant time and resources for years, and chose to forego pursuing other cases as sources of income in the face of assuming the significant risk of nonpayment. Class Counsel's commitment to prosecute the action notwithstanding the real financial risk presented warrants reasonable compensation.

Further, this case involved complexities of bank processing law that are novel, difficult, and ever evolving. To illustrate, to Class Counsel's knowledge, no similar Representment Fee or

APPSN Fee claims have proceeded to trial. This means that there is no model for the Settlement Class Members' case and therefore, unforeseen pitfalls could easily derail the Settlement Class's claims should they proceed through the rigors of litigation. To even be able to identify the alleged inappropriate fees requires specialized knowledge by both experts and experienced complex litigation attorneys, as do the theories surrounding the alleged fees, not to mention the specialized knowledge of the class action procedure required to achieve certification, let alone settlement. These considerations support granting the requested fee.

Class Counsel also expended significant time and effort in achieving the Settlement for the Settlement Classes. The Settlement was reached only after multiple arm's-length negotiations conducted in good faith by experienced counsel and facilitated by a third-party neutral mediator in two separate mediations. The Parties participated in a sufficient amount of written discovery to drive the Parties' settlement discussions and consulted experts to analyze Defendant's transactional data.

Specifically, hundreds of hours have been expended by Class Counsel thus far in the prosecution of this Action, from investigating Defendant's fee practices and gathering evidence in support of the claims resolved by the Settlement; interviewing potential clients; drafting multiple complaints; litigating contentious motion practice; drafting written discovery requests; preparing for and attending mediation, including researching and drafting the mediation statement; engaging an expert to review Defendant's account-level transaction data and analyze potential damages; negotiating and drafting the Agreement with Defendant's counsel; moving for and obtaining preliminary approval; consulting and overseeing the Settlement Administrator's efforts to provide Notice to the Settlement Classes; and preparing the instant motion and its related papers. *See* Supp. Gold Decl., ¶¶ 15-17. It is anticipated that Class Counsel will expend considerable additional time

and resources in preparing for and securing final approval, final judgment, and ensuring the successful administration of the Settlement by working with the Settlement Administrator after final approval. *See id.*, ¶¶ 15, 16.

The public interest lies in incentivizing attorneys to undertake class actions. This matters here because the requested attorneys' fees of 33.33% of the Settlement is well-within the range of reasonable attorney fees awarded in common fund class action settlements. Not only is this amount customary, it is also supported by additional considerations, such as the risks Class Counsel undertook in pursuing this complex action on a contingency basis, the significant results achieved for the Settlement Classes, the time (dating back to 2022) and effort expended by Class Counsel, and the standard one-third amount that is routinely awarded in this type of banking fee litigation across the country, including by Class Counsel. This Court should grant Class Counsel's requested award of $241,642.50.

## II. THE COURT SHOULD ALSO AWARD CLASS COUNSEL'S REQUESTED LITIGATION COSTS

It is "well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation." *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 WL 375432 at *3 (S.D. Ill. Jan. 31, 2014).

In this case, Class Counsel advanced various expenses, totaling $28,186.23. *See* Supp. Gold Decl., ¶ 18. These expenses include filing fees, expert fees, travel fees, and mediation fees. Each of these costs were reasonable and necessary in prosecuting the Action and should therefore be approved. Expense details can be provided at the Court's direction. Notably, these are the types of expenses—"costs associated with mediation, travel expenses, filing fees, and postage"—

deemed reasonable in class action complex litigation. *See, e.g., Carlson*, 447 F. Supp. 3d at 5-6 (D. Massachusetts judge awarded $6,935.96 in incurred expenses); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 351-52 (D. Mass. 2015) (awarding $61,674.44 in reasonable expenses for "among other things, costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings").

In addition, the Court should approve the payment of the Settlement Administration Expenses to the Settlement Administrator for the reasonable costs of mailing notice and administering the Settlement Fund. These costs were also necessary because of the notice requirements needed to notify Settlement Class Members of the Settlement and ultimately distribute the class recovery by Account credit or check. Because these costs necessarily remain fluid at this juncture, the Settlement Administrator's costs will be provided at the final approval hearing.

## III. THE COURT SHOULD AWARD PLAINTIFF THE REQUESTED SERVICE AWARD

It is well settled that "[c]ourts 'routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Carlson*, 447 F. Supp. 3d at 5 (additional internal quotations marks omitted) (quoting *In re Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs.*, 205 F.R.D. 369, 400 (D.D.C. Feb. 1, 2002)). This is in part because "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Marketing Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). Indeed, federal courts routinely approve $5,000 or more as class representative service awards in recognition that the class representatives brought a lawsuit that provided a significant benefit to absent class members. *See e.g., Carlson*, 447 F. Supp. 3d at 5 (D. Massachusetts case approving $7,500.00 incentive award); *In re AT&T Mobility Wireless Data*

*Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) (although "the Class Representatives' roles were largely prospective in that they were committed to go through discovery as necessary, to be part of any trial that would follow[,]. . . their role in reviewing, considering, and approving the Settlement Agreement and fee application, and especially their willingness to take a more-active role if necessary, warrants a $5,000 award"); *Wright v. Nationstar Mortgage LLC*, No. 14 C 10457, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (approving $5,000.00 for each of the eight class representatives who "participated in the litigation by reviewing the complaint, responding to requests for information, and participating in the settlement process").

Based on the reasoning of the foregoing cases, the Court should grant the requested Service Award of $5,000.00 in recognition of the time and effort Plaintiff spent serving as class representative of the Settlement Classes and the significant result she obtained on behalf of the absent Settlement Class Members who will receive compensation without even having to submit a claim. Courts assess requested awards by considering the risk to the class representative the litigation presents (financial and otherwise), the notoriety and personal difficulties encountered by the class representative, the amount of time and effort spent by the class representative, the duration of the litigation, and the personal benefit (or lack thereof) to the class representative. *Carlson*, 447 F. Supp. 3d at 5.

Here, Plaintiff was integral to the case, providing assistance since 2022 that enabled Class Counsel to successfully prosecute the action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding documents and information to Class Counsel; (3) participating in conferences with Class Counsel; and (4) reviewing settlement documentation. *See* Supp. Gold Decl., ¶ 19. Without the Plaintiff's efforts and willingness to attach

her name to this litigation for the benefit of absent Settlement Class Members, the $725,000.00 Settlement would have never been achieved. These factors support granting the requested Service Award, which will compensate Plaintiff for her time and effort and for the risks she assumed in prosecuting the Action and serving as Settlement Class Representative.

## CONCLUSION

For the foregoing reasons, this Court should award attorneys' fees in the amount of 33.33% of the Settlement ($241,642.50), reimbursement of the reasonable litigation costs ($28,186.23), reimbursement of Settlement Administrator's costs (to be presented at the final approval hearing), and the requested Service Award to the Settlement Class Representative ($5,000.00). A proposed order granting such relief has been submitted as Exhibit A.

Dated: August 4, 2025

Respectfully submitted,

*/s/ Ellen Rappaport Tanowitz*

Ellen Rappaport Tanowitz, BBO #630710
**TANOWITZ LAW OFFICE, P.C.**
1340 Centre Street, Suite 103
Newton, MA 02459 617-965-1130
Telephone : (617)965-1130
Email: ellen@tanowitzlaw.com

David M. Berger (*to be admitted pro hac vice*)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
Email: dmb@classlawgroup.com

Shawn K. Judge (*to be admitted pro hac vice*)
Mark H. Troutman (*admitted pro hac vice*)
**GIBBS MURA LLP**
1554 Polaris Parkway, Suite 325
Columbus, Ohio 43240
Telephone: (510) 350-9700

Fax: (510) 350-9701
Email: skj@classlawgroup.com
Email: mht@classlawgroup.com

Jeffrey Kaliel (*to be admitted pro hac vice*)
Sophia Gold (*to be admitted pro hac vice*)
**KALIEL GOLD PLLC**
1100 14th Street NW, 4th Fl.
Washington, DC 20005
Telephone: (202) 250-4783
Email: jkaliel@kalielpllc.com
Email: sgold@kalielgold.com

*Attorneys for Plaintiff and the Settlement Classes*

**Certificate of Service**

I, Ellen Rappaport Tanowitz, certify that on this 4th day of August, 2025, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz